IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MARYLAND
GREENBELT, MARYLAND

MR. FRANÇSIOUR B. KEMACHE-WEBSTER
# 42459-007

               Petitioner,　　　　　　:　　　　Case No.: _____
　　　　　　　　　　　　　　　　:　　　　　　　　To Be Assigned
　　　　　　　　　　　　　　　　　　　　　　　　Reflecting:

FILED / LODGED / ENTERED / RECEIVED

JUL 2 4 2014

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEP

　　　　　　　　　　　　　　　　　　　　　　9:10-MJ-4035-PMF (7th Cir.)
　　　　　　　　　　　　　　　　　　　　　　8:10-3343-WC (4th Cir.)
　　　　　　　　　　　　　　　　　　　　　　8:10-00654 (RWT)
V.　　　　　　　　　　　　　　　　　　　　4:13-9451 U.S.C.A.
　　　　　　　　　　　　　　　　　　　　　　7:13-9451 U.S.S.C.

UNITED STATES OF AMERICA

               Respondant,　　　　:　　　　Motion:
　　　　　　　　　　　　　　　　　　　　　　　　To Set Aside, Correct or
　　　　　　　　　　　　　:　:　　　　　　　　Vacate Sentence Under § 2255

....ooooOOOOoooo....

**MOTION
TO SET ASIDE, CORRECT
OR
VACATE SENTENCE UNDER § 2255**

My loving countrymen pray lend an ear,
To this relation that I bring to you here,
My present sufferings at large I will unfold,
Altho' its strange, 'tis true as e'er was told.

A Gentleman who seemed very grave,
Said unto me, how long are you a slave,
Not two years quite, I unto him reply'd,
That is but very short indeed, he cry'd.

He ask'd my trade, name and whence I came,
And what vile fact had brought me to this shame,
I told him all, at which he shook his head,
I hope you have seen your folly now he said.

I hope God has so wrought upon thy mind,
No more to wickedness thoul't be inclin'd,

My countrymen take warning e'er too late,
Lest you shou'd share my unhappy fate,
Altho' but little crimes you here have done,
Think of seven or fourteen years to come.

by: James Revel
1659-1680

MR. FRANÇSIOUR B. KEMACHE-WEBSTER
# 42459-007

     Petitioner,      :      Case No.: _____

                 To Be Assigned

            ENTERED   Reflecting:
            RECEIVED      9:10-MJ-4035-PMF(7th Cir.)
                  8:10-3343-WC (4th Cir.)
          JUL 2 4 2014      8:10-00654(RWT)
                  8:11-4801 U.S.C.A.
          AT GREENBELT     4:13-9451 U.S.S.C.
          CLERK U.S. DISTRICT COURT   7:13-9451 U.S.S.C.
          DISTRICT OF MARYLAND

UNITED STATES OF AMERICA    BY ___
     Respondant,      :      Motion:

                  To Set Aside, Correct or
        ....ooooooooooooooo....      Vacate Sentence Under § 2255

## MOTION
## TO SET ASIDE, CORRECT
## OR
## VACATE SENTENCE UNDER § 2255

To 'consummate' means complete.

Under Black's Law there is no ordinary meaning for the word "COMPLETE", yet
under The American Heritage 4th Edition, the ordinary meaning is as thus:
"COMPLETE": Having all necessary or normal parts; concluded; thorough; total;

    To make whole, To fill out, and under The Merriam-Webster 11th
Edition's New Edition, the ordinary meaning is as thus:
"COMPLETE": Having all parts or elements; brought to an end; fully carried out;

      absolute, total, concluded, finish, to make whole or perfect.

Here, in this insatnt offense Mr. KeMache-Webster, was arrested and charged
with "Attempted" as apposed to "COMPLETED" of Title 18 Section 2422(b) with
Coercion & Enticement, as read in his Indictment issued as a TRUE BILL on that
October 25, 2010. Though there are several issue that shall be raised an also
addressed in the Section 2255. The petitioner wishes to address the main crux
of the instant offense, being the charge it self and the weight of the charge
and its conviction.

Under 18 USCS § 2422(b) it provides:

    (b) Whoever, using the mail or any facility or means of interstate or
    foreign commerce, or within the special maritime and territorial juris-
    diction of the United States knowingly persuades, induce, entices or
    coerces any individual who has not attained the age of 18 years to en-
    gage in prostitution or any sexual activity for which any person can be
    charged with a criminal offense, or attempt to do so, shall be fined un-
    der this title and imprisoned not less than 10 years or for life.

It meantions nothing within it-self on the issue of "COMPLETE" or "COMPLETION"
but it does weight in on the fact of "ATTEMPT" to do so. Through out the full

entirety of this instant offense the petitioner, has argued the difference
of those two words in their full and defined meanings. This Court as well
as the Appeals Court has stressed that this is due in part to redacted,
edited, snipped and blackened records that were provided by the government
while violating the Rules of Optional Completeness, Federal Rules of Evidence
Rule § 106. What the petitioner does also find quite odd towards the most of
strange is the fact that; both Courts' have stated that:
For a completed or completion to have taken place it must be a successful
attempt. Which goes back to the "ATTEMPT" theory of the case at hand.

The actaul usage of the statute and rules that surround that of: § 2422(b),
is that the "ATTEMPT PRONG" must be met, under nearly every § 2422(b) case
that has been addressed where a trial has taken place there was the use an
the instruction of the "Attempt Prong" to the case.

To meet the prongs of: § 2422(b) in reference to the petitioner, it read not as
that of the general prongs it self it provides:

1.  That the petitioner used a facility of interstae commerce as alleged in the
    issued indictment.
2.  That the petitioner did knowingly persuade, or induce or entice or coerce his
    daughter to engage in a sexual activity.
3.  That the sexual activity would violate Maryland law; and
4.  That the petitioners' daughter was less than 18 years old at the time of
    the acts alleged in the indictment.

Nowhere in the given instructions does the judge define "ATTEMPT" or instructs
the jury with respect to "ATTEMPT". The decision between a completion violation
of 18 U.S.C. § 2422(b) and attempt was discussed in the case of:
United States v. Gladish, 536 F.3d 646, 648 (7th Cir. 2008) It states:

> The defendant of course did not succeed in getting 'Abagail'
> to have sex with him, and if he had, he would not have been
> guilty of a completed violation of section 2422(b) because
> the agent who called herself 'Abagail' was not a minor. The
> real question (the only one that needs to be answer to give
> to resolve) is whether the petitioner is truly guilty of him
> having [attempted] to get his underage daughter to engage in
> having sex with him. * To be guilty of an attempted crime;
> any attempted crime, you must intend the completed crime &
> take a 'substantial step' towards its completion.

This Court and the Appeals Court have said; that the petitioner has in fact
completed the crime, because the daughter gave her assent to a letter that

-2-

was presented by the government on Appeal, <u>not at trial</u>, where it is said
that the petitioner has sent to his daughter stating:

> "It sounds like.......you are really wanting to get pregnant
> this year.......as soon as I am home and we are settled"

the government, presents this document before the Appeals Court with out
the petitioner having ever had the chance to dispute, negate or defend
the contents of the letter or the portions of it that the government had
chose to use at that late juncture of their defense, as her **'assent'**.
What is even more detramental yet compelling is the fact that in the use
of the governments stratergy; it has a great deal of contradictions therein
not noticed by the Appeals Court, nor picked up by trial counsel, is the
governments use of "Assent" v. "Consent" as well as their covering, their
use of "Completed" v. "Attempted"; to make their case, both are alters.

In the Governments' [Documnet 111] filed 07/13/2011 on page 5 of 8
it states in relevent part:

### III. RELEVENT EVIDENCE WAS ADMITTED THROUGHOUT THE TRIAL.

The Defendant states factual inaccuracies when arguing that
the Government gave the jury "misinformation" in regard to the
Defendant's behavior. The Government presented evidence deem
admissible by the Court pursuant to the Federal Rules of Evidence.
The Defendant's argument that the victim F.W., was the
"initiator" of the offense is absurd.
Children cannot **"CONSENT"** to engage in sexual acts with adults.
Further, as the adult, the Defendant is obligated to obey the
laws of both the state and country where he resides as well as excer-
cise common sense. Regardless of the actions of his biological daugh-
ter, the Defendant simply cannot engage in sexual acts with her nor
entice her via communications to do so. The evidence presented at
trial survived the objections made by the Defense under the Federal
Rules of Evidence. The proposition that a minor child is an "accom-
plice" and "principal party" to her own rape and victimization by an
adult is absolutely absurd. A child cannot **"CONSENT"** to her own rape
and victimization, regardless of her actions. (the completion omitted).

Here we face a conundrum of contention with the Governments Rule <u>29</u> state-
ment and argument as appose to the direct opposite used in their Appeal
Courts brief, they cannot have it both ways.

That is a misrepresentaion toward [THE LAW OF THE CASE DOCTRINE] and a true
violation of the U.S. Constitutions Due Process Clause. Herein the jury was
led to believe in one course and fashion to convict and the Rule <u>29</u>, was
denied on the same principle of as the Government had stated, yet they go
before the Appeals Court with an opposite presentation. <u>It cannot be both ways</u>.

See:

<u>Arizona v. California</u>, 460 U.S. 605, 618, 103 S.Ct. 1382
75 L.Ed. 2d 318 (1983)

> The Law of the Case Doctrine, "posits that when a court decides upon a rule of law that decision should continue to govern the same issue subsequent stages in the same case.

> Moreover, the Law of the Case Doctrine does not and cannot limit a court to consider an earlier ruling.

See:

<u>Am. Canoe Ass'n v. Murphy Farms Inc.</u>,326 F.3d 505, 515 (4th Cir. 2003) &

<u>Spencer v. Earley</u>, 278 Fed. App'x 254, 262 (4th Cir. 2008)(citing....

> To the extent the court incorrectly suggest in its prior order, the plaintiff's Fifth Amendment Due Process Clause claim could proceed soley on the basis of an allegation. (quote partially omitted).

The Government, states that the jury was properly instructed and properly informed based on the analogy that the petitioner and his daughter were involved in the state of Maryland in an incestuous relationship, and that as a minor under the age of 18 years of age, that she could not **"CONSENT"** nor did she at no time **"CONSENT"** to an incestruous relationship. Yet the Government presents to the jury and the District Court their version of no **"CONSENT"**, but to the Appeals Court that there was an **"ASSENT"**.

The ordinary meaning of consent is as thus:

In the American Heritage 4th Edition Dictionary;

<u>Consent</u>: To give **assent**, to agree, acceptance.

In the Blackwell 8th Edition Dictionar;

<u>Consent</u>: To give **assent** or approval, acceptance of something done, or agreement of somthing proposed by another.

In the Merriam-Webster's 11th Edition New Edition;

<u>Consent</u>: To permit or approve, approval or acceptance, To give **assent**.

In the Black's Law 7th Edition;

<u>Consent</u>: An agreement, approval, or permission as to some act or purpose, esp. given voluntary by a competent person. Consent is an affirmation and affirmative defense to assault, battery and related torts as well as such torts as defamation, invasion of privacy, conversion and trespass. Consent may be a defense for a crime if the victim has the capacity to consent and if the consent negates the element of the crime or thrawts the harm that the law seeks to prevent. Consent has three parts or other expressed types:

<u>Express Consent</u>: Consent that is clearly and unmistakably stated.

<u>Implied Consent</u>: Consent that is infered from one's conduct rather than from one's direct expression. &

-4-

Inferred Consent:   Consent of a person's agreement to allow something
                    to happen, made with full knowledge of the risks
                    involved and the alternatives.

As shown, the bottom line the Government had the jury and the District
Court convict the defendant on an unfounded and un accepted presentation
that the Appeals Court, e.g. the upper Court has found to have a differ
in the lower Courts opinion. The petitioner's Rule 29 was denied under
those exact same pretenses. Therefore becomes a Due Process Violation.

         Under the instant offense the pettioner was charged with "ATTEMPT"
to commit § 2422(b), yet the jury was not given an instruction under that
theory as prescribed by the United States Supreme Court:
A defendants initiation of sexual conversations, writing insistent mess-
ages, and attempting to make arrangments to meet have been discribed as
a 'substantial step'. Child sexual abuse is often effectuated following a
period of grooming and the sexualization of the relationship. To be guilty
of the attempt a person must intend the completed crime and take a 'substan-
tial step' towards the completion.

See:
     Braxton v. United States, 500 U.S. 344, 349, 111 S.Ct. 1854, 114 L.Ed
                               2d 385 (1991)

     Kaye v. United States, 243 Fed App'x 763, (4th Cir 2007)

     Patten v.United States, 397 F.3d 1100, (8th Cir. 2005) and hundreds more
that have be convicted following the 'substantial step' instruction.

The ordinary meaning of attempt has the same meaning no matter what source
that it is derived from:

Attempt: To make an effort to do or accomplish, to go toward or try.
         The act or an instance of making an effort towards an accomplish-
         ment, to try at something especially without success.

Black's Law: An overt act that is done with the intrest to commit a crime,
         but that falls short of completting the crime.
         Attempt is an inchoate offense distinct from the attempted
         crime under M.P.C. = Model Penal Code, an attempt includes any
         act that is a 'substantial step' towards the commission of a
         crime, such as enticing, lying in wait for, or following the
         intended victim or unlawfully entering a building where a crime
         is expected to be committed.

The petitioner's INDICTMENT reads,

     The grand jury in this case has charged that between May 04th and
     August 20th of 2010, the defendant did knowingly use and attempt to
     use a facility and means of interstae and foreign commerce to know-

-5-

ingly persuade, induce, entice and coerce an individual who has not attained the age of 18 years of age to engage in sexual activity for which a person can be charged with a criminal offense.

It mentions NOTHING, of no overt acts, NOTHING of no 'completed' use and the indictment assuredly does not mention anything of an incestuous act or relationship. For the jury to have such instructions and [NOT] the proper instructions, does **'constructively amends the indictment'** or at its least cause a **'fatal variance to the indictment'**.

A constructive amendment and a variance are based on the rule that after an indictment has been returned its charge(s) may [NOT] be broadened or altered or changed through amendment except by the GRAND JURY itself. A contructive amendment of an indictment occurs when the charging terms of the indictment are altered, either literally or in effect by the prosecution or a court after the GRAND JURY has last passed upon them what is read in the original indictment.

A variance on the other hand occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts that are materially different from those alleged in the indictment. The determinats & the distinctions is important because a contructive amendment 'ALWAYS' will require a reversal, where as a variance only requires reversal if it is to be considered prejudice to the defendants' substantial rights.

To constitute a constructive amendment, the congruity must in fact change the elements of the offense charged, such that the defendant is actually to be convicted of a crime other than that which is charged in the indictment.

Simply put, an indictment [may not] be so amended except by resubmission to the GRAND JURY, if not when a contructive amendment to an indictment does occurs, it is found to be an error it is considered fatal and reversal is done. See:

United States v. Whitfield, 695 F.3d 288, (4th Cir. 2012) &
United States v. Wilbur, 674 F.3d 1160, (4th Cir. 2011)

Here with the petitioner we have both, which in turns gives rise to the petitioner having his Due Process Rights therefore still violated under the U.S. Constitution 5th and 14th Amendment as well as a Prosecutorial Violations, with to mention a clear prejudice to the petitioner an by the lawyer [NOT] making this addressment before the court goes to also Ineffectivenss of his trial Counselor of Record, which would be Mr. Gary E. Proctor Esq.

Model Penal Code:
Attempt v. Completion:

Traditionally, attempts had been punished considerably less severely than consummated crimes. The distinction between attempt and completed, however, appeared irrational to the MPC drafters. An offender who attempts a crime is just as dangerous, and suffers from the same general disposition to commit crimes as the one who happens to succeed in putting his plan into action. From the stand point of penal treatment, there's no difference between offender who lifts a wallet from another's pocket and one who tries to do the same but finds the pocket empty.

The MPC's treatmentist appraoch resulted in exceptionally harsh and brash provisions on so-called inchoate, or incomplete offenses in general.

Attempt here is but one example of the Code's effort to heed that of Rosco Pound's ( Rosco Pound PHd, the father of the American branch of the sociological school of law and, as Dean of Harvard Law School, one of the most prolific, American scholars of the first half of the twentieth century), motto for modern criminal law: not to punish but to 'prevent disobedience'.

Within the levels of MPC's relevency there's:

1.     Conspiracy; it is not much favored, perhaps its because it is hard to punish someone for entering into an agreement when that agreemnet was never in fact entered into. It does not matter if the person is right or wrong, what does matter was that by at least thinking he had at the time conspired with one or more other persons. Than the inchoate crime,

2.     Solicitation; it is enough to have tried to encourage someone to commit a crime. It matters not whether the letter asking your friend to hurt or harm their next-door neighbor gets lost in the mail. Once again just to having written it ant to put it in the mailbox is enough evidence of a now criminal character. The most inchoate MPC offence tends to not be,

3.     Possession; it is the ultimate dangerousness offense. If attempt is to be called inchoate, than possession is an inchoate-inchoate offense. At the outset it is crucial to see that possession is a theory of ones criminal liability, or rather a method for the diagnosis of criminal character. It forms an integral part of a type of criminal process that is designed to incapacitate threats, rather that to do justice, or even to control crime. Possession is paradigmatic, stripped of its progressive pretensions, of treatmentism without rehabilitation. Than there's

4. Preparation; it is to use the item possessed. Unlike possession, however, 'mere preparation' is not criminalized. that's so because traditional crime & law distinguished between preparation & attempt. A preparation that blossomed into an attempt becomes criminal. Than

5. Attempt; it is the act or an instance of making an effort to accomplish something especially without success. An overt act that is done with the intent to commit the crime but that falls short of completing the crime. Attempt is an inchoate offense distict from the actual attempt of the crime. Under MPC, an attempt includes any act that is a given 'substantial step' towards the commission of a crime, such as entice-ment, lying in wait, or following the intended victim or unlawfully entering a building or dwelling where a crime is expected to be done or committed.   Model Penal Code § 5.01

6. Complicity; it is association or participation in a criminal act; the act of being or state of being an accomplice. Under MPC, it is a person that can be an accomplice as a result of either that person's own con-duct or the conduct of another (such as an innocent agent) for which that person is legally accountable.  Model Penal Code § 2.06

7. Completed; it is termed as 'consummated' completed, fully accomplished. Consummated was used frequently in common law to describe the status of a contract or an estate. To bring to completion. To achieve. Having all necessary or normal parts, conclude, total, thorough. To make whole. To bring to an end, to finish or fully carried out.

In regards to the instant offense, the Government contends that the petitioner, and his teenage daughter were in an incestuous relationship, an contends that the daughter 'assented' to a missive that was [replied] upon by the petitioner. Not an initiation that was issued as that of the several hundreds on  § 2422(b) violators & predators that actaully do commit  or violate § 2422(b).

The ordinary meaning of Assent is as thus:

In the American Heritage 4th Edition;  To agree, To concur.

In the Merriam-Webster 11th Edition's New Edition:  To agree, To concur.

In Black's Law  8th Edition Dictionary:  Agreement, Approval or Permission
                              To accept, To concur, See consent.

Constructive Assent: Assent imputed to someone based on conduct

o

Express Assent: Assent that is clearly and unmistakably communicated.

Implied Assent: Assent inferred from one's conduct rather than from direct expression.

Mutual Assent; Agreement by both parties to a contract usually in the form of offer and acceptance. A determination by the apparent intentions of the parties. Meetings of the mind.

In the petitioner's Rule 29, the addressment of he and his daughter's conversations were discussed in his brief, and the Government's reply was clearly in direct contrast of what was reported at the Appeals Court level. The daughter initiated the conversations, and they were not to be taken in their abnormal context at face value. The Governement in turn gave the jury instructions in the opposite of what the Appeal's Court was in turn given. Therefore there is an improper jury instruction given, a violation of the Fifth, Sixth and Fourteenth U.S. Constitutional violation. Theres assuredly is a Constructive Amended Indictment violation as well as a Fatal Variance to the indictment. The petitioenr, has recently addressed ... this Honorable Said Court with a Motion: For Reconsideration of Rule 33(b)(1) Filing, as well as a request to the Government to review a Rule 35 Motion for Substantial Assiistance under Rule 35(b)(2); for assistance given to a female high ranking officer in distress in the C.M.U. = Communications Management Unit of Terre Haute, Indiana's Federal Correctional Institution.

### SENTENCING DISPARITY ISSUE

The touchstone for the determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an "element" or "ingredient" of the charged instant offense. United States v. O'Brien, 560 U.S. 218 ___ , 130 S.Ct. 2169, 176 L. Ed. 2d 979 (2010); Apprendi, supra, at 483, n. * 10, 120 S.Ct. 2348, 147 L.Ed. 2d 435; J. Archbold, Pleading and Evidence in Criminal Cases 52 (5th Am. Ed. 1846) (hereinafter Archbold).

In Apprendi; we held that a fact is by definition an element of the instant offense and must be submitted to the jury, if it is ti increase the punishment above what is otherwise legally prescribed, 530 U.S. @ 483, n. *10, 120 S.Ct. 2348, 147 L.Ed. 2d 435*. While Harris declined to extend this principle facts increasing mandatory minimum sentences, Apprendi's definition of "elements" necessarily includes not only facts that increase the ceiling, but those that increase, or raise the floor. Both kinds of facts alter the prescribed range of sentences to which a defendant is exposed and do in a manner

that aggravates the punishment. 530 U.S., at 483, n. * 10, 120 S.Ct. 2348,
174 L.ed. 2d 435; Harris, supra, at 579, 122 S.Ct. 2406, 153 L.Ed. 2d 524
(Thomas, J. dissenting). Facts that increase that mandatory minimum sentence
are therefore elements and must be submitted to the jury and found beyond a
reasonable doubt. <u>Alleyne v. United States</u>, 570 U.S. ___ 133 S.Ct. ___ 186,
L.Ed. 2d 314(2013).

      In other words, [f]acts that expose a defendant to a punishment greater
than that otherwise legally prescribed were by definition "elements" of a
seperate legal offense. The Court continues, "We held that the Sixth Amendment
provides defendants with the right to have a jury find those facts beyond a
reasonable doubt." While harris limited Apprendi to facts increasing the given
statutory maximum, the principle applied in Apprendi applies with equal force
to facts increasing the manditory minimum. If a statute prescribes a particular
punishment to be inflicted on those who commit it under special circumstances
which, or with particular aggravations," then those special circumstances must
be specified in the indictment (emphasis added); 1 F. Wharton, Criminal Law §
371, p. 291 (rev. 7th ed. 1874)(similar).

      It is impossible to dissociate the floor of a sentencing range from the
penalty affixed to the crime. Harris, at 569, 122 S.Ct. 2406, 153 L.Ed. 2d 524
(Breyer.J. concurring in part and concurring in judgment)(facts increasing the
minimum and facts increasing the maximum cannot be distinguished" in terms of
logic"). Indeed, criminal statutes have long specified both floor and ceiling
of sentence ranges, which is evidence that both define the legally prescribed
penalty. In sentencing the petitioner, Mr KeMache-Webster to life in prison,
the District Court increased his offense guideline calculation by eight (8)
levels based upon conduct which had not admitted guilt nor had been found guilty
of by a jury beyond a reasonable doubt. The use of this uncharged conduct had
increased Mr. KeMache-Webster's guideline sentencing range from 130 to 162 months
to 292 to 365 months. The use of this uncharged conduct to claculate Mr. KeMache-
Webster's guideline range violated, Mr. KeMache-Webster's Constitutional rights
to a jury trial and have any facts which could increase his sentence proven
beyond a reasonable doubt.

      As noted, the essential Sixth Amendment inquiry is whether a fact is an
element of the crime. When finding a fact alters the legally prescribed given
punishment so as to aggravate it, the fact necessarily forms a constituent part
of a new offense and must be submitted to the jury. It is obvious, for example

that a defendant could not be convicted and sentenced for assault, if the jury only finds the facts for larceny, even if the punishments prescribed for each crime are idneticle. One reason is that each crime has different elements and a defendant can only be convicted only if the jury has found that each of those elements are met, and finds that each element of the crime to impose the conviction.

With regard to the substantive challenges Mr.KeMache-Webster primarily contends that the district court abused its discretion by imposing a sentence for inticement of incest that was greater that Maryland's penalty for the charge of actual incest. However, the district court noted numerous reason for imposing a life sentence, including Mr. KeMache-Webster's criminal history attempts to circumvent court orders and failure to accept the seriouness of his crime. Similarly, because the facts of attempt to circumvent court orders, and failure to accept the seriousness of the crime aggravates the legally prescribed range of allowable sentences, it constitutes an element of a more separate aggravated offense that must be found by the jury, regardless of what sentence the defendant might have received if a different range had been applied or made applicable. Indeed, if a judge were to find a fact that would increase the statutory maximum sentence, such a finding would violate the Sixth Amendment, even if the defendant ultimatley received a sentence falling within the original guidelines sentencing range ( i.e., the range applicable without the aggravating facts or factors) Cf. Hobbs v. State, 44 Tex. 353 (1875) (reversing conviction where the defendant was indicted for a crime punishable by 2 to 5 years and sentenced to 3 years because the trial court improperly instructed the jury to sentence the defendant between 2 to 10 years if it had found a particular aggravating fact); State v. Callahan, 109 La 946, 33 So. 931 (1903) (findino ex post facto violation where a newly enacted law increased the range of punishment, even though defendant was sentenced within the range established by the prior law). The essential point is that the aggravating fact produced a higher and greater range, which; in turn, conclusively indicates that the fact is an element of the distinct and aggravated crime. It must, therefore, be submitted to the jury and found beyond a reasonable doubt.

Because there is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum, the Supreme Court has stated in Alleyne that, "Harris was inconsistent with Apprendi." Therefore the Court overruled its earlier decision accordingly.

-11-

Continuing with Alleyne the Court further stated: "In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling in todays court does not mean that any fact influences judicail discretion must be found by a jury. We have long recognized that broad sentencing, discretion; informed by judicial factfinding, does not violate the Sixth Amendment. <u>Dillion v. United States</u>, 560 U.S. ____, ___,130, S.ct. 2683, 177 L.Ed. 2d 271 (2010)("[W]ithin established limits[§]...the excercise of [sentencing] discretion does not contrvene the Sixth Amendment even if it is informed by judge-found facts" £emphasis omitted deleted and internal quotation marks omitted)); Aporendi; 530 U.S., at 481, 120 S.CT. 2348, 147 L.Ed 2d 435("[N]othing in this suggest that it is impermissble for judges to excercise discretion taking into consideration various factors relating both to offense and offender- in imposing a judgment within the range prescribed by statute").

This position has firm historical roots as well. As with Bishop explains

"[W]ithin the limits of any discretion as to the punishment which the law may have allowed, the judge, when he pronounces sentence, may suffer his discretion to be influenced by matters shown in aggravation or mitigation, not covered by allegations of the indictment. " Bishop § 85. at 54.

"[E]stablishing what punishment is available by law and setting a specific punishment within the bounds that the law has prescribed are two very distinct and differnt things."

Page 2

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District Fourth - Greenbelt, Md. |
|---|---|
| Name (under which you were convicted): Franesiour B. KeMache-Webster | Docket or Case No.: |
| Place of Confinement: FCI-CMU Terre Haute, Indiana | Prisoner No.: USM # 42459-007 |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) |
| Fourth District of Maryland        v. | Franesiour B. KeMache-Webster |

## MOTION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

The United States District Court       Located:
For The Southern District of Maryaland      6500 Cherrywood Lane
Greenbelt, Maryland            Greenbelt, Maryland, 20770

   (b) Criminal docket or case number (if you know):  8:10-00654-(RWT)

2.  (a) Date of the judgment of conviction (if you know):
      April 21, 2011; The Honorable Judge: Roger W. Titus

   (b) Date of sentencing:  August 05, 2011; The Honorable Judge: Roger W. Titus

3.  Length of sentence:  [LIFE] in prison & [LIFE] on supervised release

4.  Nature of crime (all counts):

1 ct. Title 18 Section 2422(b)      Coercion & Enticement of A Minor

   w/ Amended Indictment of:      Incest: Md. Code Ann. 3-323
      [ UNCHARGED ]

5.  (a) What was your plea? (Check one)

      (1)   Not guilty ☒      (2)   Guilty ❑      (3)   Nolo contendere (no contest) ❑

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count

   or indictment, what did you plead guilty to and what did you plead not guilty to?

I plead [NOT GUILTY] to the indictment as well as to an UNCONSTITUTIONAL
amended indictment of:
Maryland Code Annotated § 3-323 Incest [Which I was [NOT] charged to or with]

6.  If you went to trial, what kind of trial did you have? (Check one)      Jury ☒      Judge only ❑

Page 3

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☐     No ☒

8. Did you appeal from the judgment of conviction?     Yes ☒     No ☐

9. If you did appeal, answer the following:

    (a) Name of court: The Fourth Circuit Court of Appeals Richmond, Virginia

    (b) Docket or case number (if you know): 11-4801

    (c) Result: Conviction & Sentence were affirmed:

    (d) Date of result (if you know): November 28, 2012

    (e) Citation to the case (if you know): 497 Fed App'x 399; 2012 US App Lexis 24655

    (f) Grounds raised:
    The Gov't Entered insufficient Evidence That Petitioner Violated § 2422(b)
    The Court Erred By Denying Motion For Acquittal.
    The District Court Improperly Charged The Jury Instructions.
    The District Court Made (3) Improper Evidentiary Rulings.
    1) Abused its discretion by refusing to allow evidence of Nikki's behavior.
    2) Abused its discretion by allowing gov't to redact benign correspondences
       portions of written & spoken between father and daughter.
    3) Abused its discretion by allowing gov't investigators' lay opinion.

    (g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☒   No ☐

        If "Yes," answer the following:

        (1) Docket or case number (if you know): 12-9451

        (2) Result: Certiorari Denied; all Justices took part
                    Certiorari ReHearing Denied; all Justices took part

        (3) Date of result (if you know):   April 29, 2013   &   July 22, 2013

        (4) Citation to the case (if you know): 133 S.Ct. 2041;   &   134 S.Ct. 29;

        (5) Grounds raised:
        The Appeal Court Panel's Decision Conflicts w/ Opinion of the 1st & 8th
            Circuit Court's Decision.
        The Fourth Circuit Erred In Applying A Plain Error Analysis When Mr.
            Webster's Argument Was Directed At The Sufficiency of The Evidence,
            Not The Propriety Of The Jury Instructions.
        The Court Should Grant The Writ To Decide The Important Issue Of Federal
            Rules of Appellate Procedure Regarding When The Goov't Waives An
            Argument Not Presented In Its Brief.

10. Other than the direct appeals listed above, have you previously filed any other motions,

    petitions, or applications concerning this judgment of conviction in any court?

        Yes ☒   No ☐

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: The U.S. Supreme Court for Rehearing of Certiorari

        (2) Docket or case number (if you know): May 29, 2013

        (3) Date of filing (if you know): 12-9451

        Petitioner, has also filed with this Court a Rule 33(b)(1) recently filed;
           Motion For Reconsideration of; June 10, 2014 DENIAL for prior filing.

Page 4

(4) Nature of the proceeding: The Rehearing Certiorari was Denied.

(5) Grounds raised:

Was Subject-Matter-Jurisdiction Violated When Petitioner Was Being
Commandered From The Criminal Jurisdiction of The State of Illinois
To The Criminal Jurisdiction of The United States Pursuant To The 10th
Amendment of The U.S. Constitution.

Did The Ditrict Court Err, In Allowing A 5th Amendment Due Process Vio-
lation, When It Gave A Different Jury Instruction & Amended The Indictment.

Did The District Court Err, When It Failed To Consider The Constitutional
Protections Of The 1st Amendment Between parent & Child Regarding The
Use and Application of Applying §2422(b).

Can § 2422(b) Be Interpreted without a Substantial Step Theory Prong.

(6) Did you receive a hearing where evidence was given on your motion, petition, or

application?   Yes ❑ No ☒

(7) Result: Denied; all Justices took part

(8) Date of result (if you know): July 22, 2013

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: The 4th District Court of Greenbelt, Maryland

(2) Docket or case number (if you know): 8:10-00654-(RWT)

(3) Date of filing (if you know): June 21, 2014

(4) Nature of the proceeding:  Motion For Reconsideration of: § 33(b)(1)

(5) Grounds raised:

Newly Discovered Evidence
Prosecutorial Misconduct / Selective Prosecution

(6) Did you receive a hearing where evidence was given on your motion, petition, or

application?   Yes ❑ No ☒

(7) Result: Motion is still pending

(8) Date of result (if you know):  None at this time original denial was on June 10, 2014

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your

motion, petition, or application?  I will appeal if the motion is denied.

(1) First petition:      Yes ☒ No ❑

(2) Second petition:   Yes ❑ No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly

why you did not:     That Petition has not been answered as of this filing.


12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

**GROUND ONE:**

Actual Innocence Claim:

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

     SEE ATTACHED SHEETS


(b) **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☒   No ☐

    (2) If you did not raise this issue in your direct appeal, explain why:

It was raised @ argument of Certiorari ReHearing
It was rasied under § 29  As well in my Supplemental Brief of Dirct Appeal

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☒  No ☐

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: It was rasied as Appellee's Supplemental Brief

Name and location of the court where the motion or petition was filed:

The United States Court of Appeals Fourth Circuit; Richmond. Virginia

Docket or case number (if you know):  8:10-00654-(RWT) & 11-4801

Date of the court's decision: August 05, 2011  &  November 29, 2012

Result (attach a copy of the court's opinion or order, if available):
Supplemental Brief Entered but not heard
Appeals' Court granted Leave To file.    See Appendix KW-Appx-1

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☒  No ☒     On the Rule 29  I did; On The Supplemental I did not.

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐  No ☒  Was not told I could, It was brought up on appeal as "cause"

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒  No ☐  It was broought up, 497 Fed App'x 342 at n.2 paragraph 4

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
It was first addressed under Rule 29, than under Direct Appeal, Richmond,Va.

Docket or case number (if you know): 8:10-00654-(RWT)  &  11-4801

Date of the court's decision: The District: 08/05/2011; Appeals Court: 11/28/12

Result (attach a copy of the court's opinion or order, if available):
In the District Court; Rule 29 denied at Sentencing [Sentencing Tran. pg2-12]
In the Appeals Court; it was brough up on various issues 497 Fed App'x 342

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

The Petitioner, was not informed that the Rule 29 could be raised under
Direct Appeal as one of his arguments, but it was brought to the Courts
attention while arguing other grounds, which made it preserved to be used
as it is being used and presented here today.


**GROUND TWO:**

Amended Indictment Claim:

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE ATTACHED SHEETS

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒ No ☒  Under Direct Appeal Petitioner filed a Supplemental Brief.

(2) If you did not raise this issue in your direct appeal, explain why:

It was raised under Rule 29 as well as under Direct Appeal & Certiorari.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☒  No ☐

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: Raised under Rule 29, Direct Appeal & Certiorari.

Name and location of the court where the motion or petition was filed:

The 4th District Court of Md. & The 4th Circuit Appeals, Va.& US Supreme Court

Docket or case number (if you know): 8:10-0654-(RWT), 11-4801 & 12-9451

Date of the court's decision: Aug. 05, 2011; Nov. 28, 2012 & Jul. 22, 2013;

Result (attach a copy of the court's opinion or order, if available):

See Attatched Appendixes.

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☒ No ☒  The Rule 29, was heard, The Appeals Court Granted Leave not heard.

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☒ No ☐  The Direct Appeal was sent to the US Supreme not heard.

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒ No ☐  This issue was raised in A Supplemental Brief & Certiorari.

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Was Presented in US Ct. App Richmond, Va. & US Supreme Court Washington, DC

Docket or case number (if you know): 11-4801 & 12-9451

Date of the court's decision: November 28, 2012; & July 22, 2013

Result (attach a copy of the court's opinion or order, if available):

Conviction and Sentence were Affirmed in Appeals Court
Conviction and Sentence were not addressed in US Supreme Court Cert Denied

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue:  As addressed issue, was brought before the US Supreme Court
the matter was not addressed nor heard; Certiorari was DENIED.

        The issues presented before the US Court of Appeals for the 4th
Circuit and the US Supreme Court, were presented as matters that the
US Supreme Court had ruled as favored or that both Court had previously
ruled in favor of or, as law of the land had adopted, the matter was
not heard or ruled on.

**GROUND THREE:**

    Brady Material Violation:

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

    SEE ATTACHED SHEETS

**(b) Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

      Yes ☒  No ☒   Under Direct Appeal Petitioner filed a Supplemental Brief.

    (2) If you did not raise this issue in your direct appeal, explain why:

    It was raised under Rule 29 as well as under Direct Appeal & Certiorari.

**(c) Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

      Yes ☒  No ☐

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: Raised under Rule 29, Direct Appeal & Certiorari.

Name and location of the court where the motion or petition was filed:
The 4th District Court of Md., The 4th Cir, Court of Appeals & US Supreme Court

Docket or case number (if you know): 8:10-0654(RWT); 11-4801; & 12-9451

Date of the court's decision: Aug. 05, 2011; Nov. 28, 2012; & Jul. 22, 2013

Result (attach a copy of the court's opinion or order, if available):

See Attatched Appendixes

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☒ No ☒ .The Rule 29 was heard, Ct. of App Granted leave for Supplemental

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☒ No ☐ The direct Appeal was sent to US Supreme Court, not heard.

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒ No ☐ This issue was raised in a Supplemental Brief & Certiorari

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Was presented in US Ct. of App. Richmond, Va. & US Supreme Ct. Washington, DC

Docket or case number (if you know): 11-4801 & 12-9451  They were presented NOT HEARD

Date of the court's decision: November 28, 2012 & July 22, 2013

Result (attach a copy of the court's opinion or order, if available):

Conviction & Sentence were Affirmed in Appeals Court.
Conviction & Sentence were not addressed in US Supreme Court, Cert Denied.

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue: As stated; the matter was brought before the US Supreme Court
the matter was not accepted or adddressed nor heard Cert. DENIED.

     The matters presented before the US Court of Appeals for the 4th
Circuit and the US Supreme Court were presented as matters that the
US Supreme Court had ruled as favored, or that both Courts had previously
ruled in favor of, or as law of the land had adopted, the matter was not
heard and ruled on.

**GROUND FOUR:**

Cause & Prejudice Claim:

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒ No ☒  Raised under Rule 29, granted Leave to file Supplemental Brief.

(2) If you did not raise this issue in your direct appeal, explain why:

It was raised under Rule 29, as well as under Direct Appeal & Certiorari
Petitioner was Granted Leave to file Direct Appeal Supplemental Brief.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☒ No ☐

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: Raised under Rule 29, Direct Appeal & Certiorari

Name and location of the court where the motion or petition was filed:

The 4th Dist. Ct. of Md., The 4th Cir. Ct. of App. of Va. & US S. Ct.

Docket or case number (if you know): 8:10-0654(RWT), 11-4801; & 12-9451

Date of the court's decision: Aug. 05, 2011; Nov. 28, 2012 & Jul. 22, 2013

Result (attach a copy of the court's opinion or order, if available):

See Attached Appendixes

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☒ No ☒  The Rule 29. was heard, The Direct Appeal's Supplemental was not

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☒ No ☐  The Direct Appeal was sent to the US Supreme Ct., was not heard

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒ No ☐  The issues were raised in a Supplemental Brief & Certiorari

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Was presented in US Ct. of App. Richmond, Va. & US Supreme Ct. Wash. DC.
In The Appeals Court as a Supplemental Brief not heard, just preserved.

Docket or case number (if you know): 11-4801 & 12-9451 They were presented NOT HEARD

Date of the court's decision: November 28, 2012 & July 22, 2013

Result (attach a copy of the court's opinion or order, if available):

Conviction & Sentence were Affirmed in the Appeals Court.
Conviction & Sentence were not addressed in the US Supreme Court, Cert. Denied.

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue: As stated; the matter was brought before the US Supreme Court the matter was not accepted or addressed nor heard. Cert. DENIED.

      The matters presented before the US Court of Appeals for the 4th Circuit and the US Supreme Court were presented as matters that the US Supreme Court had ruled as favored, or that both Courts had previously ruled in favor of, or as the law of the land had adopted, the matter was heard and ruled on.

13. Is there any ground in this motion that you have not previously presented in some federal court? NO!

If so, which ground or grounds have not been presented, and state your reasons for not

presenting them: There are other grounds that I do intend to raise that HAVE been raised in the US District, Appeals & Supreme Courts, but were adopted, heard or vacated. Such as:

Compulsory Clause Violation.                  Miscarriage of Justice Exception.
Confrontation Clause Violation.             Napue Violation.
Due Process Violation 5th & 14th Amendment.   Newly discovered Evidence.
Equal Protection Violation                 Prosecutorial Misconduct.
Gateway Innocence Claim.               Renunciation Defense MPC 5.01(4)
Ineffective Assistance of Counsel        Subject Matter Jurisdiction 10th Amndt.

14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court

for the judgment you are challenging?     Yes ☒  No ☐

If "Yes," state the name and location of the court, the docket or case number, the type of

proceeding, and the issues raised. D.C. Superior Family Court     10-174 & 176 Neg./ TPR
Arlington County Circuit Court  Coram Nobis     Case No. C.M. 11-083
Arlington, Virginia.

U.S. District Court Greenbelt   Reconsideration Rule 33(b)(1)  08:10-0654(RWT)
Greenbelt, Maryland        & *Request of Rule 35(b)(2)(A)(C) 08:10-0654(RWT)

* Was made as a request to AUSA Ms. Freitas & Mrs. Belf Esq's back in May 2014.

15. Give the name and address, if known, of each attorney who represented you in the following

stages of the judgment you are challenging:  Attorney only for: D.C. Superior Court
(a) At preliminary hearing:            Pro se for other cases

For D.C. family Court: Mr. Howard Margulies Esq. P.O. Box 2577
(b) At arraignment and plea:        Columbia, Maryland 21045 - 2577

The same as above

(c) At trial:

The same as above

(d) At sentencing:

Still  Pending Matter

The same as above

Page 12

(e) On appeal:

Still Pending Matters / Same as above.

(f) In any post-conviction proceeding:

None at this time.

(g) On appeal from any ruling against you in a post-conviction proceeding:

None at this time.

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ☐ No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ☐ No ☒     I HAVE LIFE I CAN NOT SERVE THIS ONE!!!

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: THERE ARE NO FUTURE SENTENCES OR CRIMES TO FIGHT OVER!!!

(b) Give the date the other sentence was imposed:   THERE ARE NONE!

(c) Give the length of the other sentence: THERE ARE NONE!

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?     Yes ☐  No ☒

THERE ARE NONE TO FILE! I SHALL NOT BE HAVING OR RECEIVING ANY NEW CHARGES OR SENTENCES!!!    ENOUGH IS ENOUGH!!!

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you
must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not
bar your motion.*

     I AM [NOT] TIME - BARRED.
     MY LAST JUDGMENT DATE WAS JULY 22, 2013
US S.Ct.- 134 S.Ct. 29, 186 L.Ed. 2d 924  KeMache-Webster v. U.S.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.
§ 2255, paragraph 6, provides in part that:

 A one-year period of limitation shall apply to a motion under this section. The limitation period
 shall run from the latest of —

  (1) the date on which the judgment of conviction became final;

  (2) the date on which the impediment to making a motion created by governmental action in
  violation of the Constitution or laws of the United States is removed, if the movant was
  prevented from making such a motion by such governmental action;

  (3) the date on which the right asserted was initially recognized by the Supreme Court, if
  that right has been newly recognized by the Supreme Court and made retroactively
  applicable to cases on collateral review; or

  (4) the date on which the facts supporting the claim or claims presented could have been
  discovered through the exercise of due diligence.

1

## QUESTIONS PRESENTED

1
DID THE FEDERAL AUTHOURITIES ERR, WHEN [KEMACHE-WEBSTER] MADE
REQUEST BUT WAS DENIED HIS "FIFTH AMENDMENT DUE PROCESS RIGHTS
TO A HEARING" PURUANT TO HIS TENTH AMENDMENT RIGHT WHEREIN AS
REGARDING HIS BEING COMMANDEERED FROM THE CRIMINAL JURISDICTION
OF THE STATE OF ILLINOIS TO THE CRIMINAL JURISDICTION OF THE
UNITED STATES?

2
DID THE COURT ERR, IN ALLOWING A FIFTH AMENDMENT DUE PROCESS RIGHT
VIOLATION, WHEN IT GAVE JURY INSTRUCTIONS, CITING: A COMPLETED
VIOLATION, e.g. "COMPLETED THEORY" v. AN ATTEMPTED VIOLATION, e.g.
AN "ATTEMPTED VIOLATION" AS CHARGED IN THE INDICTMENT?

3
DID THE COURT ERR, WHEN IT FAILED TO CONSIDER THE CONSTITUTIONAL
PROTECTIONS OF THE FIRST AMENDMENTS FREE EXPRESSION RIGHTS OF THE
COMMUNICATION BETWEEN PARENT AND HIS MINOR CHILD REGARDING THE ON
APPLICATION TO TITLE  18 SECTION 2422(b) OF THE U.S. CODE?

4
CAN TITLE 18 SECTION 2422(b) OF THE U.S. CODE BE INTERPRETED TO
NOT REQUIRE THE "SUNSTANTIAL STEP" PRONG WITHOUT CREATING ANY
TYPE OF CONSTITUTIONAL DOUBT AGAINST THE FIRST AMENDMENT AND THE
TENTH AMENDMENT AND / OR EXCEEDING THE BOARDERS OF THE UNITED
STATES COMMERCE CLAUSE AS IT IS WRITTEN?

5
WAS THE DISTRICT COURT IN ERROR FOR NOT ACCEPTING THE FACTS OF THE
PETITIONER PRESENTING HIS THEORY THAT HE HAD ABANDONED, WITHDREW,
RENOUNCED ALL POSSIBLE THEORIES OF THE GOVERNMENT CHARGING HIM WITH
18 U.S.C. 2422(b), WHEN IT IS UNDISPUTED THAT THE PETITIONER HAS IN
ALL POSSIBLE MEANS AND EFFORTS, ABANDONED, WITHDREW, RENOUNCED WHAT
WAS CONSIDERED ILLEGAL ACTIVITY BY SPEAKING WITH LAW ENFORCEMENT /
LEGAL OFFICIALS OF THE F.B.O.P OF MARION, WITHIN DAYS, WEEKS AN ALSO
MONTHS BEFORE THE GOVERNMENT HAD TAKEN PRIVELEGE TO CHARGE PETITIONER.

6
DID THE DISTRICT COURT ERR, IN DETERMINING THE PETITIONERS CONDUCT
WHICH WAS NEITHER ADMITTED TO; BY THE PETITIONER NOR FOUNDED BY A
JURY BEYOND A REASONABLE DOUBT, IN VIOLATION OF THE FIFTH, SIXTH
AND TOURTEETH AMENDMENT, TO THE UNITED STATES CONSTITUTION; DURING
THE PETITIONER'S SENTENCING HEARING?
                              -PENDING EDIT: FED. R. CIV. P. RLUE  § 15-
7
WAS THE COUNSELOR INEFFECTIVE BY NOT INVESTIGATING AND CROSS-
EXAMING THE PRIMARY WITNESS IN THE PETITIONER'S TRIAL?
                              -PENDING EDIT: FED. R. CIB. P. RULE  § 15

8

WAS COUNSELOR INEFFECTIVE BY NOT USING THE COMPULSORY PROCESS OF SUBPOENA
POWERS TO CALL UPON WITNESS AND THE VICTIM FOR THE PETITIONER'S TRIAL, WHEN
THERE IS EVIDENCE THAT THERE WERE WITNESSES AND VICTIM AVAILABLE.
                                    PENDING EDIT: FED. R. CIV. P. RULE § 15

9

DID THE COURT ERR, IN ALLOWING THE GOVERNMENT TO NOT ALLOW THE VICTIM TO BE
BROUGHT BEFORE THE COURT, WHEN IT IS SHOWN AND UNDISPUTED THAT SHE WAS READILY
AVAILABLE; TO NOT HAVE VIOLATED THE PETITIONER'S FIFTH AMENDMENT UNDER THE DUE
PROCESS CLAUSE AND HIS RIGHT TO CONFRONTATION CLAUSE OF THE U.S. CONSTITUTION?

10

DID THE DISTRICT COURT ERR DENYING THE PETITIONER'S MOTION FOR ACQUITTAL, WHERE
THE ONLY THEORY PRESENTED TO THE JURY WAS THAT THE PETITIONER WAS GUILTY OF THE
COMPLETED ( AS APPOSED TO ATTEMPTED ) VERSION OF 18 U.S.C. § 2422(b), BUT THE
UNDISPUTED FACTS AT TRIAL HAD ESTABLISHED THAT THE PETITIONER NEVER ACTUALLY AT
ALL ENTICED THE MINOR ( HIS DAUGHTER ) TO ENGAGE IN ILLEAGL SEXUAL ACTIVITY?

                                    PENDING EDIT: FED. R. CIV. P. RULE § 15

1c

QUESTIONS PRESENTED

\*  PLEASE BE ADVISED: THE QUESTIONS STATING:
      PENDING EDIT: FED. R. CIV. P.  RULE § 15
\*\*\*  SHALL BE PRESENTED WITHIN TWO TO THREE WEEKS  \*\*\*

Respectfully submitted;

04 July 2014

Mr. Françsiour B. KeMache-Webster
USM # 42459-007
FCI - CMU Terre Haute
P.O. Box - 0033
Terre Haute, Indiana 47808


CERTIFICATE OF SERVICE


  I, AFFIRM UNDER THE PENALTIES OF PERJURY THAT THIS INFORMATION
GIVEN: IS TRUE, CORRECT AND ACCURATE TO THE BEST OF MY ABILITIES
AND KNOWLEDGE.
SIGNED THIS 4th DAY OF July, IN THE YEAR 2014.

Respectfully submitted;

Mr. Françsiour B. KeMache-Webster
USM # 42459-007
FCI - CMU Terre Haute
P.O. Box - 0033
Terre Haute, Indiana 47808

ARGUMENT

1.

DID THE FEDERAL AUTHORITIES ERR, WHEN [KEMACHE-WEBSTER] MADE
REQUEST BUT WAS DENIED HIS "FIFTH AMENDEMNT DUE PROCESS RIGHTS
TO A HEARING" PURSUANT TO HIS TENTH AMENDMENT RIGHTS WHEREIN
REGARDING HIS BEING COMMANDEERED FROM THE CRIMINAL JURISDICTION
OF THE STATE OF ILLINIOS TO THE CRIMINAL JURISDICTION OF THE
UNITED STATES ?

The question whether a person charged and indicted for viola-
ting a federal statue, has standing to challenge the validity on
the grounds that, by  enacting it, Congress exceeded its powers
under the Constitution, thus intruding upon the sovereignty and
authority of the states. This was settled in;

See:

Bond v. United States, 564 U.S._____, No. 09-1227,

Slip Op *1 (June 16, 2011),

Where they concluded that the petitioners "Does have
standing to challemge federal statue." Id.

See:

Oregon v. Legal Serv. Corp., 552 F.3d 965 (9th Cir. 2009)

The court decided that private parties [do not] have
standing to challenge federal statue under the tenth amendment
which prevented [KEMACHE-WEBSTER] from pressing this argument
earlier.

Bond abrogated this decision leaving this claim ripe for review.
[KEMACHE-WEBSTER], now argues. the conviction is void and must
be vacated, because the statue under which he was charged being
under Title 18 Section 2422(b), exceeds Congress's enumerated powers
and therefore violates the Tenth Amendment of the U.S. Constitution.

As every student learns through their course of education, our
constitution has established  a system of dual sovereignty between
federal and state(s) governement.

See;

Gregory v Ashcroft, 501 U.S. 452, 451 (1991)

In our system the federal government powers are enummerated
and hence are limited.

See:

McCollock v. Maryland, 17 U.S. 316, 4 Wheat, 36, 405 (1819)

("This government is acknowledged by all to be one of
enummerated powers").

This Congress has no power to act unless the constitution
authorizes it to do so.

In <u>United States v. Morrison</u>, 529 U.S. 598, 607 (2000)

(Every law enacted by congress [must] be based on one or more of its powers enummerated in the the constitution").

The Constitution, which admittedly nowhere speaks explicitly about the creation of federal crimes beyond those on the related to: [COUNTERFEITING], [PIRACIES & FELONIES COMMITTED ON THE HIGH SEAS], [TREASON] and [AGAINST LAW OF NATIONS]. Article 1 § 8 CLS. 6, 10; Article III, is offended here where, the statues that are involved are not within congress's power to enact.

The states, in turn; are free to excercise all powers that the constitution does not withhold from them.

In Amendment 10,

[ The powers not delegated to th eUnited States by the Consti-
-tution, nor prohibited by it to the states are reserved to
the states respectively, or to the people ].

This constitutional structure establishes different default rules for congress and the states: As listed above, congress's powers are "Few & Defined", while those that belong to the states "Remain .....Numerous and Indefinite."

The federalist No. 45, P 328(B. Wright ed 1961) (j. Madison).

Here [KEMACH-WEBSTER] asserts that the conduct with which he is charged is local in nature and should of been left to the local authorities to prosecute or turned over to the local authorities to be prosecuted. And that cong ressional regulation of that conduct does signal a massive and unjustifiable expansion of federal law enforcement into state-regulated domain.

The public policy of the state of Illinois, "enacted in its own capacity as sovereign, has been displaced by that of the national governement. The law[s] to which [KEMACHE-WEBSTER] is subjected, the prosecution [he] seeks to counter, and the punishment [he] must face may not have come about if the matter were left for the state of Illinois to decide." <u>Bond</u>, 564 U.S.____, Slip Op., *12 (Kennedy J.)

[KEMACHE-WEBSTER], was housed in the USP- Marion Illinois prison between the dates of April 27, 2010 and September 16, 2010, serving a six month sentence issued by Washington, D.C. for a bad check that was issued by him.
At the end of [KEMACHE-WEBSTR'S] sentence being on September 16, 2010; as he was processing for release from U.S.P. Marion, where he was presented with a forwarded facsimile from the Federal Distrct Court of Greenbelt Maryland, that a complaint was filed against him to state that between the dates of May 04, 2010 and August 18, 2010, he had violated Tile 18 Section 2422(b) of the U.S.Code in the state of Maryland where is was undisputed that between those dates he was incarcerated in the U.S.P. Marion prison and had not left the prison nor the state of Illinois.

4

On September 16, 2010, the Williamson County Sheriff's Office commandeered [KEMACHE-WEBSTER] from U.S.P. Marion and placed him in their local jurisdiction and authority. A few hours later; with--out [KEMACHE-WEBSTER] having any type of "HEARING" in the local authorities court, he was therefore transfered to the criminal authorities of the Southern Distrct of Illinois Federal District Court and therein presented as a federal detainee without his being given due process of his Tenth Amendment Rights to a hearing under the State of Illinois authority.

On October 18, 2010, the federal authorities presented that of [KEMACHE-WEBSTER] to the criminal jurisdictional authorities of the Nothern District of Maryland, Greenbelt, before the issuing magistrate to be informed of the federal charge logged against him.

On October 25, 2010, the federal authorities present to that of [KEMACHE-WEBSTER] that of what is considered a "TRUE BILL" Indictment.

Maintaing the federal - state balance takes on heightened impor-tance and sensitivity where - as here - criminal law enforcement au-thority is concerned.
     In:
         Patterson v. NewYork, 432 U.S. 197 (1977). The court noted "Preventing and dealing with crime is much more the business of the state than it is the federal government." Id.@ 201.The framers invis-ioned that the ordinary administration of "Private justice between citizen of the same state" would fall within the province of the state governments."

The federalist No. 17 @ 118 (Alexander Hamilton) (Clinton Rossiter ed 1961). under the "system" Devised by our founders and maintained until recently, federal prosecutors [did] not s[eek] to displace the state system of criminal justice in routine cases."

     See:
         United States v. Crawford, 982 F.2d 199, 205 (6th Cir. 1999)
                                    (Merritt, C.J. Concurring ).

Significantly, the majority of the new fedearl crimes seek to prosecute conduct that is simultaneously subject to prosecution under state laws that have been on the books for years.

         cf. United States v. Lopez, 514 U.S. 549 551 (1995)

Federal laws notably extend even to routine drug & firearm crimes and garden - variety infractions or offensse, such as carjacking;

See: Title 18 Section 2119.

Here Congress criminalizes conduct already denounced as a criminal infraction or offense by the state it effects a 'Change in the sensi-tive relation between federal and state criminal jurisdiction.'

In Lopez, 514 U.S. @ 561 n. 3 (quoting United States v. Enmons, 410 U.S. 396, 411-12 (1973).

5

The federalization trend has also taken an admistrative toll
on the federal judicial system. In response to swelling federal
criminal dockets, the judicial conference of the United States
urge in its 1995 long range plan that "Criminal Jurisdiction
should be assigned to federal courts only to further the respon-
sibility for adjudicating all other matters." Judicial conference
of the United States, long range plan for the federal courts (1995).

Reprinted In 166 F.R.D. 49, 83(1995)

To that end, the plan narrowly set forth five types of crimes
appropriate for federal law enforcement - none of which covers that
of [KEMACHE-WEBSTER'S] conduct. Id.@ 84-85. Cogizant of such concerns
the Supreme Court has resisited the federal assumption of plenary
police power in areas that have traditionally and historically fal-
len under state control or local control. In Lopez, the court in-
validated a statute that made it a federal crime to posessing a fire
arm within 1,000 feet of a school. In holding that the ststaute exce
eded congress's power to regultae commerce, the "Court stressed that
the area was one of traditional state concern."

See:
Jones v. United States, 529 U.S. 848, 858 (2000);

Lopez, 514 U.S. @ 561 n. 3; Id. @ 564; Id.@ 577 (Kennedy J.
Concurring).

That decision later informed the Court's reasoning in Jones,
in which it declined to tread a federal statute "As encompassing
the arson of an owner - occupied private home." 529 U.S. 858.

The court explained that, in light of the "Concerns brought to
the fore in Lopez," the statute should be read to avoid render[ing]
the 'Traditionally local criminal conduct' in which the petitioner
JONES, engaged 'A matter for federal law enforcement.'"lest it
"Change [ ] the federal - state balance. Id.;See Also Morrison, 529
U.S. @ 636 n. 10 (2000)(Souter, J. Dissenting)("I and other members
of this court appearing before congress have repeatedly argued against
the federalization of traditional state crimes and the extension of
federal remedies to problems for which he states have historically
taken responsibility and may deal with today if they have the will
to do so,").

Federal Courts were not created to adjudicate local crimes...
no matter how sensational or henious the crimes may be.

Than Chief Justice William Renquest , critizied the congressional
movement towards federalization the criminal justice system.

Stating warnings of the damages that such a trend was having on
the concept of federalism:

The trend to federalize crimes that tradidtionally have been
handled in state courts not only is taxing the judiciary's resources
and effecting its budget needs, but also threatens to change entirely
the nature of our federal sysytem.

A local crime, which punishes far less severly, was turned into
a federal offense despite an Illinois stature in place to prosecute
this conduct. Aside from the lack of authority by congress to enact

6

the statutes here, the government's conduct cannot be tolerated by the tenth amendment.

When the legislative, judicial and executive powers are united in the same person, or in the same body of magistrates, there can be no liberty; because apprehensions may arise,lest the same monarch or senate should enact tyrannical laws, to execute them in a tyrannical manner. Again, there is no liberty, if the judiciary power be not separated from the legislative and executive.

Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitary control; for the judge would be the legislator.

Were it joined with the executive power , the judge might well behave with violence and oppression.

See:

Montesquieu, Spirit of Laws, Bk 11, ch 6 (1748), reprinted in 1 The Founder's Constitution, 623, 624-25(P. Kurland & R. Lerners ed 1987) ("The Founder's Constitution").

Some decades later in 1776, the same sentiment was evident in the instructions of the inhabitants of the town of Boston to their representatives  in Congress:

It is essential to liberty, that the legislative, judicial and executive powers of the government be, as nearly as possible, independent of, and seperate from each other; for where they are united in the same person or number of person, there would be wanting that mutual check which is the principle security against the making of arbitrary laws, and wanton excercise of power in the execution for them. Reprinted in H.Niles, Principle and Acts of th Revolution in America (1876); 1 Founder's Consti tutional, Supra, @ 319. Finally, James Madison, in the Federalist No 47, stated that "The Accumulation of all powers legislative, executive and judiciary in the same hands ...may justly be pronounced the very definiation of tyranny." Id. @ 325.

7

2.
DID THE COURT ERR, IN ALLOWING A FIFTH AMENDMENT DUE PROCESS RIGHT
VIOLATION WHEN IT GAVE JURY INSTRUCTIONS CITING: A COMPLETED
VIOLATION  e.g.  "COMPLETED THEORY"  v.  AN ATTEMPTED VIOLATION
e.g.  AN "ATTEMPTED THEORY" AS CHARGED IN THE INDICTMENT ?

On October 25, 2010 [KEMACHE-WEBSTER] was indicted for
Between on or about May 04, 2010 and on or about August 20, 2010
in the District of Maryland and elsewhere, the defendant did —
knowingly use [AND] attempt to use a facility and means of inter-
state and foreign commerce to knowingly persuade, induce, entice
and coerce an individual who has not attained the age of 18 years
to engage in sexual activity for which any person could be charged
with a criminal offense. Title 18 Section 2422(b) of U.S. Code.

On April 19, 20 & 21, 2011 [KEMACHE-WEBSTER] proceeded with trial
during the course of the trial the prosecution used several redacted
and imcompleted peices of evidence to envoke their case. The most
troubling of all of the trial was their closing argument and the jury
instructions that were [NOT] given. [KEMACHE-WEBSTER'S] indictment
reads [AND][ATTEMPTED], but the instructions that were given did not
entail an attempted theory nor a substantial step to either intent,
attempt or completed to the instant offense. The Jury was given the
[CONSTRUCTIVE AMENDMENT INSTRUCTIONS OF THE INDICTMENT] to which led
the jury to return a verdict of guilty of a completed offense, yet
he was indicted on an attempted offense. The request for a Rule 29
was timely entered based on the instruction, but the district court
denied the motion and set it for appellate review, which denied it
as well. There he filed a timely Writ of Certiorari, which was also
denied, He therefore brings before this Court the quest as such:

Did the court err, in allowing a fifth amendment Due Process
Right violation when it gave jury instructions citing a completed
violation e.g. a "completed theory" v an attempted violation e.g.
an "attempted theory" as charged in the indictment?

"[A] constructive amendment  accurs where proof @ trial goes
beyond the paremeters of the indictment in that it estabishes an  —

A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from that alleged in the indictment.

The distinction is important because a constructive amendment always requires reversal where as a varinace only requires reversal if it prejudices the defendants substantial rights.

* When a constructive amendment to an indictment is found the error id "fatal" & "reversible".

* When different evidence is presented at trial, but the evidence does not alter the crime charged in the indictment a mere variance occurs and it is only reversible if it prejudices the defendant .

*Like constructive amendment a variance amendment does not apply where the facts are not disputed.

Herein lies the argue of [KEMACHE-WEBSTER] during his trial the prosecution made reference to actions, crimes and wrong doings that did not have any dealings or place in the court room as to what they felt that their belief of why the e-mails,letters & the phone calls took place. The daughter e.g the said minor did [NOT] take the stand, nor did she appear in court or at any of the pre-trial procedures. The Counselor of Record had made clear that the F.R.E. of 404(b), was prejudicial to the case because it spoke on untried crimes or actions that were not priorly addressed in pre-trial or for that matter under any other format of law.

The government made an attempt to have [KEMACHE-WEBSTER] sign a stipulation in order for them to bringin such unwarranted infor-mation, but that was not accepted or done.

[KEMACHE-WEBSTER'S] indictment was written in one form but he
— was in fact charged in another, and than at sentencing he was given a sentence based on uncharged crimes, base on untried crimes stated by the government. For these reason he coviction based on a Fifth Amendment, U.S.Constitutional violation. These untried crimes gave him a sentence of [LIFE] with the reason being a variance to the statute of the case.

offense[s] different from or in addition to the charged by the
grand jury.
    See:
        United States v. Pigee, 197 F.3d 879, 886 (7th Cir. 99)
        (quoting; United States v. Willoughby, 27 F.3d 263, 266(99)
    "The issue whether the defendant was convicted of an offense
    not charged on the indictment. id. @ 887(quoting ......
        United States v. Miller, 471 U.S 130,138, 105
        S.Ct. 1811, 85 L.Ed 2d. 99 (1985)(altered original)

Constructive amendment of the indictment can accur when either
the government (usually during its presentation of evidence and/or
its argument at trial) the court (usually through the instructions
to the jury or both, broaden the possible bases for the conviction
beyond those presented to the grand jury to receive a true bill).

A contructive amendment of an indictment runs afoul of the Fifth
Amendment, which states in part: 'That no person shall be held to
answer for a capital, or otherwise infamous crime unless a present-
ment or indictment of a grand jury.

To constitute a constructive amendment, the incogruity must in
fact change the elements of the offense charged, such that the defen-
dant is actually convicted of crime other than that charged in the
indictment. Simply put, on indictment may not be so amended except
by resubmission to the grand jury. In deference to the exclusive
province of the grand jury to amend the charges in an indictment.

In the Fourth Circuit, constructive amanedments are erroneous
per se and require reversal regards of preservation.

See:
    United States v. Whitfield, 692 F.3d 288 (4th cir. 2012)

also  United States v. Wilbur, 674 F.3d 1160 2011

__  constructive amendment and vaiance are based on the rule that
after an indictment has been returned its charge(s) may [NOT] be
broadened through amendment except by the grand jury itself.

A constructive amendment of an indictment occurs when the
charging terms of the indictment are altered, either literally  or
in effect by the prosecutor or a court after the grand jury has last
passed upon them.

3.
DID THE COURT ERR, WHEN IT FAILED TO CONSIDER THE CONSTITUTIONAL
PROTECTIONS OF THE FIRST AMENDMENTS FREE EXPRESSION RIGHTS OF
COMMUNICATION BETWEEN A PARENT AND HIS MINOR CHILD REGARDING
TO ITS APPLICATION TO TITLE 18 SECTION 2422(b) OF THE U.S. CODE?

The communication between that of a parent/guardian as appose
to that of an unknown or that of a baby sitter, neighbor or an
intermediary are far very much seperated, differnt and opposite
of each other as screaming is to whispering.

The [T]heory behind this case is that [KEMACHE-WEBSTER'S] direct
communication & conversation via e-mail[s], letter[s] & phone-call[s],
that had transpired between him and his minor teenage daughter at
that time, were considered to be a violation of the federal statue
of Title 18 Section 2422(b), in regards to persuaion, inducement,
enticement or coercion [ the court chose enticement and gave it its
ordinary meaning] of a minor via a means of intersate commerce.

Herein [KEMACHE-WEBSTER] raises a constitutional challenge to
Title 18 Section 2422(b), & the constitutional infringment of the
First Amendments Free Expression Rights and the Tenth Amendment of
Enummerated Powers

The First Amendment

Congress shall make no law respecting an establishment of religon
or prohibiting the free excercise thereof; or abridging the free
dom of speech, or of the press; or the right of the people peace
ably to assemble, and to petition the Government for a redress
of grievances.

The Tenth Amendment

The powers not delegated to the United States by the Constitution
nor prohibited by it to the States, are reserved to the States
respectively, or to the people.

For these reasons [KEMACHE-WEBSTER] raises these points.

1.  The statute of Section 2422(b) criminalizes speech that is not
    imminently related to the harmful conduct the statute seeks to
    prevent; and

2.  The statute provides insufficient notice to the public and law
    enforcement as to what type of communication is prohibited.

In light of these arguments, [KEMACHE-WEBSTER] urges the court to
adopt one of his alternative constructions of the statute pursuant
to the [doctrine of constitutional avoidance], one, the criminalization
of communication or conversations that are accepted by the consti-
tution that are made directly between a parent and their minor child
should be considered as less imminent and far less odius than that
of a intermediary or non parental adult. Secondly, that the court
should not bind upon the parent or limit the authority bestowed upon

that of the parent/child relationship,or the relationship of the child &
the parent where speech being that of communicational or conversa-
tional in the manner or matter where Section 2422(b) is of conern.

Numerous Courts of Appeal have rejected overbreadth & vague-
ness doctrines that are related but distinct.

A law that is overbreath may be perfectly clear, but impermi-
sibly purport to penalties protected First Amendment activity.

Where vague law denies due process by imposing standards of
conduct so indeterminate that it is impossible to ascertain just
what will result in sanctions; in contarst.

See:
　　Hastings v. Judicial Conference of the U.S, 829 F.2d 91,
　　105, 264 U.S. App D.C. 306 (DC Cir. 1987)

Also:
　　Ashcroft v. Free Speech Coalition, 535 U.S. 829 234, 255,
　　122 S.Ct. 1389, 152 L.Ed. 2d 402 (2002).
　　"The overbreadth doctrine prohibits the Government from
　　banning unproptected speech if a substantial amount of
　　protected speech is prohibited or chilled in the process."

Numerous Courts of Appeal have rejected overbreadth challenges
to Section 2422(b). E.g. in United States v. Galiardi, 506 F.3d 140,
147-48 (2nd Cir. 2007); United States v. Tykarsky,446 F.3d 458, 473
(3rd Cir. 2006); United States v. Meek,366 F.3d 705, 721 (9th Cir.
2004); United States v. Bailey,228 F.3d 637, 639 (6th Cir.2000).

These case just like [KEMACHE-WEBSTER] did not use an adult
intermediary, the converstaion was direct, yet in most cases if the
defendants communication or conversation is directly with the minor
or with the minors parent or guardian-Section 2422(b) "criminalize[s]
speech that may have little direct and immediate casual relation to
the harm that such criminalization is intended to prevent."

Several circuits are split on the issues of what they consider as
criminalize Section 2422(b), the Second, Third, Sixth & Ninth Cir-
cuits noted that Section 2422(b) criminalizes the act of the attemp-
ting to entice a minor, not speech. Gagliardi, 506 F.3d @ 148 (The
statute punishes - the act of enticing or attempting to entice a
minor when it is knowingly done; it does not implicate speech.) In
Tykarsky, 446 F.3d @ 473 (Section 2422(b) regulates only conduct,
not speech). In Meek, 366 F.3d @ 721(relevent in part, Section 2422(b)
does not criminalize speech as a means to prohibit certain conduct
it directly prohibits certain conduct).

In the Seventh Circuit of United States v Gladish, 536 F.3d 646
(7th Cir. 2008) The court does not address a constitutional challenge
to Section 2422(b), but rather opined on the requiremnt that the
defendant take a "Substantial Step" towards completion of the offense
in order to be found guilty of attempt. What constitutes a substantial
for the purpose of the attempted enticement.

12

In Bailey, 228 F.3d @ 639, the Sixth Circuit for Section 2422(b) in fact proscribes speech but not conduct, that speech is not at all protected by the First Amendment.

The same as in the case of [KEMACHE-WEBSTER], here we have the parent/guardian who was incarcerated at the time that the communications or conversations were taking place between he and his biologic daughter. Per the veiw of the indictment the conversations were to have taken place between May 04, 2010 and August 18, 2010, yet the complaint was taken more than a month later, there was no thrawted or impeded event between he and law enforcement, there were no plans made, nor were there any other attachments or crimes involved in the communication or conversations between he and his daughter, what is even more obscure is the fact that the converstaions or communication of the persuaded, induced, enticed or coerced conversations or communications were initailly invited [NOT] by the parent/guardian but by the daughter herself. Yet [KEMACHE-WEBSTER], was charged by the indictment for "ATTEMPT", but was convicted of "COMPLETE" and his conviction was affirmed for the use of "SPEECH" based on the conversations of a letter.

See:
United States v. KeMache-Webster, 2012 U.S. App Lexis 24655

Again, here the federal authorities over stepped their bounderies of their enummerated powers as well as infringed upon the rights of its citizen, [KEMACHE-WEBSTER] was in the State of Illinois confined in U.S.P. Marion at the time of the instant offense, between that of April 27, 2010 and September 16, 2010. The institution it self did not charge [KEMACHE-WEBSTER] with any institutional infractions, as a matter of record he was 100% "CLEAR CONDUCT".

The State of Illinois, did not charge [KEMACHE-WEBSTER], nor did they have a want for need to do so.

The Federal Criminal Jurisdiction for the Southern District of Illinois, did not charge [KEMACHE-WEBSTER] and had found it a bit strange that he was being charge while incarcerated, not as a person that one would categorize as a preditor that seeks out to find such a person or victim, but to charge with that of the conversations and communications of his own biological daughter

Title 18 Section 2422(b), does have within itself very many on answered variables and obsticles to over come and the overbreadth & vagueness to its statute is truly beyond the scope and reach of ones imagine.
[KEMACHE-WEBSTER] was arrested, trialed, convicted sentenced in a state, the State of Maryland that had no juridiction in the matter other than the fact that his ex-spouse made the complaint to settle that of her own misgivings with him and their daughter.

The case if there ever was one is assuredly a case for the State of Illinois, as for the charge Section 2422(b) needs to be revised & restructured to be implimented more properly.

Section 2422(b), does violate the First Amendment of the U.S. Constitution, where it does infring upon a citizens own right to their Freedom of Speech & Expression of Speech.

Section 2422(b), does violate the Tenth Amendment of the U.S. Constitution, where it does infringe upon a citizen where the right of the people are of the people and of the State, [NOT] the federal Government.

4.

CAN TITLE 18 SECTION 2422(b) OF THE U.S. CODE BE INTERPRETED TO NOT REQUIRE THE "SUBSTANTIAL STEP" PRONG WITHOUT CREATING ANY TYPE OF CONSTITUTIONAL DOUBT AGAINST THE FIRST AMENDMENT AND THE TENTH AMENDMENT AND / OR EXCEEDING THE BORDERS OF THE UNITED STATES COMMERCE CLAUSE AS IT IS WRITTEN ?

Title 18 Section 2422(b) U.S. Code, provides and pertinent part "Whoever, using ....any....means of  interstate ...comerce... [e.g. an internet chat room] knowingly persuades, induce, entices, or coerce any individual who has not attained the age of 18 years to engage in...any sexual activity for which ...any...person can be charged with a criminal offense, or attempt to do so, shall be... imprisoned not less than 10 years or for life."

Part of the problem that seems to have arisen with [KEMACHE-WEBSTER] and the matters of his case is that his indictment reads ......did knowing use [AND] attempt to. [NOT] the word [OR] attempt as the original statue does so read.

Next there is the issue that [KEMACHE-WEBSTER] was convicted of a [COMPLETED VIOLATION] as apposed to an [ATTEMPTED VIOLATION] yet his indictment was written and he was charged with [ATTEMPT] to commit the instant offense.
Per the statute of Section 2422(b), the prongs are Intent to v. Attempt to, [NOT] Completed to.

To be guilty of Section 2422(b), attempting to persuade, induce, entice, or coerce a minor to engage in a criminal sexual activity, a person "must intend to complete the crime and take a substantial step" towrads its completioon, and that explicit sexual talk on the internet (even with person believed to be a minor, but are not) does not by it self, amount to kind of substantial step. The Seventh Circuit decision conflicts with the decision of oher circuits of the U.S. Court of Appeals, on the same important matters.

See:
United States v. Brand, 467 F.3d 179, 202 (2nd Cir. 2006)
United States v. Thomas, 410 F.3d 1235, 1244 (10 Cir. 2005)
United States v. Patten, 397 F.3d 1100, 1103 (8th Cir. 2005)
United States v. Murrell, 368 F.3d 1283, 1286 (11th Cir. 2004)
United States v. Dwinells, 508 F.3d 63, 68-72 (1st Cir. 2007)
United States v. Gotezke, 494 F.3d 1231, 1236 (9th Cir. 2007)

All were found guilty of Section 2422(b) based on the issue of them having taken a substantial step towards attempting to commit the crime of Title 18 Section 2422(b).

The split between the circuits over whether conviction under Title 18 Section 2422(b), requires an intent to complete an illegal sexual act with a minor.

The substantial step is a major and distinctive prong in proving that the crime was attempted and intentional steps were made towards its completion.

To be guilty of an attempted crime, one need only intend to commit the crime and take a "substantial step" towards its completion.

See:

United States v. Rosa, 11 F.3d 315, 337 (2d Cir. 1993) cert.

denied, 128 L.Ed. 2d 211, 114 S.Ct. 1565 (1994)

In Rosa, the Court stated that; "In order to establish that a person is guilty of an attempt to commit a crime, the Government must prove that he

1.  had the intent to commit the crime. and

2.  engaged in conduct amounting to a substantial step towards the commission of the crime.

See:

United States v. Gladish, 536 F.3d 646 (7th Cir. 2008)

A substantial step although it may be less than the last act necessary before the actual commission of the substantive crime, entails " more than mere preparation."

To constitute a substantial step a defendant's actions must cross the line  between preparation and attempt by unequivacally demonstrating that the crime will take place unless interupted, thrawted or impeded by independent circumstances.

Substantial step is an appreciable fragment of a crime and an action of such substantially that, unless frustrated, the crime would have occured. The step [MUST] be strongly corroborative of the firmness of the defendant's criminal intent and must unequivocally mark the defendant's actions as criminal.

See:

United States v. Ramirez, 348 F.3d 1175, 1180 (10th Cir. 2003)

quoting

United States v. Smith, 246 F.3d 1012, 1016 (10th Cir. 2001)

"It must be necessay to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.

Herein lies the argue of [KEMACHE-WEBSTER]  he was charged in a single count indictment of:

Between on or about May 04, 2010 and August 20, 2010, in the District of Maryland and elsewhere, the defendant,

KEMACHE-WEBSTER

did knowingly use [AND] attempt to use a facility and means of interstate and foreign commrce to knowingly persuade, induce, entice and coerce an individual who has not attained the age of 18 years to engage in sexual activity for which any person could be charged with a criminal offense.

18 U.S.C. § 2422(b)

Though he was charged with attempt to engage in such activity during trial the jury instuctions that were given were that of a completed violation e.g a "completed theory". In either scenario there had to be a subtantial step taken in order to lean towrds the completion of the offense. Yet there were no intruction given for an attempted violation e.g. "attempted theory" nor of a substantial step to either position

What [KEMACHE-WEBSTER]questions,

Can Title 18 Section 2422(b) of the U.S. Code be interpreted "TO NOT REQUIRE" the substantial step prong, without creating any type of constitutional doubt againt the First Amendment of the U.S Constitutions freedom of speech and the Tenth Amendment of the U.S. Constitution of enummerated powers.

The statute is clear that in order to find one guilty of the crime of Title 18 Section 2422(b), one [MUST] had taken a substantial step towards the completion of the crime, and as [KEMACHE-WEBSTER] was found guilty of a completed violation, should not the substantial step of the crime still remain to have been proven.

The second part of the question,

Can Title 18 Section 2422(b), be interpreted and any other way, type or fashion than what the stattue is written as or is read.

The staute is clear that in its meaning of:

* any person can be charged with a criminal offense [OR] attempt to do so.
  The structure of the words [OR] & [AND] are distinctive in their true and giving meanings.
  [OR] - either, but actually; introducing an alternative.
  [AND] - in addition to, as well as; in repetion to.

No where in the statute or against the indictment of [KEMACHE-WEBSTER] does it spell out nor expell upon the word [COMPLETE] or mention the word [COMPLETE] anywhere in the Statute.

Lastly the question of:

Can Title 18 Section 2422(b), be interpreted to properly use

16

The United States Commerce Clause as it is written.

For far to long [KEMACHE-WEBSTER] has been saddled with the deprivation of his ninth and tenth amendment rights to the U.S. Constitution being violated.

On June 16, 2011 The U.S. Supreme Court ruled that an individual has standing to challenge an intrusion by the federal government into the states sovereignty.

See:
    Bond v. United States, 564 U.S. ___ (2011)

The court made no attempt to cabin the right to a specific statute that is given when it made its ruling. In fact, Justice Kennedy openly stated:
> A prson indicted for violating a federal statute has standing to challenge its validity on groungds that, by enacting it, congress exceeded its power under the constitution, thus intruding upon the sovereignty and the authority of the states.

Bond, Slip. Op *1.

Critically, the phrases:

"A person", "A federal statute" and "the state" reveal that the holding applies to: any individual, any federal statutes and all the states without restrictions.

The complexity of section 8 Article I of the constitution and the lack of interest by the states to protect their sovereignty has therefore silenced the tenth amnedment. The lack of standing with respect to federal criminal defendants has enabled congress to enact federal criminal statutes without concern to the tenth amendment, as a result these federal crimes are written without intelligble principles to guide their use. The problem does not end there, instead the excutive branch has over time managed to step-in and force state authorities to lay siege to what they say is a federal offense.

The federal statute facilitates opportunistic and arbitrary prosecution , and in most cases, lack of standing to challenge their validity on grounds that, by enacting them, congress exceeded its powers under the constitution, thus intruding upon the sovereignty and authority of the states, have allowed the federal courts to ignor the tenth — amendment.

This is the time the Supreme Court has evaluated the limits of congress and the reach of their enummerated powers. BOND restores such standing to the federal prisioner, and no longer can the three branches be unconcerned with what was once a vague scream of a defendant invoking his constitutional rights under the ninth & tenth amendments.

Justice Ginsgurg puts it as such:

"[A] court has no prudential license to decline to consider whether the statute[s] under which  the defendant has been charged lacks constitutional application to [his] conduct.

And that is so even where the constitutional provision would
render the conviction void is directed at protecting a party
not before the court...the court must enteratin the objection
and reverse the conviction - even if the right ...resides in
someone other than the defendant."

Bond, 564 U.S. ____, Slip. Op. *2 (Gisburg J. concurring).

The validity of [KEMACHE-WEBSTER'S] conviction and sentence
depends upon whether the constitution permits congress to enact the
Commerce Clause statute regading his case and whether the federal
government was proper in violating his Due Process Hearing to have
been heard in the State of Illinois that is delegated to other
branches that has no intelligible principle to which to guide them.

Cannon, as demonstated below, insists that it is invalid thus
intruding upon the sovereignty and the authority of Illinois and
its citizens.

Section 8 of Artical 1 of the United States Constitution provides

The congress shall have the power to lay and collect taxes, duties
impost, and excercises, to pay the debts and provide for the com
mon defense and general welfare of the United States; but all duties
impost and excises shall be uniform thoughout the Unitd States.

Judicial Conference of the United States, Long rang plan for the
federal Courts. (1995) Reprinted in 166 F.R.D. 49, 83 (1995)

In a more direct and plain appraoch [KEMACHE-WEBSTER] points out:
In response to swelling federal criminal dockets, the judicial
conference of the United States urged in its 1995 long range plan
that "criminal jurisdiction should be assigned to federal courts
only to further clearly defined and justified national interest,
leaving to state courts the responsibility for adjudicating all
other matters."
To that end, the plan narrowly set forth five type of crimes that
are appropriate for federal prosecution.

1.   Offenses against the federal government or its inherent interest;

2.   Criminal activity with substantial multi-state or international
     enterprises most effectively prosecuted using federal resources
     or experties.

3.   Criminal activity involving complex commercial or international
     aspects.

4.  Serious high-level or widespread state or local governement   —
    corruption; and

5.  Criminal cases raising highly sensitive local issues view as   —
    more objectively prosecuted in the federal system.

[KEMACHE-WEBSTER'S] state conduct does not square with the five
type of crimes referred to in the 1995 Judicial Conference. A fortiori,
[KEMACHE-WEBSTER'S] activities are not against the governmnet or its
— inherent interst. For example, thereis nothing against the government
in Title 18 Section 2422(b), and it would be a mere speculation that
any revenues would have gone unaddressed.

See:

Fowler v. United States, 2011 U.S. Lexis 4019 (05/26/2011)

It can not be said that [KEMACHE-WEBSTER'S] activities involved
"substantial multi-state" or "international aspects". The facts the gov't
never even made a passing mention of a muti-state scheme. The executive —
branch would fair no better urging [KEMACHE-WEBSTER'S] criminal activity
— involed "complex commercial" or "international enterprise". There is no
— public corruption, and fianally -there- are no "highly sensitive local
issues" which require the government to step in.

[KEMACHE-WEBSTER'S] criminal conviction and sentence under that
of Title 18 Section 2422(b), constitutes an injury in fact. The injury
is actual and factual as well as concrete: [KEMACHE-WEBSTER] has been
convicted and sentenced to"LIFE" in prison. [It is the second worst
worst impose sentence next to death....he is confined to a living tomb]

Furthermore, [KEMACHE-WEBSTER'S] injury is directly traceable to
the government's actions, because congress's transparent enactment of
Title 18 Section 2422(b) provides the basis for his conviction in the
federal court of Maryland. In other words, one who seeks to initiate,
or continue proceedings in federal court must demonstrate among other
requirements, both standing to obtain relief requested,Lujan, 504 US @
560-61, and, in addition, an "On going interest in the dispute" on the
part of the opposing party that is sufficient to establish "concrete
adverseness."

See:

Carreta v. Green, 563 U.S. ___, ___ (2011)(Slip. Op. @ *5)

(Internal quotaion mark omitted). When the conditions are met, Article III does not restrict the opposing party's ability to object to relief being sought at its expense. It is plain that Article III prerequisites are met. As stated above, [KEMACHE-WEBSTER'S] challenge to his conviction and sentence "satisfies the case-or-contoversy requirement, because the incarceration....constitutes a concrete injury caused by the convictions and redressable by the invalidation of the conviction and sentence.

See:
        Spencer v. Kemma, 523 U.S. 1,7(1998)

Here, [KEMACHE-WEBSTER] asserts that the conduct with which he is charged is local in nature and should be left to local authorities to prosecute and that congressional regulations of the conduct signals a masive and unjustifiable expansion of federal law enforcement power into that of state-regulated domain. The public policy of the State of Illinois, enacted in its capacity as sovereign, has been displaced by that of the national governemnt, The statute to which [KEMACHE-WEBSTER] is subject, the prosecution he seeks to counter, and the punishment he must face may not have come about if the matter wer left to the State of Illinois to decide. Indeed, [KEMACHE-WEBSTER] fosters that under Illinois law the expected maximum term of imprisonment he could face for the same subsequent conduct if were found guilty is barely a term of two year for "soliciation via internet"

5.
WAS THE DISTRICT COURT IN ERROR FOR NOT ACCEPTING THE FACT OF
THE PETITIONER PRESENTING HIS THEORY THAT HE HAD ABANDONED ALL
POSSIBLE THEORIES OF THE GOVERNMENT CHARGING HIM WITH 18 U.S.C.
2422(b), WHEN IT IS UNDISPUTED THAT THE PETITIONER HAS CONFRONTED
THE LAW ENFORCEMENT ? LEGAL OFFICIALS AT USP MARION DAYS AND MONTHS
BEFORE THE GOVERNMENT HAD TAKEN PRIVELGE TO CHARGE PETITIONER.

To prove a completed violation of § 2422(b): Coercion & Enticement

The gov't must show that minor actually assented to the illegal sexual
activity, but completion of assented to is not required.

Thus it is irrelevent whether defendant and minor have sex, because crime
is complete when the minor assents.

See:
KeMache-Webster v. United States, 2012 U.S. App. Lexis 24655

The problem with that theory as it stands is as thus:

The Government would have the Courts and D.O.J. beleive that they had in
fact stopped the petitioner, before he was to take that final of 'substantial
step' in completion of the crime that they have charged him with. Which would
highly unlikely and improbable. Due in two parts.

1. The petitioner, was in USP Marion some 1017 miles away from the minor victim
   (his daughter), servicing a six (6) month bad check sentence. For which upon
   his release he was headed to Washington, D.C. [NOT] the boarders or the State
   of Maryland as the Government had suggested.
   A telephone call made on: September 04, 2010 to his spouse
   Mrs. Michelle Corley KeMache-Webster, from the Marion Prison's Chaplian's
   direct office line, giving her instructions to met at the Grey Hound Bus
   Station after having mixed conversations with his daughter after she had ran
   away from her mother August 23, 2010.

2. What the Government had also failed to answer or acknowledge in the given
   petitioner's Fed. R. Crim. P. Rule § 29 was that the petitioner had addressed
   that the situation and circumstances involving he and his daughter were placed
   in [STOP] e.g. RENOUNCEMENT, ABANDONMENT, WITHDRAWAL mode when he spoke with
   the USP Marion S.O.P. = Sex Offender Program Specialist/Psychologist several
   months, weeks and days prior to his release from Marion about the ordeal of
   the e-mails, letters and phone-calls that had transpired and were transpiring
   between he and his daughter.
   See:
   Appendix: "FBK-PDS.1" These are the Psychological Data Sheets that had
            been generated by the Federal Bureau of Prison's Psychology
            Department from U.S.P. Marion.

The petitioner, had no intent or intentions what so ever to Coerce of Entice

his teenage daughter for the puroose of sexual activity or anything remotely close to it. There was no prior incestuous relationship, and as the petitioner had previously explained and expressed, this was [NEVER] about the petitioner or his daughter as His Honor Magistrate Judge: Charles B. Day, had expressed to the Government as well asto previous Counselor of Record Mr. Andrew Carter in his Court on: November 24, 2010 when issuing the Protective Order, which he gave the petitioner and his daugther access to each other, as long as a third party mediator was involved. He stated as thus:

> I do not believe this case is about /∙or between the father and the daughter, it is either between the mother and the father or the mother and the daughter, or between the mother and both of them but its not in his opinion between the father and the daughter. (quote not exact)

But it is close enough. I had explained and expressed this to the prior Counselor of Record Mr.Andrew Carter Esq., and he even knen about the Report that is now being presented. Mr. Carter did have me sign a release of Medical Consent form, for Mr. Shawn Norton, the Private Investigator, whom's name even shows up in the Document 118-3 telephone records for November 21, 2010, where the petitioner speaks with his daughter, in reference to the case.

The conversations & communications were taken out of contex, by readopting the Federal Rules of Evidence Rule § 106 Optimal Rule of Completeness, taking what they wanted, not what was important and tossing the reat away. There is even more evidence to enter and have addressed. The Government has access to nearly/if not surely to everything, yet they did not produce this when it was readily available to them, just as the UNREDACTED, INEDITED, UNBLACKENED and assuredly UNSNIPPED transcripts from D.C. Superior Court, in regards to the issues at hand over what was really going on and transpiring within the life of the daughter and the petitioner. The mother knew that the victim/witness was [NOT] a victim of the petitioner, but of her own doings, misgivings and web of deceptions. The victim/witness tried to address it before this Honorable Said Court on the day of sentencing as well in her impact statement. The victim was even concern about doing such a statement, but once she was told, that her very own father supposedly denounced her as his own child, it gave means & motive for retaliation, which did not make since since she was actually the one whom was breaking the court orders of the court [NOT] the petitioner. It was her that was writing and corresponding,

See:
Appendix "D" Initiations of Communications & Conversations.

Under: [ABANDONMENT, RENUNCIATION, WITHDRAWAL]

The Rule of Model Penal Code §5.01(4) comes into effect:

MPC § 5.01(4) - is repetative of the well-settled pricipal of the law of [ATTEMPT].

Assuming for the purpose of this opinion that the defense of: MPC § 5.01(4) abadonment is available, that defense is [ONLY] to be available if the assereted abandonment was volunatry.

See:

United states v. Shelton, 30 F.3d 702, 706 (6th Cir. 1994)(stating...)

("[W]ithdrawal, abandonment and renunciation, however characterized, do not provide a defense to an attempt crime. As noted, the attempt crime is completed, with proof of intent "together" with [acts] that constitute a 'substantial step' towards commission of the substantial offense").

The MPC § 5.01(4) provides a affirmative defense to attempt,where evidence proves that the defendant [voluntarily] and [completely] abandoned, withdrew and/or renounciated his/her attempt at some point in time after performing a what can be considered a 'substantial step' and defines his / her efforts to commit the crime, under circumstances manifesting a complete and voluntary given renouncement, withdrawal and /or abdandonment of his her criminal purpose.

The MPC § 5.01(4) [I]t is an affirmative defense.

See:

United States v. Davis,41 Fed App'x 566, 572-73 (3rd Cir. 07/26/2002)

The Petitioner request that his case be dismissed for improper prosecution and lack of information thereof.

6

DID THE DISTRICT COURT ERR IN DETERMINING THE PETITIONERS CONDUCT
WHICH WAS NEITHER ADMITTED TO BY THE PETITIONER NOR FOUNDED BY A
JURY BEYOND REASONABLE DOUBT IN VIOLATION OF THE FIFTH, SIX AND
FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, DURING THE
PETITIONER'S SENTENCING.

7

WAS THE COUNSELOR INEFFECTIVE BY NOT INVESTIGATING AND CROSS
EXAMINING THE PRIMARY WITNESS IN THE PETITIONER'S TRIAL.

8

WAS THE COUNSELOR INEFFECTIVE BY NOT USING THE COMPULSORY PROCESS
OF SUBPEONA POWERS TO CALL UPON WITNESSES AND THE VICTIM FOR THE
PETITIONER'S TRIAL, WHEN THERE IS EVIDENCE THAT THERE WERE SOME
WITNESSES AND VICTIM AVAILABLE.

9
DID THE COURT ERR IN ALLOWING THE GOVERNMENT TO NOT ALLOW THE
VICTIM TO BE BROUGHT BEFORE THE COURT, WHEN IT IS SHOWN AND
UNDISPUTED THAT SHE WAS READILY AVAILABLE TO NOT HAVE VIOLATED
THE PETITIONER'S FIFTH AMENDMENT UNDER THE DUE PROCESS AND HIS
RIGHT TO CONFRONT CLAUSE.

In all criminal prosecutions in the state of Maryland, the Sixth
Amendment to the United States Constitution, applicable to the State(s)
and through the fifth and Fourteenth Amendment of Due Process, as well as
Maryland's Declaration of Rights § 50; which commands that the accused shall
enjoy the right to confront his accuser against him. Nikki was never made
available to the petitioner at [NO] stage of the proceedings. The prerogative
of the petitioner to have the victim/witness who is suspectedly the one who
was to against the petitioner/accused was [not] allowed that keystone to the
concept of the criminal justice -- which is grounded on the unanswering belief
that an individual should be afforded the opportunity to challenge the victim/
witness(s) who was suspectedly against him.

See:
Breedon v. State, 333 Md. 212, 636 A2d 646 (1993)

Under special provisons for child of sexual abuse cases, although the
Sixth Amendment of the U.S. Constitution's, constitutional right to confront
does ordinarily includes, amongst other things the right of the accused to be
seen by the accused, the procedures in former § 9-102 of the Courts Article
under which the accusing witness in the child witness of the child sexual
abuse cases could not see the accused while the witness was testifying, it
still might be permissible under special and certain circumstances. In the
since of the instant offense with the petitioner, he was [NOT] allowed no such
right under no situation, circumstance or provisional.

See:
Wildermuth v. State, 310 Md. 496, 530 A2d 275 (1987)

While § 11-304 of the Maryland Criminal Procedure Article, properly
allowed admission of the hearsay testimony of children of tender age, the
petitioners right to confrontation required either that the victim/witness
was either unavailable to testify in court or that the petitioner had a prior
opportunity to cross-examin the victim/witness. Nikki was [NOT] unavailable
nor had the petitioner had a prior opportunity to cross-examine, which is a
necessaryprecondition for the introduction of a testimonial statement made
by any person who is unavailable to testify at trail.

[NOT] only was Nikki unavailable, she was under house arrest with an

ankle bracelet on her placed upon her by Montgomery County Juvenile Justice
for the multi amount of crimes and violations that she had caused during the
proceedings of this instant offense.

See:
Snowden v. State, 156 Md. App. 139, 846 A 2d 36 (2004)
Also see Appendix: "D" Initiation of Conversations & Communications

In Zaal v. State of MAryland,326 Md. 54, 602 A 2d 1247 (1992)
The trial courts refusal to grant the defendant charged in a child sex abuse
abuse case, access by counsel to the school records was held to be a
reversal, where controlled access by counsel to the recods was held to be
appropriate.

The petitioner, never had the opportunity to confront the victim/witness
though the government stated in their response to the petitioner's Rule 29
stated in [Document 111 pg 4 of 8] as thus:

During the pre-trail motions hearing, which took place on March 24,2011;
the Government stated in open court that the victime $F.W^2$, while not under
Government subpoena to testify at trial, would be made available if the
defendant elected to call her during their case presentation. During the
trial the Government elected not to call Nikki to testfy. The Defendant
had the opportunity to call Nikki to testify during their presentation,
however elected not to. The Defendant's decision to not call Nikki to
testify when access to her was not impeded, does not constitute a violation
of the Sixth Amendment.

1.  The Government again, as it did with the Alper case, 08:10-0344(RWT)
attempts to [FLIM-LAM] this Honoroble Said Court.
Not only was Nikki [NOT] available, but she was on Home Detention, for
numerous violations of probation and skipping school and again being
expelled. The Government consistantly stated that the petitioner was
constantly violating His Honor Magistrate Judge: Charles B, Day, court
order, under the contrary, it was Nikki consistantly amking successful
attempts to contact the petitioner, [NOT] because there was a supposed
prior relationship, but because out of sheer concern, love and respect
for the petitioner. Nikki had informed the petitioner through correspon-
dence that she was under arrest and on leg maonitor,but she would be at
sentencing with the same leg monitor which she had on. The only reason
for the last moment turn against the petitioner, is because she was led to
believe that a DNA request for bloodline and, paternity was done because
it was to her that had asked it all.

the Government told her that the DNA test had to be done because her
father stated that she was not his daughter, which was truly a real
heartless fabrication. The petitioner [NEVER] made such a statement
nor anything remotely close to that there of. Through out the entire
process of the instant offense, all the petitioner had done was make
claim of and on his daughter, because she is his daughter.as well as
[ALL] fourteen of his children. To her hearing that her father had herself
supposedly denied her as his child, that was the lowest that anyone
could ever do to someone. This statement was [NEVER] ever told to any
one and the only reason that Mr. Proctor Esq., had even thought of an
idea as such was because when asked into of what broke the marriage;
information of her consistant flirting with the janitor at her job
while she was pregnat with her second of three children, and than
finding out from other relatives that she was seeing the petitioner's
brother prior to getting married to the petitioner, and on top of the
news of that to find out that they were still in a long didtant rela-
tionship while she is married to the petitioner. THE WORST PART was
to find out that she was continuiously making contact with the janitor
at her job even after being confronted, to the point that directly after
the second child turned one years old she runs off with the janitor
who is now her current husband, and the one that all of the allega-
tion of who actually has been raping the petitioner's daughter. So for
the victim/witness to hear from the Government that her father has in
so many words gave up on her, which the petitioner had promised [NEVER]
to do since everyone through out all of her life had done so. Than for
His Honor, to [NOT] respect her wishes and sentence her father, the one
person that was the only true and real parent, friend and confidant she
had, after she tells the court to [NOT] take her daddy away for -forever
that is exactly what is done. The one reason that sticks with the petitioner
for the imposition is, because the petitioner did not accept the serious-
ness of the case & charge. Not only did the petitioner state that he takes
full responsibility for his daughters action be she 8 or 80 years old she
is still his child and shall forever will be. And that the petitioner also
took responsibility for his actions as the father and the parent. The open
statement of stating that he was wrong for the conversations that they had
did not appear to be enough for no one but the petitioner and the daughter.
Niether, knew that such a type of chsrge or crime even exisited, but even

though the petitioner abandoned the conversation and went to speak to
S.O.P. specialist about such conversations and that he needed to know what
to do to arrest them since he was due to go home soon, and had even made
an open request for the S.O.P. specialist to give the petitioner a referral
or some direction so that he could better deal with the daughter,which was
even before a complaint was made or any type of warrant was issued, [NO
ONE] at all cared except for the petitioner's immedaite family since they
were quite familiar with all of the facts going on. Even still, the peti-
tioner was [NOT] allowed to confront the victim/witness. Yet the Government
plays in court on the Elmo, that of the petitioner and victim/witnesses
phone call of: November 21, 2010 at 18:04:35 - 6:04:35pm Document 118-3

Stating:

P[3]. How are you doin'? What's wrong?

V[2]. Um, nothing. Um, I've had to talk to some investigator and-

P. Yeah,Shawn Norton?

V. No- her name is um uh, Pih, Miss Pickens, and she told me that I'm not
gonna tell her that I'm talking to you or that that lady called

P. Right

V. Because she said if she um they find out that I'm talking to you
I can get locked up too, but they're gonna be checking my phone
so you can't call me anymore, I'm suppose to be going to court in so
sometime in April for this or whatever.

P. [Redacted]  originally, They don't have a court date or nothing yet
I have not spoken about nothing like that to my lawyer (or something
that is remotely close to that...it's been almost 4 years)

V. They said that if you are smart to take the 20 years plea, at least
I'll be there for you when you get out, if you don't take the 20 yrs
they're going to make sure that you get LIFE. (something very close
or remotely close to that) [Redacted also]

P. Damn, that's, you tell them you my witness for your momma to withd-
withdraw

V. I can't say - I can't say that, I cannot say that because I'm part
of it, because what they have to do, this is about the letter and
those, and and-

-------------------------------------------------------------------
[2] V = victim/witness. F.W., Nikki, Nicole.
For all intended purposes either victim/witness or Nikki

[3] P= petitioner, KeMache-Webster, Webster, Françsiour  we will use Petitioner

The bottom line the confrontation clause, is violated, and it was not left up to the petitioner to bring forward my accused or the victim against me, especially without having not ever having a prior cross-examination with her.

2. The statements and accusations made by the victim/witness that were entereed into as evidence at trial were not fully explained but it was enough for circumstantial evidence and to raise an open question of what was actually going on with those conversations. An 8x10 glossy photo was used to show presentment of the victim witness. For those that were in court that I've spoken with,displaying her picture in that nature was likened to a memorial of someone that had passed away,her pictured was on display as if it was her funeral, and that was prejudicical to the jury, because no instruction or definition was given to why the victim was not there, it gave the impression that she either placed in a hospital due to physical bodiy harm or at the worst, she was dead. This is the impression that circus display of not bringing her forward. Plus that was not the full case. The Government could not bring her forward without the agree of the victim/witness's counselor of record having allowed it & Mrs.Mary Davis Esq., was not alowing that, that is why the Pre-Trial Motions Hearing Subpoena for the victim/witness was pulled. The victim/witness had a great deal many confabriacations and her being on the stand would not at all be crediable for the Government.

3. The petitioner, at no time surrendered his confrontation rights or his gurantee.

   See:
   State of Maryland v. Collins. 265 Md. 70, A.2d 163 (1972)

   STATE AND FEDERAL CONSTITUTIONS GUARANTEE RIGHT OF CONFRONTATION
   The right of an accused to be confronted with the witness against him is not only a guaranteed by this article but it is also available under the Fourteenth Amendment of the Constitution of the United States, in the right given by the Sixth Amendment. It was made obligatory on the states in Pointer v. Texas, 380 U.S. 400, 85, S.Ct. 1065, 13 L.Ed. 2d 293 (1965)

   The case should be remanded back for a new trial

10

DID THE DISTRICT COURT ERR IN DENYING THE PETITIONER'S MOTION
FOR ACQUITTAL WHERE THE ONLY THEORY PRESENTED TO THE JURY WAS
THAT THE PETITIONER WAS GUILTY OF THE COMPLETED (AS OPPOSED TO
ATTEMPTED) VERSION OF 18 U.S.C § 2422(b), BUT THE UNDISPUTED FACT
AT TRIAL HAS ESTABLISHED THAT THE PETITIONER NEVER ACTUALLY AT
ALL ENTICED THE MINOR (HIS DAUGHTER) TO ENGAGE IN ILLEGAL SEXUAL
RELATIONS.

Page 14

Therefore, movant asks that the Court grant the following relief:

1. To recall for an EVIDENTIARY HEARING on the merits.
2. To GRANT Newly Discovered Evidence & remand for Retrial/Rehearing.
3. To VACATE CONVICTION & SENTENCING allow petitioner to reclaim his life back.

or any other relief to which movant may be entitled.

As this Honorable Said Court deems needed, necessary & required.

04 July 2014

04 July 2014

Mr. Francsiour B. KeMache-Webster
Signature of Attorney (if any)
USM # 42459-007
FCI-CMU Terre Haute
P. O. Box - 0033
Terre Haute, Indiana 47808

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct

and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on    04th day

        July    (month, date, year). 2014

Executed (signed) on    04 July 2014    (date).
                         04 / July / 2014

Signature of Movant
Mr. Francsiour B. KeMache-Webster

If the person signing is not movant, state relationship to movant and explain why movant is not

signing this motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MARYLAND
GREENBELT, MARYLAND

MR. FRANÇSIOUR B. KEMACHE-WEBSTER
# 42459-007

                    Petitioner,          :        Case No.:_____
                                                          To Be Assigned
                                         :
                                                  Reflecting:
                                         :               9:10-MJ-4035-FMF(7th Cir.)
                                                         8:10-3343-WC (4th Cir.)
                                                         8:10-00654(RWT)
                                                         8:11-4801 U.S.C.A.
v.                                                       4:13-9451 U.S.S.C.
                                         :               7:13-9451 U.S.S.C.

UNITED STATES OF AMERICA

                    Respondant,          :        Motion: To Set Aside, Correct or
                                                          Vacate Sentence Under § 2255
                                        ::

....ooooOOOooooo....
MOTION
TO SET ASIDE, CORRECT
OR
VACATE, SENTENCE UNDER § 2255

COMES NOW THE PETITIONER, [KEMACHE-WEBSTER]; known by these truths to
all as Mr. Françsiour B. KeMache-Webster, in representation of him-own-self.
Comes before this Honorable Said Court with this Writ of Error, under
Title 28 Section 2255.
The Petitioner, addresses the Said Court as thus:

1. On April 21, 2011; after a three day trial, the petitioner was found
   guilty of Title 18 Section 2422(b); Coercion & Enticement.

2. On May 17, 2011; the petitioner was granted leave to file and come forward
   before this Honorable Said Court with his Fed. R. Crim. P. Rule § 29
   it was filed timely and all parties responded.

3. On August 05, 2011, the petitioner, was called before the Court to have
   his Rule § 29 heard, it was denied, he was than therefore sentenced to
   a term of LIFE inprisonment and a term of LIFE on supervised release.

4. On Nov. 28, 2012; the petitioner's Direct Appeal was denied and his
   conviction and sentenced were affirmed.

5. On June 07, 2012; the petitioner, was denied his Writ of Certiorari, by
   The U.S. Supreme Court, but was granted leave shortly there after to file
   rehearing as Pro se, due to some other matters that were raised.

7. On July 22, 2013; the petitioner was denied his Rehearing of Writ of Certiorari, conviction and sentencing were affirmed. Petitioner could not provide The U.S. Supreme Court with the required documents causing the Court undue delay. All Justices took part.

8. On July 04, 2014; the petitioner, presents before this Honorable Said Court his Writ of Error under Title 28 Section 2255.
The Petitioner, [KEMACHE-WEBSTER], states before this Honorable Said Court as thus:
That he is currently housed at:

1a. FCI - CTU / CMU Terre Haute Indiana per the request of the District Court Judge; Roger W.Titus.

2b. That he has submitted his Writ of Error by U.S.Pre-paid mail, but because of his being housed in the CTU/CMU his mail does not travel out as that of the general  FCI population, the days can very, from days to weeks.

3c. The Writ of Error Brief that the petitioenr ha presented is not complete due in part that he is still awaiting requested:
Affidavits, Briefs, Claims, Credentials, Documnets. Evidence, Files, Materials, Motions, Notices, Petitions, Reports, Statements, Transcripts Vouchers & Waivers. Though the petitioner has requested such same type of matters, on June 10th 2014, before this same Honrorable Said Court His Honor Judge: Roger W. Titus made a decision and denied the request. This left the petitioner in a difficult position to request such matters from out side  and independent resources to properly file his Writ of Error, under  § 2255 and position him self properly and positionably.

4d. The Petitioner, [KEMACHE-WEBSTER], also states that he does have much much more to attach and submit before this Honorable Said Court in regards to this Writ of Error, under § 2255, but he had to have it filed timely. and he had not received as of yet all of the requested out-side & independent resource matters as listed above.
Therefore;
The Petitioner, [KEMACHE-WEBSTER], presents this Writ of Error, under § 2255 as thus.

04 July 2014
04/July 2014

Respectfully submitted;

Mr. Francsiour B. KeMache-Webster
USM # 42459-007
FCI-- CMU Terre Haute
P.O. Box - 0033
Terre Haute, Indiana 47808

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED
### AFFIRMATIONS

On April 21, 2011, The Petitioner, [KEMACHE-WEBSTER] is convicted of
   Coercion and Enticement; under Title 18 Section 2422(b).

On May 17, 2011; The Petitioner, [KEMACHE-WEBSTER], is granted leave
   to file a Federal Rules of Criminal Procedure Rule § 29.

On August 05, 2011; The Petitioner, [KEMACHE-WEBSTER] is heard on his
   Rule § 29, it is denied, he is than sentenced to LIFE in prison and
   also recieves LIFE on supervised release.

On November 28, 2012; The Petitioner, [KEMACHE-WEBSTER] is denied Direct
   Appeal, his conviction & sentence are affirmed.

On June 07, 2013; The Petitioner, [KEMACHE-WEBSTER] is denied U.S. Supreme
   Court Writ of Certiorari, he is allowed to file for Rehearing Pro-se.

On July 22, 2013; The Petitioner, [KEMACHE-WEBSTER] is denied U.S. Supreme
   Court Rehearing Writ of Certiorari, was not able to provide court with
   documents that allowed him to come back in under rehearing status.

On July 04, 2014; The Petitioner, [KEMACHE-WEBSTER], comes back before the
   District Court of Southern Maryland, Greenbelt for Writ of Error, under
   Title 28 Section 2255.

On July 04, 2014; jurisdiction of this Court is perhaps invoked under that of
   Title 28 Section 1254(1).

### STATUTES  INVOLVED

1.  THE UNITED STATES CONSTITUTION, FIRST AMENDMENT:

Provides:
       Congress shall make no laws respecting an establishment of religion,
   or prohibiting the free excercise thereof; abridging the freedom of speach,
   or of the press, or the right of the people peaceably to assemble, and to
   petition in Government for redress of grievance.

2.  THE UNITED STATES CONSTITUTION, FIFTH AMENDMENT:

Provides:
       No person shall be held to answer for a capital offense, or otherwise
   infamous crime, unless on presentment or indictment of a Grand Jury, except
   in cases arising in the land of naval forces, or in the Malitia, when in
   actual service in time of War or public danger; nor shall any person be
   subject for the same offese to be twice put in jeopardy or of life or

i

2. THE UNITED STATES CONTITUTION FIFTH AMENDMENT CONTINUED

Provide:

limb; nor shall be compelled in any criminal case to be a witness against himself, nor shall be deprived of liberty, life or property, without due process of law, nor shall private property be taken for public use, without just compensation.

3. THE UNITED STATES CONSTITUTION SIXTH AMENDMENT

Provides:

In all criminal prosecutions, the accused shall enjoy the right to speedy and public trial, by an impartial jury of the State and the district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and shall be informed of the nature and cause of the accusation, to be cofronted with the witness againt him, to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

4. THE UNITED STATES CONSTITUTION EIGHTH AMENDMENT

Provides:

Excessive bail shall not be required, nor shall excessive fines be imposed, nor cruel and unusual punishments inflicted.

5. THE UNITED STATES CONSTITUTION NINTH AMENDMENT

Provides:

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others bu the people.

6. THE UNITED STATES CONSTITUTION TENTH AMENDMENT

Provides:

The powers delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

7. COERCION AND ENTICEMENT - 18 U.S.C.S. § 2422(b)

Provides:

(b) Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persaudes, induces, entices, or coerces any individual who has not attained the age of 18 years to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempt to do so, shall be fined under this title and imprisoned not less that 10 years or for life.

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

John Stuart Mill,

Parliamentary Debate on Capital Punishment, Within
Prison Bill

(April 21, 1868) reprinted in Philisophical Per-
spectives on Punishment 271 (Gertrude Ezor ksy ed. 1972)

Correctional Health Care, Addressing the Needs of
Elderly, Chronically Ill, and Terminally Ill Inmates.
U.S. Department of Justice, National Institute of
Corrections, 2004 ed. pp 9-10......................

Rules of Completeness,

The purpose of the F.R.E.-106, is to prevent a
party from misleading the jury by allowing into
the record relevent portions of a writing or re-
corded statements, which clarify or explain the
part already recorded.

The rule is protective merely. It goes only so
far as is necessary to shield a party from adverse
inferences, and only allows an explaination or a
rebuttal of evidence received...................passim

Dr. Harrison G. Pope Jr.,

Dr. Pope is a licensed psychiatrist and proffessor of
psychiatry at Harvard Medical School, his over all
assessment in theory is in the dealing of victim's
behavior and the association it can have in a persons
memory or memory problems.

Harrison G.Pope Jr. & James T. Hudson,
Can Memories of Childhood Sexual abuse Be Repressed?
25 Psychol. Med. 121 (1995)
Harrison G. Pope Jr. et al, Attituted Towards DSH-IV
Dissociative Disorders Diagnosis Among Board- Certfied
American Psychiatrist, 156 Am. J. Psychiatry 321 (1999).
Pope & Hudson, Repressed Memories Scientific Status,
Modern Scientific Evidence, in 2.
Modern Evidence: The Law and Science of Expert Testimony
....................20 * (West 2011-2012)
....................

## Maryland Criminal Law § 30

Right to confront witness states:
The Confrontation Clause of the Federal Constitution's
Sixth Amendament is made applicable  to the states
through the United States Constitution's Fourteeth
Amendment.
......................................pasim i.

## Maryland Criminal Law § 50

The central concerns of the Confrontation Clause of
The United States Constitution of the Sixth Amendment,
is to insure the reliability of the evidence against
the defendant, by subjecting the evidence to regorious
testing in the context of an adversay proceeding.

The right guaranteed by the Confrontation Clause not  l
only include(s):

(1) ...Insures that the witness will give his or her
statement under oath.

(2) ...Forces the witness to submit to cross-examniation.

(3) ...Permits the jury that is dicide the defendants
fate, to observe the demeanor of the witness making his
or her statement. These combined efforts of: physical
presense, oath cross-examination, and observation of
demeanor by the trier of fact serves the purpose of The
confrontation clause by insuring that the evidence against
the accused is reliable and subject to the rigorious ad-
versed testing that is the norm of [ -phrase omitted-]
criminal proceedures..........................passim

## Procedural Due Process

The Supreme Court has held that punishing a person because
he has done something, what the law plainly allows him
or her to do, is a due process violation of the most basic
sort that is due him or her......................passim

I

Case 8:10-cr-00654-TDC Document 178 Filed 07/24/14 Page 66 of 76

<u>Smallwood v. State</u>, 320 Md. 300, 577 A.2d 356 (1990)

## Use Of Prior Inconsistent Statement For Impeachment

---When the trial judge refused to allow the use of prior in-
consistent statements for impeachment purposes, he denied ac-
cused the fair and impartial trail that the accused is guar-
ranteed under the <u>Federal Constitution and the Maryland Decla-
ration of Rights</u>.
   <u>Yowell V. State</u>, 28 Md. App. 279, 344 A.2d 442(1975)

## Hearsay Testimony

---The receiving of hearsay testimony into evidence over timely
objection might possiblybe said to be of contitutional dimension
as involving a denial of the right to confrontation guarranteed
both by the <u>Sixth Amendment of the Federal Constitution</u> and by
the article.
   <u>Brafman v. State</u>, 276 Md. 676, A.2d 632 (1976)
---The hearsay rule exception which made admissible in evidence
against the defendant the excited utterances of a four year old
victim of carnal knowledge to her mother and sister came into
play only when it was shown by the circumstances that the pos-
sibilty of accuracy and trustworthiness was substantially equi-
valent to that of statements tested by conventional confronta-
tion and cross-examnination.
   <u>Jackson v. State</u>, 31 Md.App. 332, 356 A.2d 299 (1976)

---The declaration against interest exception is a fairly recent
exception to the hearsay rule; where hearsay statemnents are ad-
mitted under an exception which is not considered" firmly rooted"
then they are presumptively unreliable and inadmissible for
Confrontation Clause purposes and must be excluded, at least
absent a showing of particularized guarrantees of trustworthiness.
   <u>Simmons v. State</u>, 333 Md. 547, 636 A.2d 463(1994) cert. denied,
                      513 U.S. 815, 115, S.Ct. 70, 130 L.Ed 2d 26(1994)
---The Supreme Court has indicated several classic hearsay ex-
ceptions that fall within the "firly rooted" category; a decla-
ration against penal interest is not one of them.
   <u>Simmons v. State</u>, 333 Md. 547, 636 A.2d 463(1994) cert. denied,
                      513 U.S. 815, 115, S.Ct. 70, 130 L.Ed 2d 26(1994)

II

The Right To Confront And Cross-Examine Assures Accuracy In
Fact Finding

---The right to confront and cross-examine the witness againt
the accused insures the accuracy of the fact finding process
by testing the credibility.
       Tichnell v. State, 290 Md.43, 427 A.2d 991(1981)

Relinquishment Of A Constitutional Right Is Personal To A
Defendant

---The ability to relinguish a constitutional right(privilege)
ordinarily is personal to the defedant(accused) and cannot be
without express authority of the defendant(accused) be exercised
by the attorney.
       Collins v. State, 265 Md.70, 288 A.2d 163 (1972)

Sentence was vacated:

---While district court correctly identified and was aware of
relevent 18 § 3553(a)(2)(B)-(D) for sentencing factors, sentence
imposed five years imprisonment and no supervised release after
defendant plead guillty to use Internet to attempt to entice a
minor between twelve and fifteen years of age to engage in sexual
activity, in violation of 18 USCS § 2422(b) --did not reflect
these considerations; because sentence failled to reflect any of
the statutory goals, and because district court substantially
deviated from the advisory Sentencing Guidelines range without
articulating valid, fact-specific reasons for doing so, sentence
was unreasonable insofar as it lacked term of supervised release.
       United States v. Armendariz (2006) CA5(Tex)451 F.3d 352.

Court Vacated Defendant's Sentence

---The Seven Circuit Court of Appeals vacated defendant's sen-
tence for child pornograhpy and enticement of child under eight-
teen to engage in sexual act under 18 USCS §§ 2252(a) and 2422(b)
and remanded so district court make proper reliability findings
on evidence it used to justify its above range sentence and
explain why it believed defendant's past coduct with children
justified both an upward adjustment and a sentence above the
Sentencing Guideline -range.
       United States v. Angel, (2007 CA7 Ind)216, Fed App. 557

III

## State And Federal Constitution Guarantee Right Of Confrontation

---The right of the accused to be confronted with the witness
against him is not only a guaranteed by this article but is also
avilable under the Fourteenth Amendment to the Constitution of
the United States in that the right given by the Sixth Amendment
was made obligatory on the states in
    Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed 2d 923(1965)
& Douglass v. Alabama 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed 2d934 (1965)
& Franklin v. State, 239 Md. 645, 212 A.2d 279 (1965).

---The perogative of the defendant to have his accuser confront
him is a keystone to our concept of criminal justice--grounded on
the unwavering belief that an individual should be afforded the
opportunity to challenge the witness against him through cross-
examinination.
    Collins v. State, 265 Md. 70, 288 A.2d163(1972)

---Both the federal and State guarantees of the right of confron-
tation appear to be identical, and both are equally binding in
criminal prosecution in Maryland, as a matter of federal as well
as State constitutional law.
    Jackson v. State, 31 Md. App. 323, 356A.2d 299(1976)

---In terms of the right of confrontation, this article and the
Sixth Amendment to the federal Constitution are virtually iden-
tical and have been held to express" the same right".
    Gregory v. State, 40 Md. App. 297, 391(1978), cert. denied,
                471 U.S. 1103105 S. Ct. 233385 L.Ed 2d 849(1985)
&   Tichnell v. State, 290 Md. 43, 427 A.2d 991(1981)


----Court of Appeals declined to construe the Confrontation
Clause of this article differently from the Supreme Court's
construction of the Confrontation Clause of the Sixth Amendment
    Craig v. State, 322 Md. 418, 588 A.2d 328(1991)

## The Right To Produce Witnesses

--- The right of a defendant in a criminal trial to produce
witness in his own behalf is critical right, the implementation
of which is guaranteed by this article and the Sixth Amendment
to the United States Constitution
    Archer v. State,  383 Md. 329, 859 A.2d 210 (2004)

## Common Law

---The right to confrontation arose in the common law.
    Gregory v. State, 40 Md. App.297, 391 A.2d 437 (1978) cert. denied,
                471 U.S. 1103105 S.Ct. 233385 L.Ed. 2d 849(1985)

Conflict of Interest

---Actual Conflict when defendant accused counsel of Improper
behavior btween the two.
    United States v. Shorter,54 F.3d 1248 (7th Cir.) cert. denied,
                            516 U.S. 896 (1985)

___ Actual Confict between Counsel and defendant.
    United States v. Schwarz,289 F.3d 76(2d Cir.  2002)

---Court failed to resolve conflict between appointed lawyer
and client.
    United States v. Woodford, 428 F.3d 1181 (9th Cir.), cert.denied,
                            127 S.Ct. 2876 (2007)
---Claim of ineffective assistance of counsel are generally
cognizable on direct appeal, such clallms are more appropriately
rallsed in a motion filed pursaunt to  28 USCA § 2255 (West Supp. 2010)
unless counsel's ineffectiveness conclusively appears on the
trial recod.
    United States v. Richardson, 195 F.3d 192, 198 (4th Cir. 1999)
 &  United States v. Baldovino, 434 F.3d 233, 239 (4th Cir. 2006)

Jury Selection

---Selection proceduer resulted in an under representation of
minorities in the jury pool.
    United States v. Jackson, 64 F.3d 1240 (2d Cir. 1995)

---Raced based premptory challenges was not subject to harmless
error review.
    Tankleff v. Senkowski, 135 F.3d 235 (2d Cir. 1998)

---Plan which resulted in removal of 1 in 5 blacks from panel
violated Jury Selection and Service Act.
    United States v. Orvalle, 136 F.3d 1092 (6th Cir. 1998)

---Court improperly denied defendant's race neutral premptory
challegee(s).
    United states v. Blotcher, 142 F.3d728 (4th Cir. 1998)

---Defendant cannot be forced to trade for consent to seat
biased juror(s).
    United Staes v. Nelson, 277 F.3d 164 (2d Cir. 2002)

Jury Trial

---Defendant improperly excluded from In-camera conference.
    Bradley v. Harris, 428 F.3d 811 (9th Cir) amended, 518 F.3d 657(2008)

V

---Prosecutions argument that defendant was a murderer
prejudiced drug case.
   United States v Wilson, 135 F.3d 291 (4th Cir.) cert. denied,
                           523 U.S. 1143 (1998)

---Prosecutor's argument reffered to matters not in ecidence.
   United States v. Maddox, 156 F.3d 1280 (DC Cir. 1998)

---Improper remarks by prosecutor's
   United States v. Richardson, 161 F.3d 728 (DC Cir. 1999)

---Prosecutor improperly referred to inadmissible prior bad acts
under 404(b) which did not apply to defendant in closing.
   United States v Brown, 327 F.3d 634 (9th Cir. 2004)


Expert Testimony

---Exclusion of defense expert for discovery violation denied
the defendant right to present a defense.
   Forensic v. Birkett, 501 F.3d 469 (6th Cir. 2006)

---Exclusion of expert for defense, on motive to seek sexual
gratification in chat room was error.
   United States v. Gladish. 536 F.3d 646 (7th Cir 2008)

---Defense expert should have been allowed to testify on the
defendant's inability to form intent.
   United States v. Childress,58 F.3d 693 (DC Cir.) cert. denied,
                              516 U.S. 1098 (1996)

Jury Instructions

---Jury instructions did not adequately impose burden of proving
knowledge.
   United States v. Wilson,133 F.3d 251 (4th Cir. 1997)

---Ambiguous jury instruction mislead the jury.
   United States v. Rossomando, 144 F.3d 197 (2d Cir. 1998)

----Jury improper instructions improperly amended the indictment.
   United States v. Combs, 369 F.3d 925 (6th Cir 2000)


VI

Under F.R.E-(702)
Opinion and Expert Testimony

Which generally provides for a broad definition of who  does
qualiflles as an[expert] , the amendemnet is broad in that it incl-
-udes both scientific as well as unscientific evidence. It does
not destiquishes between those cases that where the expert will be
presenting testimony on novel scieñtiℓlic evidence. The rule does
not extend, however, to witnesses who may offer only lay oplnion
testimony under F.R.E. (701). Nor does the amendment extend to that
of summary witnesses who may testify under F.R.E. (1006), unless
the witnesses is called to offer expert opinion apart from, ouuin
addition to the summary evidence.

The daughter, did not take the stand, nor did the
have a chance to confront her during motions nor at any other time
prior to sentencing. The **petitioner** was able to secure, a  great deal
of the prior e-malℓl(s), letter(s), and phone-call(s) of the comple-
ted converstalions and communications between the appellant and the
daughter, as well as letters that the daughter sent to the appellant
during the trial and sentencing  stage based on her remaing and
continued actions, yet the government placed the **petitioner** with ann
obstruction of justice charge and again it ws not the **petitioner** but
in fact the daughter. ( see appendix for letters and additional evid.)

About The Daughter:

At the time of this ordeal the dughter was 16 turning 17 years
of age at the time of these events. The duaghter and petitioner  were
still in aquaℓlnatance with each other, after having not seen each
other for nearly twelve years. The daugter was born in 1994, by the
complaintant/ mother and the appellant. During the time the daughter
had reached seven to eight months old, the complalIntant and appellant
had sepearted, with the appellant having fulltime care, charge, control
and custody of the daughter. In 1996, the parties had another chiild
that was a boy, the son stayed with the complalIntant and the daugter
remaℓlned with the appellant every other weekend the appellant recieved
the son, but still continued to retain the daughter. The Complaintant
would reside with the appellant the opposite weekends.

The reason for the seperation was due to the petitioner, haƀving
learned that at the time of the marraige the complaintant had a
recent and still on going relationship with the step-brother of the
appellant and that a few of the closer family relatives were aware
of the complaintant's realtionship, but it was not confirmed that
the complaint was infact one in the same person until after the ann-
ouncement of the marriage to the family and seeing the complaintant
that the family realized that the complaint was one in the same
person.  ( this was the reason for the DNA testing between the

(this was the reason for the DNA testing between the daughter
and the appellant). The petitioner, stipulated the daughter was his
own biologiacl daughter, even it she were not))

In 1997 after the daughter had turned 3 years of age, the
complallntant/mother took off with the two children. For a few
months the petitioner, tried consistantly to keep contact and ties
with the complallntant, but to no avail the contacts severed.
Over the course of the next eleven to twelve years the appel-
-lant did call periodically to see how the two children were as
well as sent funds when made available, petitioner, never had to pay
court ordered child support nor alimony.

In the late part of 2002, the complallhatnt filed for divorce
due to no cohabitation over 2 years and llrreconcilable differeces.
This was when the appellant found out that there was a third
child born of the union. (test were never comfirmed and members
state that the third child may in fact be the child of the cur-
rent spouse that the complaintant had left to go to during their
separation. Which was another additional reason for the separation.

During the filing of the divorce, the compalintant had
addressed the court and stated that there was no other person in
the relationship and that it was due to irreconcilable difference.
Yet in review of the information and statements by the com-
plaintant and the daughter, the current spouse had been in the
family nucleus from as early as 1997 consistantly, and the appel-
-lant remembers having arguments and dicussion over the person
during the pregnancy of the second child.

In 2008, exactly eleven years to the date that the complain-
-tant left, the complaintant calls to inform the petitioner, that
he needs to take care, charge, control and custody of their daughter,
due to several unresolved issues that were going on in the family
home between the daughter and the maternal family. The appellant
met with the complaintant on Oct. 08, 2008, and discussed the terms.

On Oct. 10, 2008 the petitioner, agreed to pick up the daughter
on the weekends and take her to school on the begining day of school
and getkherp on the following fridays until other arrangments there
were to be made.  On Oct. 10, 2008 the daughter and petitioner,
along with the petitioner's GOD-sister received the each other from
Montgomery Blair Sr. High School, called the complallntant and let
her know that the daughter was received but wanted to know why the
school had the petitioner, listed as deceased from the child, but
due to the fact the the administration knew the petitioner, from some
his other children having had attend, there was no need to give an
explallnation., nor did the complallntalt.

On Oct.10, 2008, the daughter left for the weekend with the
petitioner. and the GOD-sister, but fisrt they had to go to the home
or the daughter to pick up a few of her belongings for the weekend,

and upon the daughter coming out with her belongings she
had came out with all of her belongings. Both the petitioner
and the GOD-sister had to explalln to the daughter that she will
only be resising for the weekends until we can find out what is
really going on.  The daughter made it fery clear that the move
will become permanant and that it was best to move the belongings
at that present time, the petitioner, called the complallntant
to ask what is really going on than proceeded to speak with the
maternal parents of the complaintant, they expalined that its
best to speak with  the mother/ complallntant but to take and
keep the daughter would perhaps be best.

        ꟷAfter several weeks of picking up dropping off, it was
therefore apparent that there was another problem that was not
being discussed. At the begining of the Thanksgiving vacation the
daughter was expelled from Montgomery Co. public school system
due to several unresolved incidents and issues that had transpired
before the petitioner, had stepped into the picture, than they seemd
to escalade each time the daughter returned to the maternal home.
        This is addressed as [1602] in the transcripts -pg (37)line 24
                                                      tr-04/20/11

        During the incidents that had continuiosly arrived, the
daughter was fighting her siblings, fighting her mother, as well
threatening school officials as well as students, there was no
other option but to remove her. Shortly after being removed
from Montgomery Blair Sr.H.S., the petitioner, was notified and
threrefore removed the daughter from the school and took her to
the maternal home to pack up her things and told her that she'd
be picked up after his meeting with local officials. A few hours
after leaving the daughter the petitioner, receives another phone
call from the Montgomery Co. Police of Silver Spring Md. due to
a home disturbance that that the appellant needs to come immediately
and therefore retrieve the daughter from the home or from the jail.
        The appellant opted for the home.

        After several attempts over the next few days to lind out what
was really going on in the daughter's life it was revealed that
the daughter was a victim of abuse, emotionally, physically and
sexually by the hands or the complallntant and the step father.
        When the petitioner, approached the complallntant/mother on
these stated alligations by the daughter, the mother had made
clear that the alligations were no new to her and that they were
made up, the petitioner, also confronted the current spouse about the
alligations as well, his response more of: "The Bitch is lieing"
        [There are several, e-mall(s) letter(s), and phone call(s) tha
stress these alligations as well as the In-Camera interview, yet
it is also a bit hard to decipher the truth from the lie in her
statement. A great deal of it is very incosistant in what she says
to the officer(s), but in the  conversations and communications the
routine is very much so consistant. There are several other reports
that also shed so light on the daughter's mental state and where꞊

IX

.....-withthal of what others have formulated, found and observed that was not brought up at trial but has been therefore now made accessable to the petitioner. for review, a great deal was given to the government thru information of the A.A.G.'s office of Washington, D.C., do to another pending case that has now since been closed on the daughter, but still remains open on her two younger siblings by the petitioner's, current spouse.[see appendix on Victim's info]

         The petitioner, does not argue that the conversations that he and at the time teenage daughter had were not social status moral or normal by the rules of society, but in no way were they at all crIIminal. Nowere there any other inappropriate types of behavior ever introduced in the relationship between the daughter and the appellant. The daughter, visted the maternal family [EVERY] weekend, holiday,birthday, anniversary and special occassion.

         [There was always others involved] in the:daily, weekly and monthly[routine] of the daughter's life as well as with the other two younger siblings, because all of the problems, outburst and destructive behavior that the daughter had, shared and displayed on a regular and consistant basis.     [ see: appendix on bahavior]

         The appellant had,CFSA  -Child and Family Services
                        CPS   -Child Protective Services
                        DHS   -Department of Human Health Services
                        GeorgeTown University Hospital (Pediatrics)
                        Howard University Hospital (Pediatrics)
                        Providence Hospital (Pediatrics)
                        D.C. Metropolitian Police
                        Woodrow Wilson H.S. Guidance Counselors,Staff
Administration & medical involved in the family structure.

         The government was aware of these knowledges, but sought not for what should of been introduced but what could be hiddedn.
         During the sentencing, the government made a remark of the abuse suffered by the daughter from the petitioner, came at a time when he was featured in the Washington Post, as Mr. Mom. That was a bold lie. not only is the accusation incorrect, but at the time of that article the petitioner was a single parent, and he did not have any ties or knowledge of the daughter or the complaIIntant need to take charge of the daughter.  The article was featured in June 2006 Father's  Day addition, the daughter was not introduced into the petitioner 's family until as early as October 10, 2008; 28 months later [ see article]

         The government stated that they could not find any verification of the petitioner's  employment e.g. his Private Detective Agency or Communications service [see: appendix]

X

The               Mr. Kemache-Webster, had not the intent nor
the wherewiththal to commit the crime nor set a substanial step
in completing the crime, yet the government set a precidence and
an instruction for a completed crime as well as redacted, blackend,
snipped and edited the communications and conversations out of a
pletora of e-mails)) letter(s), and phone-call(s); which after they
were combind together added up to about)(5) complete e-mail(s),
about (2) complete letter(s) and about (30) minutes not quite an
hour worth of phone-call(s).
    Yet there were nearly (3000) e-mail(s), between both parties
over (400) letter(s) [ they used none of the letters the daughter
had sent to the appellant, and of the stated that are#/were (700)
phone call(s).. they presented to the court less than (10) of a
set of disk that only contaïn (408) of the (700) thatemeans½there
are (292) calls un-accounted for with about (292) mins⚬ =4hrs 20 mins.
to (4,380) mins. =73 hrs worth of un-accountable calls.

    This is a lot of un-accounted for evidence that goes to what
is favorable to             under Brady Material or of⸱F.R.E. (106)
Rules of Completeness⸱
    See: State v. Martinez, (2009) CA 11 Fla. ) 2009 U.S. App Lexis 5060

    See: Parker v. Allen, 556 F.3d 1258, 1273-74 (11 Cir. 2009)

    See: Jackson v. Virginia, 433 U.S. 307, 99 S.Ct. 2781,61
                    L.Ed 2d 560 (1979)
    Due Process Clause:  A criminal defendant may be convicted
    [only] by proof beyond a reasonable doubt of every fact
    necessary to convict the charged crime.
As in Winship,397, U.S. 358, 364, 90 S. Ct. 1068 25 L.Ed 2d 368 (1970)

Al so See: Gavozos v. Smith, _U.S._, 132 S.Ct. 2,4, 181 L.Ed 2d 311 (2011)
                    (quoting Jackson)

## Failure To Disclose Material Favorable To Defendant

    In failling to disclose the plea agreement that it had with
two key witnesses particularly in conjuction with the false given
testimony that they offered and the misleading closing argument
by the prosecutor, the State did not fulfill its constitutionally
mandated obligation under Brady and its progeny to disclose to
defendant any favorable evidence material to his defense.

    Wilson v. State, 363 Md. 333, 768 A.2d 675 (2001)

## Right To Cross-Examine The Victim
    Where defendant, a police officer, requested the victim's
identification and removed $300 from the victim's wallet prior
to walking away, and where the victim gave notice that he intended
to file a civil suit against the city based on defendant's
conduct, the trial court's refusal to allow defense counsel to
cross-examine the victim as to whether he had hired a lawyer

..... in the civil matter was reversible error because
cross-examination of the victim on a pending civil action
was relevent to impeach the victim on bias or motive to lie.
        Martin v. State, 364 Md. 692, 775 A.2d 385 (2001)


        In the case of the          Mr. KeMache-Webster
he was denied evidence and materials as stated to prove his
innocence, as well as refused to cross-examine the victim his
daughter. The          never confronted the daughter at no stage
of the entire case.

            Special Provisions In Child Sexual Abuse Cases
        Although  The constitutional right to confrontation does
ordinarily includes, among other things the right of the accused
to be seen by the accuser when the accuser is to be testifying
against the accused, the procedures in former § 9-102 of the Courts
Article under which the accusing witness in the child sexual abuse
cases could not see the accused while the the witness was testifying
might have been permissible under certain circumstances.
        Wildermuth v. State, 310 Md. 496, 530 A2d 275 (1987)


        In Trial court's refusal to grant defendant charged in child
abuse acess to the victim's school records was reversed, where con-
-trolled access by counsel to the records was heald to be appro-
priate.
        Zaal v. State, 326 Md. 54, 602 A2d 1247 (1992)


        While § 11-304 of the Criminal Procedure Article, properly
allowed admission of the hearsay testimony of children of tender
age, the defendants right to confrontation required either that
child be unavailable to testify in court or that the defendant had
a prior opportunity for cross-examination; tthe opportunity to
cross-examine is a necessary precondition for the intrduction of
a testimonial statement made by a person who is unavailable to
testify at trial.
        Snowden v. State, 156 Md. App. 139, 846 A 2d 36 (2004)


        In all criminal prosecutions in the State of Md., The Sixth
Amendment to the Constitution of the United States, applicable to
the State(s) through the Fourteenth Amendment, and this Article
command that the accused shall enjoy the right to confront his
accuser againt him; the prerogative of the defendant to have  his
accuser confront him is the keystone to our concept of criminal
justice-- grounded on the unanswering belief that an individual
should be afforded the opportunity to challenge the witnesses
against him through cross-examination.
        Breedon v. State, 333 Md.212,634 A.2d 464 (1993)