IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **FRANESIOUR B. KEMACHE-WEBSTER, # 42459-007,** | * * * * | |
| Petitioner, | * * | |
| | * | Criminal No. RWT-10-0654 |
| v. | * | Civil No. RWT-14-2005 |
| | * | |
| **UNITED STATES OF AMERICA,** | * * | |
| Respondent. | * * | |

## MEMORANDUM OPINION AND ORDER

This matter arises out of a child exploitation case wherein Petitioner Franesiour B. Kemache-Webster was charged under 18 U.S.C. § 2422(b) for sending e-mails, handwritten letters and making telephone calls from a federal prison to his sixteen-year-old biological daughter, which communicated his explicit intentions to further their ongoing sexual relationship on his release from prison. ECF No. 184, at 1. After a three-day trial beginning on April 19, 2011, a jury returned a verdict finding Kemache-Webster guilty. ECF Nos. 96, 97. On August 5, 2011, this Court entered a Judgment sentencing Kemache-Webster to a term of life imprisonment. ECF Nos. 122, 127. Now pending before the Court is Kemache-Webster's petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence in which he outlines ten arguments that he believes are proper grounds for relief. ECF No. 178.

### BACKGROUND

In October 2008, Kemache-Webster's then fourteen-year-old, biological daughter came to live with him in the District of Columbia, where she remained until Kemache-Webster's

incarceration on March 18, 2010 for writing a bad check.[1]  ECF No. 58, at 2; *see also United States v. Bryan Webster*, No. 2009 CF2 019166 (D.C. Super. Ct. Mar. 18, 2010).  Soon thereafter, the daughter moved back in with her mother (Kemache-Webster's ex-wife) in Silver Spring, Maryland.  From prison, Kemache-Webster placed over two hundred telephone calls and sent over seven hundred e-mails and letters to his daughter that revealed Kemache-Webster had vaginally, anally, and orally raped his daughter while she was living with him.  *Id.* at 3; ECF No. 184, at 1.  The communications indicated that Kemache-Webster intended to marry and conceive children with his daughter after his incarceration.  ECF No. 58, at 3.

In August 2010, Kemache-Webster's ex-wife discovered and read several letters and e-mails that Kemache-Webster wrote to their daughter from jail.  *Id.*  She photocopied and printed the correspondences, and provided them to law enforcement.  *Id.*  An investigation ensued, and Kemache-Webster was detained on September 14, 2010 and indicted on October 25, 2010 on one count of enticing a minor to engage in unlawful sexual activity under 18 U.S.C. § 2422(b) (2006).  ECF Nos. 1, 14.  The case proceeded to a three-day jury trial in April 2011 and concluded with a guilty verdict.  ECF Nos. 96, 97.  Several months later, following a sentencing hearing, the Court sentenced Kemache-Webster to life imprisonment.  ECF Nos. 122, 127.

The Fourth Circuit affirmed this Court's verdict and sentence on appeal, *United States v. Kemache-Webster*, 497 Fed. Appx. 339 (4th Cir. 2012), and on July 24, 2014, Kemache-Webster filed the instant motion pursuant to § 2255 seeking to set aside, correct, or vacate his sentence, ECF No. 178.  The Government responded on August 7, 2014, ECF No. 184, and

---

[1] At the time of this sentencing, Kemache-Webster already had an extensive criminal history, including more than fourteen convictions from 1982–2001, at least nine of which involved various forms of fraud.  ECF No. 58, at 2.

Kemache-Webster filed four supplements or replies in support of his motion on August 25, 2014, March 27, 2015, and May 8, 2015, ECF Nos. 186, 187, 188, 189.[2]

## DISCUSSION

Under § 2255, a petitioner must prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255 (2012); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). If the § 2255 motion, along with the files and records of the case, "conclusively show that [he] is entitled to no relief," a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. Kemache-Webster presents ten arguments that he believes are proper grounds for relief pursuant to § 2255. The Court finds that all the arguments either have no legal basis or are procedurally barred.

**I. Kemache-Webster's petition is untimely because finality attaches when the Supreme Court denies a habeas petitioner's petition for certiorari review.**

Claims under § 2255 are subject to a one-year statute of limitations, which begins to run from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1)–(4). The Supreme Court denied Kemache-Webster's petition for a writ of certiorari on April 29, 2013. *Kemache-Webster v. United States*, 133 S. Ct. 2041 (2013). If the statute of limitations began then, Kemache-Webster had until April 29, 2014 to file his § 2255 motion. The Supreme Court denied his petition for rehearing on July 22, 2013. *Kemache-Webster v. United States*, 134 S. Ct. 29 (2013). Kemache-Webster filed this § 2255 motion to vacate on

---

[2] Kemache-Webster also filed a second motion to appoint counsel. ECF No. 190. Because Kemache-Webster is able to adequately articulate his claims, the claims do not appear unduly complex, and an evidentiary hearing is not required, the Court does not find that the interests of justice require the appointment of counsel and will deny his motion. 18 U.S.C. § 3006A(a)(2)(B) (2012); Rules Governing § 2255 Proceedings, Rule 8(c).

July 24, 2014, which was more than one year after the denial of the petition for a writ of certiorari, but approximately one year after the denial of his petition for rehearing.

Supreme Court Rule 16.3, entitled "Disposition of a Petition for a Writ of Certiorari," provides:

> Whenever the Court denies a petition for a writ of certiorari, the Clerk will prepare, sign, and enter an order to that effect and will notify forthwith counsel of record and the court whose judgment was sought to be reviewed. The order of denial will not be suspended pending disposition of a petition for rehearing except by order of the Court or a Justice.

Sup.Ct. R. 16.3. Thus, Rule 16.3 states that a petition for certiorari review is resolved when the Court denies review, unless the Supreme Court or a Justice intervenes, neither of which occurred at any point in the process in Kemache-Webster's case.

This conclusion is consistent with Fourth Circuit precedent and the decisions of six other circuit courts to have considered the issue. *United States v. Segers*, 271 F.3d 181, 184 (4th Cir. 2001) (holding that "in the absence of an order of the Court or a Justice thereof, a petition for rehearing of the denial of certiorari has no effect"); *see also In re Smith*, 436 F.3d 9, 10 (1st Cir. 2006) (holding that a "conviction becomes final for purposes of triggering the one-year limitations period of § 2255 when certiorari is denied, regardless of whether a petition for rehearing is filed or when such petition is denied "); *Robinson v. United States*, 416 F.3d 645, 650 (7th Cir. 2005) (holding that "petition for rehearing the denial of [petitioner's] certiorari petition had no effect on the finality of his conviction"); *Campa-Fabela v. United States*, 339 F.3d 993, 993 (8th Cir. 2003) (holding that conviction was final at the denial of petition for writ of certiorari, rather than denial of petition for rehearing); *Giesberg v. Cockrell*, 288 F.3d 268, 270 (5th Cir. 2002) (same); *United States v. Willis*, 202 F.3d 1279, 1280–81 (10th Cir. 2000) (holding that a judgment of conviction is final at the

4

denial of certiorari, "regardless of whether a petition for rehearing from the denial of certiorari is filed."); *Drury v. United States*, 507 F.3d 1295, 1297 (11th Cir. 2007) ("Upon the denial of [a petitioner's] certiorari petition, [his] conviction was final for purposes of [a § 2255 motion] limitations period.").

Finality, therefore, attaches when the Supreme Court denies a habeas petitioner's petition for certiorari review, not upon denial of the petition for rehearing. Absent a showing of extraordinary circumstances justifying equitable tolling, Kemache-Webster's § 2255 motion became untimely after April 29, 2014. *See, e.g.*, *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). That being said, even if his § 2255 motion were not time-barred, it would fail for lack of legal merit or basis in fact.

**II.** **Kemache-Webster's claims of commandeering his person, faulty jury instructions, parental exemption, and failure to prove the necessary elements of § 2422(b) are not cognizable under § 2255.**

Kemache-Webster offers several arguments that he believes are proper grounds for relief. Section 2255 allows federal prisoners to move to set aside sentences that are imposed "in violation of the Constitution or laws of the United States." Thus, § 2255 relief is not limited to constitutional errors. *See Davis v. United States*, 417 U.S. 333, 345–56 (1974). However, a non-constitutional error may only serve as a basis for collateral attack when it involves "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks omitted).

"The Supreme Court has provided only the general contours of what constitutes a complete miscarriage of justice." *Whiteside v. United States*, 748 F.3d 541, 548 (4th Cir. 2014), *vacated on other grounds*, 775 F.3d 180 (4th Cir. 2014). For instance, in *Hill v. United States*, the Court reviewed a sentencing judge's failure to inform a defendant that he had the right to

speak at his sentencing hearing. 368 U.S. 424, 429 (1962). The Court characterized this mistake as a mere failure to follow the formal requirements of a rule, and held that it did not constitute a basis for habeas relief. *Id.*; *see also Peguero v. United States*, 526 U.S. 23, 24 (1999) (concluding that a failure to inform defendant of the right to appeal where defendant knew of the right was not sufficient basis); *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (finding insufficient a failure to mention a special parole term at Rule 11 hearing). On the other hand, the Court held in *Davis* that a post-conviction change in the law that rendered the defendant's conduct no longer criminal is correctable on collateral review, because "[t]here can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief." 417 U.S. at 346–47 (internal quotation marks omitted).

First, Kemache-Webster alleges he was "commandeered from the criminal jurisdiction of the State of Illinois to the criminal jurisdiction of the United States" in violation of the Tenth Amendment, which provides that powers not granted to the federal government nor prohibited to the states by the Constitution are reserved to the states or the people. *See* ECF No. 178, at 26, 29–33. The Tenth Amendment's definition of federalism, however, is not relevant to the Rules of Criminal Procedure to which Kemache-Webster objects. Unless a statute provides otherwise, the Federal Rules of Criminal Procedure require that an arrested individual be taken without unnecessary delay before a magistrate judge, or state or local judicial officer, and then transferred to the district where the offense was allegedly committed if the government produces a warrant and the judge finds the defendant is the same person named therein. Fed. R. Crim. P. 5(A). From his location at a federal prison in Marion, Illinois, Kemache-Webster communicated his desire and made plans to engage in sexual activity with his

daughter who was living in Silver Spring, Maryland. Therefore, the rules of criminal procedure were properly adhered to when Kemache-Webster was arrested in the Southern District of Illinois and transported to the District of Maryland to be charged and prosecuted.

Second, Kemache-Webster claims the jury instructions regarding completed versus attempted offenses were in error and somehow affected his Fifth Amendment rights. ECF No. 178, at 26, 34–36. Kemache-Webster could have challenged the adequacy of the jury instructions provided at the original sentencing and on direct appeal, and because he did not do so, those challenges are barred unless Kemache-Webster can "'show cause and actual prejudice . . . or . . . that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack.'" *United States v. Pettiford*, 612 F.3d 270, 279 n.7 (4th Cir. 2010) (quoting *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999)). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Mikalajunas*, 186 F.3d at 493 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). And, in order to demonstrate that a "miscarriage of justice" would result from the refusal of the Court, a petitioner must show "actual innocence by clear and convincing evidence." *Id.* at 496. Here, Kemache-Webster has not made such showings and has failed to explain how jury instructions, which counsel for both parties and the Court reviewed, were in error. Therefore, the Court finds that no argument has been presented sufficient to demonstrate a "miscarriage of justice" in the presentation of the jury instructions.

Third, Kemache-Webster asserts that some parental right exists under the First Amendment or that some parental exemption exists under § 2422(b), which protects his right to coerce and entice his biological minor daughter to engage in sexual acts. ECF No. 178,

7

at 26, 37-40.  This Court disagrees and finds that, even if the Founding Fathers or Congress had intended to provide such protection, Kemache-Webster again failed to directly appeal the issue and failed to demonstrate that a "miscarriage of justice" would result from this Court's refusal to entertain his collateral attack.  *See Mikalajunas*, 186 F.3d at 496.

Fourth, Kemache-Webster ostensibly challenges the elements of § 2422(b) and whether the Government met its burden of proof at trial.  ECF No. 178, at 26, 40–50.  These arguments, however, are procedurally barred because they were resolved on direct appeal.  It is well-settled that a petitioner cannot "circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion," *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), and will not be allowed to "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]," *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).  The Fourth Circuit explicitly addressed and rejected arguments regarding the elements of § 2422(b) on appeal—reflecting that this Court considered the elements of § 2422(b), what constituted a violation of § 2422(b), and what the Government was required to prove to meet their burden of proof.  *See Kemache-Webster*, 497 F. App'x at 343–44.

**III.   Kemache-Webster's claim for ineffective assistance fails because he cannot show either that his attorney's performance was deficient or that he was prejudiced.**

Courts examine claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under the performance prong, a defendant must show that counsel's performance was deficient.  *Id.*  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689; *see also United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004).  The alleged deficient performance must be objectively unreasonable and "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*,

466 U.S. at 689. The Court must evaluate the conduct at issue from counsel's perspective at the time, and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Under the prejudice prong, a defendant must show that the deficient performance prejudiced the defense, and but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 687, 694. Unless a defendant makes both showings, the Court cannot find that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id.* at 669. Finally, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Kemache-Webster alleges his counsel, Gary E. Proctor, was ineffective because he did not investigate and cross-examine the "primary witness" in his trial,[3] ECF No. 178, at 26, 51, 53–57, for failing to use the subpoena process to compel the victim and witnesses for trial, *id.* at 27, 52, and for neglecting to develop mitigation arguments based on his social history and other personal characteristics, *id.* at 13. The record, however, reveals that Proctor provided effective and vigorous representation at every stage of litigation—relentlessly challenging the inclusion of damaging evidence and making efforts to mitigate its effect. Proctor retained an investigator who was present during trial and had attempted to speak to more than one witness involved in the case, including Kemache-Webster's daughter, with little success or benefit. ECF No. 184, 8-9. Proctor subpoenaed at least one witness and attempted to subpoena the victim, ECF No. 33, but was denied in response to the Government's Motion to Quash, ECF Nos. 60, 67. And, Proctor developed, both at sentencing and in his sentencing

---

[3] Kemache-Webster does not identify who this "primary witness" is, leaving the Court to guess that he is referring to the victim in this matter, his biological daughter. ECF No. 178, at 26–27.

memorandum, mitigation arguments based on Kemache-Webster's social history and other personal characteristics. ECF No. 184, at 10.

Most of Kemache-Webster's concerns seem to center around his belief that calling his daughter to testify that she assented to the sexual abuse she endured would be to his benefit. ECF No. 184, at 9, 9 n.5. This belief is false and based on a fundamental misunderstanding of the law. The attempt prong of § 2422(b) criminalizes an intentional, or successful, *attempt* to achieve the victim's assent—the completion of the act to which the victim assented is not required. *Kemache-Webster*, 497 F. App'x at 343 (citing *United States v. Engle*, 676 F.3d 405, 419 (4th Cir. 2012)). Therefore, any testimony that the daughter assented to or was complicit in the illegal sexual activity would have harmed Kemache-Webster's case. Placing the daughter on the stand would have permitted her to explain, not only the sexual abuse she endured at the hands of her biological father, but also the physical abuse that was otherwise excluded. ECF No. 184, at 9. Proctor's decision to rest his case in chief without calling the daughter was in Kemache-Webster's best interest and made with full knowledge of the rules of evidence and criminal procedure.

Finally, even if Proctor was somehow ineffective, Kemache-Webster is still not entitled to relief under *Strickland* because he cannot show prejudice—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Kemache-Webster has not offered any evidence or argument, beyond his own conclusory statements, regarding what else Proctor could have said that would have reasonably resulted in a different outcome at his trial or a more lenient judgment at his sentencing hearing. *United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (stating "conclusory allegations are insufficient to establish the requisite prejudice under Strickland"). Accordingly, Proctor's

performance cannot be considered constitutionally deficient under a Sixth Amendment, post-conviction § 2255 motion.

## CERTIFICATE OF APPEALABILITY

Kemache-Webster may not appeal this Court's denial of relief under § 2255 unless it issues a certificate of appealability. *United States v. Hardy*, 227 Fed. Appx. 272, 273 (4th Cir. 2007). A certificate of appealability will not issue unless Kemache-Webster has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c) (2012); *Hardy*, 227 Fed Appx. at 273. "A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable." *United States v. Riley*, 322 Fed. Appx. 296, 297 (4th Cir. 2009).

This Court has assessed the claims in Kemache-Webster's motions to vacate his sentence on the merits and found them deficient. No reasonable jurist could find merit in any of Kemache-Webster's claims, and thus no certificate of appealability shall issue.

## CONCLUSION

The Court finds that all Kemache-Webster's claims are time-barred, and that even if timely filed, they are neither cognizable under § 2255 nor adequate to satisfy the *Strickland* two-prong test establishing ineffective assistance of counsel. Kemache-Webster's motion will be denied and no certificate of appealability shall issue. Accordingly, it is, this 13th day of May, 2015, by the United States District Court for the District of Maryland,

**ORDERED**, that Petitioner's Motion to Set Aside, Correct, or Vacate Sentence Under 28 U.S.C. § 2255 (ECF No. 178) is hereby **DENIED**; and it is further

**ORDERED**, that Petitioner's Motion Request for Counselor (ECF No. 190) is hereby **DENIED**; and it is further

**ORDERED**, that a certificate of appealability **SHALL NOT BE ISSUED**; and it is further

**ORDERED**, that the Clerk is hereby **DIRECTED** to mail a copy of this Memorandum Opinion and Order to Petitioner; and it is further

**ORDERED**, that the Clerk is hereby **DIRECTED** to close Civil Action No. RWT-14-2005.

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE