IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MARYLAND
GREENBELT, MARYLAND

_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

JUN 0 6 2016

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

FRANÇSIOUR B. KEMACHE-WEBSTER
42459-007

        Petitioner,

v.

THE UNITED STATES OF AMERICA

        Respondant,

Case No.: _____
        To Be Assigned

Reflecting:

        8:10-cr-0654-RWT-1

Motion: Supplemental Request Filing
To Reconsider or To Correct
A Manifest Error -- Pursuant
To Rule 60(b) or Alternative
To Rule 3582(c)(2) or also
To Rule 59(e)

MOTION
SUPPLEMENTAL
TO RECONSIDER or TO CORRECT
A MANIFEST ERROR IN SENTENCE

COMES NOW THE PETITIONER, [KEMACHE-WEBSTER], known by these truths to all
men as Mr. Françsiour B. KeMache-Webster; by and through the acts of a
Pro-se litigant. Does so come before this Honorable Said Court with his
Motion: To Reconsider or To Correct A Manifest Error In Sentence.
Pursuant To: Fed. R. Civ. P. 60(b) & 59(e) and Fed. R. Crim. P. 3582(c)(2); as written.
The Petitioner, [KEMACHE-WEBSTER], brings before this Said Court, [his] open
petition on that of: four (4) additional filings to his present filings as:

1.  A Supreme Court Ruling under Molina-Martinez v. United States; 136 S.Ct.
    26 (2015) "[V]iolation of the Seperation of Powers Doctrine" ---

> "[W]hen a defendant is sentenced under an incorrect
> Guideline range - whether or not the defendant's ul-
> timate sentence falls within [or outside] that of
> the correct range - the error itself can, and; most
> often will, be sufficient to show a reasonable proba-
> bility of a different outcome absent the error."

> [P]rejudice beyond, the facts that the erroneous and
> higher Guidelines range set the wrong frame-work for
> the sentencing proceeding....when "the record is si-
> lent as to what the district court might have done
> had it considered the correct Guideline range, the

court's reliance on an incorrect range in most
instance will suffice to show an effect on the
defendant's substantial rights."

The U.S. Supreme Court has held;

"Sentences that fall within a Guideline range are
those [least] likely to be explained on the record......

......In the absence of a detained record it Said:

"there is at least a reasonable probability that the
District Court would have imposed a different sentence
had it known the actual minimum recommended under the
correct range."

2. A Supreme Court Ruling under Descamps v. United States; 133 S.Ct.
2276 (2013), and including: Johnson v. United States; 135 S.Ct.
2551 (2015) "[V]iolation of the Void of Vagueness Doctrine " ---

"([W]hen a defendant raises the arguement of a federal
Due Process Clause violation under the Fifth Amendment
of the United States Constitution --- [ Constitutional
Law ] --- The doctrine based on the Due Process Clause
- requiring that a criminal statute state explicitly &
definitely what acts are prohibited, so in providing a
fair warning and preclude arbitrary enforcement, ---
establishing a requirement or punishment without a true
specific or specifying reason as to what is [required]
or specific or specifying what conduct is [punishable],
and therefore void --- because its violative of the Due
Process Clause of the Fifth Amendment's United States,
Constitution)"

[T]he rejected approaches come too close to creating an
impermissible presumptions of unreasonableness for sen-
tences outside of the Guideline range, --- the mathema-
tical approach also suffers from imficmaties of applica-
tions.

3. A Supreme Court Ruling under Elonis v. United States; 135 S.Ct.
2001 (2015) "[V]iolation of the Rule of Construction or The Rule
of Interpretation or The Cannon of Construction" ---

"([T]he presumption of a scienter requirement should
apply to each of the statutory elements that crimina-
lize otherwise innocent conduct.

[A]lthough the Model Penal Code [MPC] deliberately chose
not to use the term "mens rea" [guilty mind], it attempts
to preserve the core of the common-law definition of crime
as requiring culpability.
To do so, it includes a default 'Rule of Construction' and
definitions distinguishing "crimes" from "violations".

[I]t is the position of the Code that penal sanctions are justified only with respect to conduct warranting the moral condemnation implicit in the concept of a crime.. Section 2.02 of [MPC] specifies that "[e]xcept as provided in Section 2.05 of [MPC], a person is not guilty of an offense unless he acted 'purposely' or 'knowingly' or 'recklessly' or 'negligently'.... with respect to each material element of the offense.....

"Subsection (3) adds a default provision: "[W]hen the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts 'purposely' or 'knowingly' or 'recklessly' with respect thereto."

-Note that the default provision does not include the use of the word 'negligently'.-

4. A Supreme Court Ruling under Peugh v. United States; 133 S.Ct. 2072 (2013), and including: Alleyne v. United States; 133 S.Ct. 2151 (2013) "[V]iolation of the Ex Post Facto Clause" and also "[V]iolation of the Equal Protection Clause" and, "[V]iolation of the Fifth Amendment of the United States Constitution's and of the Sixth Amendment of the United States Constitution's and of the Fourteenth Amendment of the United States Constitution's Due Process Clause and Right To A Jury Determination." ---

("[T]he Ex Post Facto Clause was meant to prevent 'arbitrary & potentially--vindictive legislation.")

[I]n Calder v. Bull; 3 U.S., (3 Dall) 386, 390; 1 L.Ed 648 (1798); Justice Chase stated that the proscription against ex post facto laws was derived from English common - law, well known to the Framers [Founding Fathers] and set out four categories of ex post facto criminal laws.

1st   Every law makes an action done before the passing of the law, and which was innocent when done, criminal, and that punishes such action; and

2nd   Every law that aggravates a crime, or makes it greater that it was, when committed; and

3rd   Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed; and

4th   Every law that alters the legal rules of evidence, and receives less or different, testimony than the law required at the time of the commission of the offense in order to convict the offend-[er], the 'evidence' 'category', however is not intended to prohibit the application of new evidentiary rules in trials for [a]ny crimes committed before the changes.

[T]o succeed on a selective prosecution claim, [t]he claimant must demonstrate that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose."

[I]n the absence of clear evidence to the contrary, courts presume that [public officers] have properly discharged their official duties.......

To overcome; the presumption that the prosecution had not violated the equal protection clause 'a petitioner has a "HIGH" burden to establish both that (1) "similarly situated person(s) or individual(s) of a different race were not prosecuted as the petition-[er]; and, (2) that the decision to prosecute was invidious or in bad faith.

The Equal Protection Clause; is essentially a direction that all persons similarly situated should be treated the same or alike.

[A]ccording to the Fourth Circuit standards:
    "Unequal treatment constituting an equal protection violation "occurs" in one of two ways:

(1)  When the government explicitly classifies person(s) based on race or [gender][nationality][ethnicity]; or

(2)  When a law is facially neutral, but the administration or enforcement disproportionately affects one class of person over another, and, a discriminatory intent or animus is shown.

These are the arguments to be brought before this Honorable Court and these are the supplements that are to be presented with the Rule 60(b) and in the alternative Rule 59(e), and / or § 3582(c)(2), that are currently now entered before this Honorable Said Court.

[T]he Petitioner [KEMACHE-WEBSTER], begins as such............

Supplemental To 60(b)

[U]nder Molina-Martinez v. United States; 136 S.Ct. 26 (2016)
IMPROPER CRIMINAL HISTORY CATEGORY

[U]nder the United States Sentencing Guidelines [USSG], prior sentences
are counted as a single sentence if they were imposed on the same day, un-
less the offenses were separarted by an intervening arrest (the defendant
is arrested for the first offense prior to committing the second one).

[N]ormally, when the correct or incorrect range 'overlap' and the defen-
dant is sentenced within the 'overlap', courts do not assume in the absence
additional evidence, that the sentence affects a defendant's substantial
rights. Because it was objected to on that ground in the deistrict court, it
is subjected to 'Plain Error' analysis.

See: United States v. Mudekunye; 646 f.3d 281 (5th Cir. 2011);
        Pockett v. United States; 566 US 129, 135; 129 S.Ct. 1423 (2009)

> ("[I]f the defendant makes a showing, the court has
> the discreation to correct the error, if it seriously
> affects the fairness, integrity, or public reputation
> of judicial decision or judicial proceedings. Id.....

[W]hen the Court uses the [USSG], sentences are imposed in accordance
with the [USSG] of 18 U.S.C § 3553(a). The Guideline's calculation are in
fact just one [f]act[or] the Court takes into consideration, yet the Guide-
lines are also the 'primary' [f]act[or] when sentencing. Molina-Martinez
at 588.

Broad sentencing discretion informed by judicial [f]act-finding, does
not violate the Sixth Amendment, it is when the improper application of
the [USSG] range is invoked that the defendant's substaial rights are at
that point violated under the Sixth Amendment.

[M]olina-Martinez, as well as Alleyne v. United States; 133 S.Ct. 2151
(2013); is wholly consistent with the braod discreation of the judge to
select a sentence [within] the guideline range authorized by law.

[F]act-findings made for the purpose of applying the [USSG], which can
influence the sentencing judge's discreation in imposing an advisory Guide-
line sentence, do not violate the rule in Alleyne.

With; Alleyne, it does not curtail a sentencing court's ability to find
[f]acts relevant in selecting a sentence [within] the prescribed statutory

range. [H]owever --- [outside] the prescribed statutory range, and with judge found-[f]acts that raised the mandatory minimum sentence under the statutory statute are consdidered a violation of the Sixth Amendment.

[A] court abuses its discreation --- if the decision is guided by or is based upon erroneous legal principles or rest upon a clearly faulty [f]actual findings. See: Gall: 169 L.Ed 2d 445 (citing....

> Under the deferential abuse-of-discreation standard the Appellate Court failed to give 'due diligence' to the District Court's reasoned and reasonable decision that the § 3553(a) [f]act[or]s justified the imposed sentence.

While - the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, appellate courts must review all sentences - whether inside or outside or just outside, or significantly outside the Guidelines range - under a defer ential abuse-of-a-discreation standard. As to the Supreme Court the Sentencing Guidelines are new 'advisory', and appellate review of sentnecing decisions are limited to determining whether they are "reasonable". Departures, be they unusually harsh or unusaually lenient -- must be explained and given serious considera-tion to the extent of [a]ny departure to show that the given sentence is as such 'appropriate'.

[I]n reviewing the reasonableness of a sentence outside of the Guideline range, appellate courts may take the degree of a 'variance' into account and consider the extent of the deviation from the Guidelines. The Supreme Court has rejected 'extraordinary' situations and circumstances to justify a sen-tence outside of the Guideline range. [A]lso the Supreme Court has rejected "mathematical" formulations -- that use the precentage of a departure as a standard for determining the strength of the justification required for the specific sentence. Gall, supra Id. @ 588.

[T]he rejected approaches come too close to creating an impermissible pre-sumption of unreasonableness for sentences outside the Guideline range. The mathematical approach also suffers from infirmaties of applications. Gall.

[O]n or about August 05, 2011; the United States District Court for the Southern District of Maryland, Greenbelt --- entered into the record a sentence of [LIFE] imprisonment for the charge of 18 U.S.C § 2422(b) Coercion and Enticement for the Petitioner [KEMACHE-WEBSTER].

[T]he Court's reasoning is that it had chosen to use a [VARIANCE] imposition of sentence, instead of a guideline sentence. Though an open objection was made, the Court stated that under: Irizzary v. United States; 128 S.Ct. 828; 171 L.Ed 2d 28 (2008); that Pursuant To: Federal Rules of Criminal Procedure; Rule 32(h).

[U]nder Rule 32(h) of the federal Rules of Criminal Procedures, which generally requires reasonable notice to parties that court was contemplating departure from the applicable Guideline Sentencing range - held not to apply to every sentence that was variance from recommended Federal Sentencing Guideline (18 U.S.C.S. Appx) range.

The [f]act that Federal Rules of Criminal Procedure 32(h) remained in effect did not justify extending its protections to variances. District judges and counsel were able to ensure that [all] relevant matters related to a sentencing decision were considered before a final sentencing imposition and / or determination. Federal Rule of Criminal Procedure 32(h) also states:

> ("[T]hat before the court may depart from the applicable sentening range on a ground --- not identified for departure, either in the presentence report or in a party's prehearing submission, the court [MUST] give the parties reasonable notice that it is contemplating such a departure.

Rule 32 requires that a defendant be given a copy of the presentence report, at least 35 days before sentencing, Fed R. Crim P. 32(e)(2). Further each party has 14 days to object to the PSR, Rule 32(f)(1), and at least 7 days before sentencing - the probations officer must submit a final version of the PSR to the parties stating any unresolved objections, Rule 32(g).

Finally, at sentencing, the parties must be allowed to comment on any "matters relating to an appropriate sentence", Rule 32(i)(1)(C), and the defendant must be given an opportunity to speak and present mitigation testimony, Rule 32(i)(4)(A)(ii).

[S]entencing is a fluid and dynamic process, and the court in and of itself may not know until the end of the hearing --- whether a variance will be adopted - let alone on what ground(s).

[T]he Supreme Court has recognized that some cases in which the [f] actual basis for a particular sentence will come as a surprise to a defendant or the Government. The more appropriate response to such a problem is not to extend the reach of Rule 32(h)'s, notice requirement categorically but rather for a district court judge to consider granting a continuance when a party has a legitimate basis for claiming that the surprise was bias and or prjudicial.

"[I]n the normal case a'[COMPETENT]' lawyer will anticipate most of what might occur at the sentencing hearing - based on the trial; pre-sentence report; the exchanges of the aprties concerning the report; and, the preparation of the mitigating evidence.

[G]arden variety consideration of culpability; [CRIMINAL HISTORY CATE-GORY]; likelihood of re-offending; seriousness of the offense; nature of the conduct; and, so forth and so on --- should not generally come as a surprise to a well trained trial lawyer who has properly prepared for sentencing. See: United States v. KeMache-Webster; 8:10-cr-0654-RWT-1:(4th Cir. 2011);

United States v. KeMcahe-Webster; 497 Fed App'x 339 (4th Cir. 2012); and

United States v. Vega-Santiago; 519 F.3d at 5 (1st Cir. 2008)

[T]he [f]act that Rule 32(h) remains in effect today does not justify its protections to 'variances'; the justification for our decision in: Burns v. United States; 501 US 129; 115 L.Ed 2d 123; 111 S. Ct. 2182 (1991), no longer exists and such an extention is opt to complicate rather than to satisfy sentencing procedures.

("[T]o deprive the parties of notice would today subvert Rule 32's purpose of "promoting focused, adversarial resolution " of sentencing issues") Id @ 136

("[T]o deprive the parties of notice of previously unidentified grounds for a variance would today "rende[r] meaningless" the parties right to comment or "matters relating to [an] appropriate sentence.")

Burns; 501 US @ 136, 111S.Ct. 2182; 115 L.Ed 2d 123
(Internal quotation marks omitted )

[F]ederal sentencing --- proceeding [f]act[or]s where the district court decides that an outside - Guideline sentence is warranted, the court [must] consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. The Supreme Court finds it uncontraversial that a major depature should be supported by a major significant justification than a minor one. [A]fter setting on the appropriate sentence, the district judge must adequately explain the chosen sentence to allow for meaningful appellate review and to promote a perception of a fair sentencing.

[U]nder the Molina-Martinez standard, the 'PLAIN ERROR' that affected his substantial rights, should of been veiwed in favor of the defendant yet, the Appellate Court --- reviewed and suggested that the defendant, could not over-come that 'high-bar-standard'; the Supreme Court disagreed, stating:..........

> "A federal criminal sentence derived from an incorrect sentencing range can, and often will be sufficient to establish that the error affected the defendant's substantial rights under plain-error review."

> [A]lso stating:
> [P]lain-error review, which applies to errors that were not preserved at trial, requires a defendant to prove three things:

1. that the error was not intentionally relinquished nor abandoned;

2. that it was plain in the sense that it is clear or obvious; and

3. that the error affected his substantial rights, which means demonstrating a reasonable probability that, but for the error he would have received a different outcome of the proceeding.

> [A]dditionally stating that, the guidelines are the 'lodestar' of fedeal sentencing. In most, if not all, cases --- the mere [f]act of the use of the wrong sentencing range will be enough to show an effect on ones substantial rights. By the district court rejecting a categorical requirement is unworkable in a case such as this one.

"[W]hen a defendant is sentenced under an incorrect Guideline range --- whether or not the defendant's ultimate sentence falls within the correct range ---[whether inside, or outside, or just outside, or significantly outside] --- the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error."

[D]espite the advisory nature of the district court, the guidelines establsih "the essential framework" for sentencing proceeding by serving as the starting point for [a]ny federal sentence,

[A]bsent a government motion, which often requests a downward departure [variance], the district court imposes sentences within the applicable guidelines about 80 percent of the time. It follows then, that "an error related to the Guidelines can be particularly serious."

> ("Though it is true that there may be cases in which, despite application of an erroneous guideline range, there is no reasonable probability of prejudice. For instance, the district court may have indicated that the sentence imposed was appropriate irrespective of the guidelines range.

[B]ut when, "the record is silent as to what the district court may have done had it considered the correct Guideline range, the court's reliance on an incorrect sentencing [GUIDELINE] range in most instances will suffice to show an effect on the defendant's substantial right [s]."   Sentences that fall within a guideline range are those that are least likely to be explained on the record. [I]n the absence of a detain [ed] record --- "there is at least a reasonable probability that the District Court would have imposed a different sentence had it known" the actual minimum recommended under the correct guideline range.

[He]rein the Petitioner [KEMACHE-WEBSTER] was sentenced under the wrong and completely improper Criminal History Category Score, [CHCS]. On; or about March 18, 2010 --- [KEMACHE-WEBSTER] appeared before the Honorable Associate Judge for the Superior Court for the District of Columbia; Judge John Mott. During the sentencing phase of the hearing there was an open discussion on the [CORRECT] criminal history score, due most in part that [KEMACHE-WEBSTER] had an 'ANCIENT' criminal record, dating [back] from a period of over 20 to 30 years ago.

[T]he argument at bar, was in regards to that of an added point of whether [KEMACHE-WEBSTER] was to receive three(3) criminal history points or that of four (4) criminal history points --- due in part that a point was added for an additional charge that came about from the same incident under the same case.... [T]he Court agreed with the [f]actual basis on a miscalculation, and sentenced [KEMACHE-WEBSTER] based upon having three (3) criminal history category points.

On or about March 18, 2010; [KEMACHE-WEBSTER], was sentenced to service six (6) months of incarceration followed by four (4) years of supervised release in the District of Columbia, which was to start on September 16, 2010. [I]nstead, the Petitioner was arrested upon his dischargement of confinement from his March 18, 2010 --- six (6) months sentence.

[O]n or about September 16, 2010; in the State of Illinois, County of Williamson, City of Marion --- at USP Marion, while processing for discharge of confinement, the Williamson County Sheriff's Office arrested [KEMACHE-WEBSTER], based on a criminal complaint filed in the Fourth Distrcit Court of the Southern District of Maryland, Greenbelt.

The Petitioner, was removed from USP Marion and taken forthwith to the Williamson County Sheriff's Office, and held for four to six hours to be transported to the Seventh District Court of the Southern District of Illinois, Benton. At this juncture the Petitioner, still remains in custody, he has not been released, nor has his criminal history category changed, based upon the last criminal history category issued to him from the six (6) months prior to the arrest from USP Marion.

[O]n or about July 20, 2011; [KEMACHE_WEBSTER] appears before the Honorable Associate Judge for the Superior Court for the District of Columbia,to have a status hearing to determine if he had violated his conditions of incarceration or release on the March 18, 2010 case--at-bar. In attendance was Court Services and Offenders Supervison Agency Officer: Ms. Tiffany Carter, CSO [Court Services Officer]; lawyer for the Petitioner, Ms.Diane Bratter, Esq., and the Honorable John Mott, Esq. Associate Judge --- which determined that no violations were warranted and that the lawyer motioned for the case to be dismissed and vacated.

[O]n or about August 05, 2011; before the Honorable Roger W. Titus, the Petitioner appeared in the Fourth District Court for the Southern District of Maryland, Greenbelt for the instant offense of 18 U.S.C § 2422(b) Coercion and Enticement. During the sentencing phase the Court and the Government stated that the Petitioner [KEMACHE-WEBSTER] has a Criminal History Category of twelve (12) placing him in category V (five).

[A]t such hearing, the Court had also stated that the Petitioner was at offense level twenty-eight and varied six (6) levels giving him a score of Criminal History Category [V] with twelve (12) criminal history points at offense level thirty-six (36). --- By the [USSG] Category [V] with a level thirty-six, gives a [USSG] range of 292 to 365 months of incarceration, the Court instead decided to vary from that and gave the Petitioner a sentence of: [LIFE] and than sentence him to service it in the [FBOP]'s Federal Bureau of Prison's [CMU] Communications Management Unit of Terre Haute, Indiana, which is where the Petitioner has been since imposition of the Court's sentence.

[O]n or about November 20, 2011; the Honoarble Associate Judge: John Mott, issued an ORDER [VACATING] the original sentence of the six (6) months incarceration and the four (4) years supervised release and restitution, and closed the case.

See: Exhibit 2016-FW60-2 [ORDERS Superior Court for the D.C. & Information relating to the Suprior Court of the District of Columbia].

II

[U]nder Descamps v. United States; 133 S.Ct. 2276 (2013); and

Johnson v. United States; 135 S.Ct. 2551 (2015); now retroactive

VOID FOR VAGUENESS DOCTRINE & DUE PROCESS CLAUSE & RULE OF CONSTRUCTION

[U]ncertain breadth of meaning --- giving a reasonable and fair notice.

"[V]agueness alone... does not provide a full and rational explaination of the cases developement." Indeed, some commentators have argued that many vagueness determinations have little to do with vague language, and at best are understood as resting on two independent constitutional requirements.

1.-   That "all crimes must be based on conduct", and

2.-   That "there must be a defensable and predictable correlation between the established meaning of any criminal prohibition and the conduct to which it is applied.

[T]he Supreme Court has steadfastly applied void-for-vagueness doctrine only to statutes or regulations that purport to define the lawfulness of conduct or speech.

See:   Nyebolt v. Sec'y of Veterens Affairs; 298 F.3d 1350 (Fed Cir. 2002)

("[T]he difficulty [in applying the vagueness doctrine] is that there is no yardstick of impermissible indeterminacy.")

Note: The Void-of-Vagueness Doctrine with the U.S. Supreme Court; 109, V Pa. L.Rev. 67, 74 (1960) stating.........

"[V]agueness alone does not provide a full rationale explaination of the case development."

A void-for-vagueness challenge must be directed to statute or regulation that purport to define the lawfulness of speech or conduct -- Id @ 1357

See:   Woodruff v. U.S. Dept. of Labor, etc.; 954 F.3d 634 (4th cir. 2012);
       Johnson v. United States; 130 S.Ct. 1265 (2010) citing......

......Void for Vagueness -- "[i]mportantly,..sentencing courts have applied a modified categorical approach to crimes that are 'divisible' insofar as "they set out elements in the alternative and thus creates multiple versus of the crime," and under this approach, "courts have looked beyond the statutory text and consolidated a limited set of documents in the record" in order to determine the nature of the crime charged.

See:   Omargharib v. Holder; 775 F.3d 192, 197-98 (4th cir. 2014)
                           (internal quotation marks and citations omitted)

" Each and every element and explaination need not be clear, concise and are 'divisible' --- " setting out each and all elements in the alternative, and thus creates multiple versus of the crime."

[U]nder the 'Void-for-Vagueness' doctrine, it is required that penal statute define criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in manner that does not encourage arbitrary and discriminatory enforcement.

See:   Poster - 'N' - Things v. United States; 128 L.Ed 2d 539; 114 S.Ct.
                                                              1747 (1994)

Also recognizing that inexplicitly contradictory commands in statute or ordinary criminal penalties are judicially denied of force of criminal sanctions. United States v. Lanier; 385 US 475; 17 L.Ed 2d 576; 87 S.Ct. 574 (1967)

[A]s a matter of Due Process, a criminal statute which fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, or which is so indefinite that it encourages arbitraty and erratic arrests and convictions, is void-for-vagueness, such being especially true where the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights. Colautti v. Franklin; 439 US 379; 58 L.Ed 2d 596; 99 S.Ct. 75 (1978)

The doctrine that ambiguties in criminal statutes are to be resolved in favor of 'lenity' applies to sentencing provisions as well as substantive provisions; however, when Congress has conveyed its purpose clearly the United States Supreme Court will not manufacture ambigity where none does so exist. United States v. Batchelder; 442 US 114; 60 L.Ed 2d 775; 99 S.Ct. 2198.

[T]he Vagueness doctrine is an outgrowth not of the First Amendment, but of the 'Due Process Clause' of the Fifth Amendment.

A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement and punishment. See:   Hill v. Colorado; 530 US 703, 732; 120 S.Ct. 2480; 147 L.Ed 2d 597 (2000); also see: Grayned v. City of Rockford; 408 US 104, 108-09; 92 S.Ct. 2294; 33 L.Ed. 2d 222 (1972).

Although ordinarily "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to be conduct of others."

The Supreme Court, has relaxed that requirement in the First Amendment context, permitting plaintiffs' to argue that a statute is overbreadth because it is unclear whether it regulates a substantial amount of protection of protected speech.

See:    Reno v. American Civil Liberties Union; 521 US 844; 102 S.Ct. 1182; (1982).

[U]nder § 2422(b); it faults a person for non-moral speech --- yet "perfect clarity and precise guidance has never been required if regulations restrict expressive activity." Ward v. Rock Against Racism; 491 US 781, 794; 109 S.Ct. 2746; 105 L.Ed 2d 661 (1989)

What rende[r]s a statute vague is not the probability that it will sometimes be difficult to determine whether the incriminating [f]act it establish[es] has been prov[ed]; but rather the indeterminancy of precisely what the [f]act is. [T]hus, the Supreme Court has struck down statutes that tied criminal culpability to whether the defendant's conduct was actually "annoying" or "indecent" -- wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.

See:    Coates v. Cincinnati; 402 US 611; 95 S.Ct. 1686: 29 L.Ed 2d 214 (1971): and Reno supra, @ 870-71, and n.35, 117 S.Ct. 2329; 138 L.Ed 2d 874

Under §2422(b)-- 'Coercion and Enticement'

("[T]here is nothing short of a position of indeterminacy here, in referencing this above styled matter. The statute requires that: The defendant --- initiates and / or contacts a minor to engage in prostitution or some sort of sexual activity, proposes or solicits, by some type of communication or conversation --- which is 'knowingly' thought to be none-moral, in nature, that reflects the belief that the conversations or communications were none moral in nature; or that the defendant's conversations or communications were in a manner 'intended' to cause the minor thus believe to do so --- with an seention.

[T]he 2008 version reads:

§ 2422(b) - Coercion and Enticement [of a minor]

[W]hoever, using the mail or [any] facility or means of interstate commerce or foreign commerce, or within the special maritime and territorial jurisdiction of the United States 'knowingly' persuades, induces, entices, or coerces [any] individual who has not attained the age of 18 years to engage in 'prostitution' or [any] (sexual - activity) for which [any] person can be cahrged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

[Y]et, the original version, which was amdended and placed as a new
Amendment - 1986; Act. Nov. 07, 1986; reads:

§ 2422(b) - Coercion and Enticement of Female

[W]hoever, 'knowingly' persuades, induces, entices, or coerces
[any] women or girl to go from one place to another in inter-
state or foreign commerce, or in the District of Columbia, or
in [any] Territory or Possession of the United States, for the
purpose of 'prostitution' or debauchery, or for [any] (other -
immoral - practice)[purpose], whether with or without her con-
sent, and thereby 'knowingly' cause such woman or girl to go to
be carried or transported as a passenger upon the line or route
of [any] common carrier or carrier in interstate or foreign com-
merce, or in the District of Columbia, or [any] Territory or Pos-
session of the United States, shall be fined no more than $ 5000,
or imprisionment not more than 5 years or both.

[B]oth of these versions or from the statute of:

- WHITE SLAVE TRAFFIC ACT. of June 25, 1910
  (36 Stat. at L. 825 chap. 395, Comp. Stat. 1913 § 8812)

- [I]t is a fundamental and elementary law of the land, that a person
  accused of a crime is presented to be innocent until [PROPERLY] is
  proven to be guilty.-

[T]he White Slave Traffic Act, was intended by Congress to apply to such
cases of commercialized vice or "white slavery", and no to "des affaires
de coeur" [affairs of the heart], or escapedo such as the [f]acts disclos-
[ed] in the case-at-bar.

See:      Sedgw. Stat. & Cost. Law. pp 241-242 Congressional Record,
          vol. 50 pp. 3368, 3370, 3371; Bishop, Statutory Crimes, 3d
          Ed § 70; 2 Lewis's Sutherland Stat. Const. 2d Ed. § 347;
          United States v. Bitty; 208 US 393, 32 L.Ed 543; 28 Sup. Ct.
          Rep. 396; Statndard Dist. "White Slave", Church of the Holy
          Trinity v. United States; 143 US 457; 36 L.Ed 226; 12 Sup.
          Ct. Rep 511; Century Dist., "Slave", "Slave-Trade", "Trade",
          United States v. Pollard; 145 C.C.A 630, 231 Fed. 817; Con-
          gressional Record, vol. 50 pp. 3354, et seq.; also People
          v. Draper; 169 App. Div. 479, 154 N.Y. Supp. 1034

Applicable to all written instruments, whereby if any particular 'word'
taken by itself is obscure or if doubt may be removed by reference to as-
sociated 'words' -- the ides of reversing a Circuit Court's judgment or
dismissing an indictment charging the defendant of having unlawfully [any]
female or [female minor] or [minor] to be persuaded, induced, enticed, or

coerced, to engage in 'prostitution' or 'debauchery' or in [any] immoral practice [purpose] (sexual-activity) [WITH] or without her (assent) consent --- the defendant can be charged -- with a criminal offense --- provided that the intent is 'knowingly'.

[I]n Bitty supra, the court stated; that although it might be admitted that in accordance with the familiar rule of 'ejurdem generis', the immoral purpose referred to by the 'word' "[any] other immoral practice (purpose)" must be one of the genral class or lend as the particular purpose of "prostitution" specified in the same clause of the statute. Nevertheless that rule could not avail the accused in the intent case, since the immoral practice (purpose) charged in the indictment is of the same general class or kind as the one that controls the importation of the woman he had his intentions for --- for the purpose of 'prostitution'.

[T]he Court explained that the term 'prostitution' may in the more popular sense, be more degrading in character that what Bitty's objective of having her as a concubine may proscribe, but the latter nonetheless must be held to lend to an immoral lifestyle or practice in any regard whatever is had to the versus that are not universally held in this country as to the relationship --- which may rightfully from the standpoint of morallity. It must be assumed, continued the Court, that in using the words "or [any] other immoral practice (purpose)" Congress had reference to the views commonly entertained aomng people of the United States as to what is moral or immoral.

See:    United States v. Bitty; (1908) 208 US 393; 52 L.Ed 543; 28 S. Ct.supra Caminetti v. United States; (1917) 242 US 470; 61 L.Ed 442; 37 S. Ct. 192

"[P]rostitution may be defined generally as the practice (purpose) of a female offering her body to an indiscriminate intercourse with men, as distinguished from [sexual activity] with one male.

See:    People v. Demousset; 71 Cal. 611; 12 Pac. 788, 7 Am. Crim. Rep. 1; State v. Goodwin; 33 Kan. 538, 6 Pac 899 5 Am. Crim. Rep. 1; Carpenter v. People; 8 Barb. 603; Van Dulsen v. Com; 28 Ky. L.Rep. 238, 89 S.W. 255; United States v. Smith; 35 Fed 490

Which is also commonly denfined as"'common lewdness' of a woman for gain", & the, "act of permitting a common and indeterminate [sexual activity] for hire."

See:    Binfill v. People; 154 Ill. 640, 39 N.E. 565; and
        State v. Gibson; 111 Mo. 97, 19 S.W. 980; and also
        2 Bouvier's law Dictionary

[T]he Supreme Court of the United States in Caminetti supra, (1917); 242 US 470; 61 L.Ed 442; 37 S. Ct. 192 has held that the federal statute § 2422(b) of Title 18 - Coercion and Enticement -- White Traffic Slavery Act., making it an offense to 'knowingly' to transport or cause to transport in interstate or foreign commerce [any] woman or girl (female minor[minor]) for the purpose of 'prostitution' or 'debauchery' or for [any] other immoral practice (purpose[sexual activity]), by means of persuasion, inducement, enticement or coercion --- with the intention to 'debuach' or for [any] other immoral practice (purpose[sexual activity]), be it [WITH] or without her assent (consent).

[T]he Supreme Court has also held that:

> [I]f the act or acts of the petitioner are found to be within the letter of the statute --- due to a broad interpretation thereof, but are [f]act(s) which the whole history of the legislation and the life of the American people affirm could not have been within the intentions of the legislature they are therefore not within the statute and the conviction of the petitioner cannot be sustained.

In -the general rule if framing an indictment is to the effect that that either the letter or the substance of the statute defining that of the statute defining the offense [must] be followed........

See:    De Wee's Case; Chase 531 Fed. Cas. No. 3; 848

[T]he 'words' of the statute must fully, directly and expressly, without [any] uncertainty or ambiguity, set forth all of the elements that are necessary to constitute the offense intended to be prosecuted.

See:    Evans v. United States; (1894), 153 US 584; 38 L.Ed 830; 14 S.Ct.
        Rep. 939; 9 Am Crim rep. 688; United States v. Carll; (1882) 105
        US 611; 26 L.Ed 1135; 4 Am Crim. Rep. 246; United States v. Max;
        (1903), 122 Fed 964;
and [must] state all mutual [f]acts and circumstances embraced in that of the definition of the offense.

Also see: <u>United States v. Hess</u>; (1888) 124 US 483; 31 L.Ed 516;
8 Sup.Ct. Rep. 517

[W]hile -- White Traffic Slavery Act, is a high penal statute and, it should be strickly construed, and, if there be [a]ny doubt or an ambiguity in some of the verbage of the act, or statute it represents -- that doubt or an ambiguity should be resolved against the government and in favor of the individual.

[T]he statement of the statute " other immoral practice(purpose[sexual activity])" must be one of the same general class or kind as the particular purpose of the statute itself --- being 'prostitution'

See: <u>United States v. Bitty</u>; 208 US 398; 52 L.Ed 544; 28 S.Ct. Rep. 396
(1908)

[U]nder § 2422(b) - Coercion and Enticement - White Traffic Slavery Act.

There is an ambiguity in terms of this act; it is specifically made an offense to 'knowingly' transport or cause to transport etc, in interstate or foreign commerce, any woman or girl (female minor[minor]) for the purpose of 'prostitution' or 'debauchery' or for "any other immoral purpose(practice [sexual activity])",or with the intent and purpose to induce, entice, coerce, or persuade any woman or girl (female minor[minor], to become a 'prostitute' or to give herself up to 'debauchery' or to engage in " any other immoral purpose(practice[sexual activity])

[S]tatutory words are uniformaerly presumed unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them. As for the addition in the latter part of the statute of the words, 'or for any immmoral purpose(practice[sexual activity]) -after-the use of the word 'prostitution' must have been made for some practical object. Those added words show beyond question that Congress had in view the protection of society against the degradation of women, other than those who are brought in merely for the purpose of 'prostitution'. In forbidding the the importation of alien women 'for any immoral purpose(practice[sexual activity])', Congress evidently thought that there were purposes in convictions with the importation of alien women which, as in the case of importation for prostitution, were to be deemed immoral.

It may be admitted that, in accordance with the familiar rule 'ejusdem generis', the "immoral purpose" or "sexual activity" referred to the words 'any immoral purpose(practice[sexual activity])' must be one of the same

general class or kind as the particular purpose of 'prostitution' specified in the same clause of the statute. 2 Lewis's Sutherland Stat. Constr § 423, and authorities cited.

[H]erein, we have the petitioner [KEMACHE-WEBSTER] who was charged with the 2008 Amendment version of the 'White Traffic Slavery Act' of 18 U.S.C. § 2422(b) Coercion and Enticement --- which does not read or spell out that much differently than the 1986 Amendment version nor the 1910 Amendment version of the 'White Traffic Slavery Acts provisionals.

[T]he statute was originally written and addressed in a fashion that Congress styled and designed to protect women against 'PROSTITUTION' and the 'TRANSPORTATION' and 'TRAFFICKING' of such women be they foreign or domestic. [KEMACHE-WEBSTER] was charged under this statute, not for the purpose of either having one for 'prostitution' nor for 'transporting' nor for 'trafficking', --- the term - verbage --- ' for any immoral purpose (practice)'--- was replaced with 'sexual activity' referencing the exact same tone and like general class as that of 'for immoral purpose'.

[T]he statute was written to arrest the usage of women or girls --- that was changed to [any] individual who has not attained the age of 18 years.

The lead predicate or term is still ''TO ENGAGE IN PROSTITUTION' or [any] (sexual activity) --- the same general class as (for [any] immoral purpose)

[T]he verbage of 'PROSTITUTION' controls the statute, which in general terms would refer to a more degrading crime as oppose to 'sexual activity' references more to that of adultry or fornication ---
[U]nder Blacks Law-7th, 8th, & 12 th Edition:

[S]exual activity; See: SEXUAL RELATIONS,

[S]exual Realtions;   Sexual intercourse, Physical sexual activity that does not necessarily culminate in intercourse; usually involves the touching of another's breast, virgina, penis or anus. Both persons (the toucher and the person touched) engaged in sexual activity -- termed also as sexual activity.

[P]rostitution;   The act or practice of engaging in sexual acitivity for the purpose of maney or its equivilent; commercialized sex; the act of debasing

In both the 2008 and 1986 version, as originally written in the 1910 version; the statute also reads 'interstate or foreign commerce' which was written as a part of the petitioner's indictment.

[I]nterstate Commerce;   See: COMMERCE;

[C]ommerce;              The exchange of goods and services, esp. on
                         a large scale involving 'TRANSPORTATION'
                         between cities, states and nations.

[I]nterstate Commerce;   Trade and other business activities between
                         those located in different states; esp. tra-
                         ffic in goods and travel of people between
                         states. For purposes of this phrase, most
                         statutory definitions include a Territory of
                         the United States as a state. Some statutory
                         definitions of interstate commerce includes
                         a foreign country and a state.

[A]gain controlling; term --- verbage, of the statute, which does not
apply to the petitioner. [T]he Petitioner [KEMACHE-WEBSTER] was charge with
having violated § 2422(b) of Title 18; basically for transporting for that
of the purpose of prostitution --- which is how his indictment reads:

The Grand Jury for the District of Maryland charges that:
Between on or about May 04, 2010 and on or about August 20, 2010, in the
District of Maryland and elsewhere, the defendant,

FRANESIOUR B. KEMACHE-WEBSTER,
a/k/a Bryan Webster

did knowingly use and attempt to use a facility and means of interstate
commerce to knowingly persuade, induce, entice and coerce an individual
who has not attained the age of 18 years to engage in sexual activity
for which any person could be charged with a criminal offense.

18 U.S.C. § 2422(b)

See: Appendix: 2016-FW60-5 [INDICTMENT]

The indictment, does not list a sexual offense, nor activity, the indict-
ment is ammeded to not read in its entire; nor does it carry an 'overt' act
to substantiate the crime which the petitioner is to be charged with.

[T]he words of a statute [MUST] [FULLY], directly and expressly, without
any uncertainty or ambiguity, set forth (ALL) of the (ELEMENTS) necessary
to constitute the offense intended to be punished

See: Evans v. United States; (1894) 153 US 584; 38 L.Ed 830; 14 S.Ct. Rep. 939

United States v. Carll; (1882) 105 US 611; 26 L.Ed 1135; 4 Am Crim. Rep. 246

United States v. Max; (1903) 122 Fed. 964 --- and [MUST] state (ALL)
material [f]acts and circumstance embraced in the definition of the offense.
Also United States v. Hess; (1888) 124 US 483; 38 L.Ed 516; 08 Sup. Ct. Rep. 571

[I]n short....

- [I]f the [f]act of the petitioner are found to be within the letter of the statute, due to broad interpretation thereof, but are [f]acts which the whole history of the legislation and the life of the American people affirm could not have been within the intention of the legislature, they are therefore not within the statute, and the conviction of the petitioner cannot be sustained.-

See: Church of Holy Trinity v. United States; 143 US 457; 36 L.Ed 226; 12 S. Ct. Rep. 511

[T]he logical result of petitioner's contention would restrict the application of the statute to cases of 'prosition' and 'debauchery' one might think; for no other classes of commercialized vice are known. Thus the words 'immoral practice(purpose[sexual activity])' and 'immoral purpose(practice[sexual activity])' would be rendered impotent, and their insertion in the statute made futile.

See: United States v. Mescall; 215 US 26,31-32; 54 L.Ed 77, 79; 30 S.Ct. Rep. 19

and; Haynes v. United States; (1914) 242 US 484; citing......

"It is elementary, that the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law - making body which passed it the sale function of the court as to enforce it according to its terms.

Lake County v. Rallisis; 130 US 662, 660-71; 32 L.Ed 1060, 1063-63; 9 Sup. Ct. Rep. 651; Bate Refridgerating Co. v. Sulzberger; 157 US 1, 39 L.Ed 601, 610; 15 Sup. Ct. Rep 508; United States v. Lexington Mill and Elevator Co.; 232 US 399, 409; 58 L.Ed 658; 661 L.R.A. 1915B, 774; 34 Sup. Ct. Rep 337; United States v. First National Bank; 234 US 245, 258; 58 L.Ed 1298, 1303; 34 Sup. Ct. Rep. 846.

[W]here language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rule which are to aid lawful meanings need no discussion.

See: Hamellin v. Rathbone; 175 US 444, 421; 44 L.Ed 219; 20 Sup. Ct. Rep. 155

[T]here is no ambigibuity in terms of this act. It is specifically made as an offense to knowingly transport or cause to transport etc, in interstate commerce for the purpose of 'prostitution' or 'debauchery' or for "any other immoral purpose(practice[sexual activity])", or with the intent and purpose to induce, entice, coerce or persuade any such woman or girl (female minor [minor]), to become a 'prostitute' or to give herself up to 'debauchery', or

Supplemental To 60(b)

to engage in " any other immoral practice(purpose[sexual activity])."

[T]he Void for Vagueness Doctrine alaso know as:

[N]oscitur A Sociis  cf: Ejusdem Generis; A canon of 'Construction' holding that the meaning of an unclear word or phrase should be deter-mined by the words immediately surrounding it. [W]hen a general list of words or phrases follows a list of specific persons or things, the gene-ral word or phrase will be interpreted to include only persons or things of the same type as those listed. Cf: Rule of Construction

[E]xample:

> In the phrase: 'bicycles, motorcycles, 'trikes' and 'boats' or
>            any other vehicles of transportation, the general
>            language --- or any other vehicles of transportation --
>            despite its seeming breadth --- would probably to be held
>            to include only two and three wheeled and water vehicles
>            (and thus would exclude cars or four or more wheeled type
>            of vehicle transportation.)

[R]ule of Construction

Thus as the Void for Vagueness, mandated by the Fifth Amendments of the United States Constitutions; Fifth Amendment's Due Process Clause, prohibits the government from imposing sanctions under criminal law so vague that it fails to give ordinary persons fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforecement.

See: Johnson v. United States; 135 S.Ct. 2251 (2015) (slip op at 3)

[U]nder Marbury v. Madison; 05 US (1 Cranch) 137; 2 L.Ed 60 (1803)

> "[T]he Court is not free to invalidate acts of Congress
> absent the statutes' violation of a specfic constitution
> prohibition."

III

[U]nder Elonis v. United States; 135 S.Ct. 2001 (2015)

RULE OF CONSTRUCTION  &  RULE OF INTERPRETATION - EJUSDEM GENERIS

[T]he United States Supreme Court has expressly held that in construing a statute, the rule of interpretation (ejusdem generis), that where parti-clar words of description are follwed by general terms, the latter will be regarded as referring to persons or things of a like class with those par-ticularly discribed:  See: Culter v. Kouns; (1884) 110 US 720; 28 L.Ed 305 04 S.Ct. 274; United States v. Mescall;(1909) 215 US 26; 54 L.Ed 77; 30 S.Ct.19;

Danciger v. Cooley; (1919) 248 US 319; 63 L.ed 266; 39 S.Ct. 119; Gooch v. United States; (1936) 29 US 124; 80 L.Ed 522; 56 S.Ct. 395; Cleveland v. United States; (1946) 329 US 14; 91 L.Ed. 12; 67 S.Ct. 13 reh den. 329 US 830; 91 L.Ed 704; 67 S.Ct 361; United States v. Powell; (1975) 423 US 87; 46 L.Ed 2d 288; 92 S.Ct. 316; and Elonis v, United States; (2015) 135 S.Ct. 2001; --- will like other rules of statutory construction be applied to give effect to, but not to subvert or defeat, the legislative intent or purpose in enacting the statute.

[I]t has also sure been held that under this rule.... it will not be applied to render general words meaningless, so that if the particular words exhaust the class, the general words will be given a meaning outside the class indicated by the particular words.

Thus, in consonance with the foregoing general principle, the Supreme Court, has in some cases held that the rule of interpretation (ejusdem generis) does exist --- be it criminal, tort, tax, or bankruptcy statutes; yet in some cases --- be it criminal, tort, tax, or bankruptcy --- it has not held such rule applicable or to be applied.

[T]he Court has also held that using the Rule of 'Noscitur Sociis' --- that a word or words shall be known by the company that they keep --- meaning the words or phrase surrounding the word or phrase --- will be applied to ascertain the meaning the words or phrases otherwise obscure or doubtful only where the result of such application of the rule is consistent with the legislative intent. See: Russell Motor Car Co. v. United States; (1923) 261 US 514; 67 L.Ed 778: 43 S.Ct. 428; Jarecki v. G.D. Searle & Co.; (1961) 367 US 303; 06 L. Ed 859; 81 S.Ct. 1579.

[H]erein, the Petitioner [KEMACHE-WEBSTER], was charged with statute:
§ 2422(b) --- Coercion and Enticement --- White Traffic Slavery Act

[N]o[w]here, for the current record does it list or show, - that the plaintiff actually 'COERCED' nor 'ENTICED' his daughter [victim] into the purported actions as 'worded' or 'phrased' in the statute of 18 U.S.C. § 2422(b) as it is written, -states, lists or shows that the plaintiff had ever at all --- (knowingly violated interstate commerce laws for the purpose of transporting or attempting to transport --- for the purpose or practice of 'prostitution' or 'debauchery' or 'any other immoral purpose(practice[sexual activity])' referencing 'prostitution' or 'debauchery', 'worded' nor 'phrased'.

[U]nder Blacks Law - 7th, 8th & 12th Edition:

| | |
|---|---|
| Coerce; | To compel by force or threat<br>Cf: Coercion, Criminal Coercion |
| Coercion; | Compulion by physical force or threat of physical force. And act such as one being made to do against their will. |
| Criminal Coercion; | Coercion intended to restrict another's freedom of action, by threatening to commit a criminal act against the person; threatening to accusing that person of having committed a criminal act; Threatening to expose a secret that either will or would subject a person to hatred, contempt, or ridicule or will or would impair the person [victim]'s credit or goodwill, or taking or withholding official action, or causing an official to take or withhold action. |
| Entice; | To lure or induce; esp. to wrongfully solicit (a person) to do something. Cf: Enticement. |
| Enticement; | The act or an instance of wrongfully soliciting or luring a person to do something. Cf: Enticement of a Child. |
| Enticement of Child; | The act or offense of inviting, persuading or the attempting to persuade a child to enter a vehicle a building, a room or secluded area or place for the purpose or practice with the intent of committing an unlawful sexual act against the child. |

18 U.S.C. § 2422(b) -- Coercion & Enticement -- White Traffic Slavery Act provides:

> [W]hoever, using the mail or any facility or means of interstate commerce or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, knowingly, persuade, induces, entices, or coerces any individual who has not attained the age of 18 years to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense.

[T]he words of the statute must fully, directly and expressly, without any uncertainty or ambiguity, set forth all of the elements necessary to constitute the offense intended to be punished for, and must state all the material [f]acts and circumstances embraced in the definition of the offense.

See  United States v. Hess;(1882) 124 US 483; 31 L.Ed 516; 8 Sup.Ct. Rep. 571

[U]nder <u>Alleyne v. United States</u>; 133 S.Ct. 2151 (2013)

<u>Peugh v. United States</u>;    133 S.Ct. 2072 (2013)

VIOLATION OF THE <u>EX POST FACTO CLAUSE, THE EQUAL PROTECTION CLAUSE, THE DUE PROCESS CLAUSE & THE RIGHT TO A JURY DETERMINATION</u> --- AS PROVIDED BY THE UNITED STATES CONSTITUTION

[T]he touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt, is whether the fact constitutes as 'element' or 'ingredient' of the charged instant offense. <u>United States v. O'Brien</u>; 560 U.S. 218 ,130 S.Ct. 2169, 179 L.Ed 2d 979 (2010); <u>Apprendi</u>, supra at 483, n. *10, 120 S.Ct. 2348; 147 L.Ed 2d 435; (J. Archibold), Pleading and Evidence in Criminal Cases; 52 (5th Am. Ed 1846) (hereafter Archibold).

In <u>Apprendi</u>; the U.S. Supreme Court has held that a fact is by definition is an element of the instant offense and must be submitted to the jury, if it is to increase the punishment above what is otherwise legally prescribed 530 U.S. at 483, n. *10, 120 S.Ct. 2348; 147 L.Ed 2d 435*.

While <u>Harris</u>; declined to extend this principle [f]acts increasing mandatory minimum sentences. <u>Apprendi</u>'s, definition of 'elements' necessarily includes not only [f]acts that increase the ceiling, but those that increase, or raise the floor. Both kinds of [f]acts alter the prescribed range of the sentencing guidelines to which the defendant is exposed and do in some particular manner that aggrivates the punishment. 530 U.S., at 483, n. *10; 120 S. Ct. 2348; 174 L.Ed 2d 435; <u>Harris</u>, supra, at 579; 122 S.Ct. 2405; 153 L.Ed 2d 524. (Thomas, J. dessenting). [F]acts that increase the mandatory minimum sentence are therefore elements and must be admitted to the jury and found beyond a reasonable doubt. See <u>Alleyne v. United States</u>; 133 S.Ct. 2151; 570 U.S 01; 186 L.Ed 2d 314 (2013).

In other words, [f]acts that expose a defendant to a punishment greater than the otherwise legally, prescribed were by definition 'elements' of a much seperate legal offense. The court continues, ...by stating "We hold by definition - that the Sixth Amendment provides defendants with the right to have a jury find that facts beyond a reasonable doubt." While <u>Harris</u>,limited <u>Apprendi</u>, to increaseing the statutory maximum. the principle applied to <u>Apprendi</u> applies still with yet just and equal understanding, with strength and with yet just and

equal force to facts increasing the mandatory minimum. [I]f "a statute prescribes a particular punishment to be inflicted on those who commit it under special circumstances which, or with particular aggravations," than those special circumstances must be specified in the indictment or bill of presentment (emphasis added);1 F. Wharton, Criminal Law, 371, p. 291 (rev. 7th ed. 1874)(similar).

The Supreme Court has stated that; "it is impossible to disassociate the floor of a sentencing range from the penalty affixed to the crime. See: Harris, at 569, 122 S.Ct. 2406; 153 L.Ed 2d 524 (Breyer, J., concurring in part and concurring in judgment)(facts increasing the minimum and facts increasing the maximum cannot be distinguished "in terms of logic").

Indeed, criminal statutes have long been specified in both the ceiling and the floor of sentencing ranges, which is evidence that both define the legally prescribed penalty.

a)  Alleyne v. United States; 133 S.Ct. 2151 (2013); as applied to movant.

1.  Multiple consideration and double scoring of aggravating factors, were never considered by the fact finder, e.g. 'Obstruction of Justice', 'Attempt To Circumvent Court Orders', 'Criminal History', and 'Failure To Accept The Seriousness of The Crime'.

In sentencing Mr. KeMache-Webster to LIFE in prison without parole, the District Court increased his offense guideline calculation by eight (8) levels based upon conduct for which he had not admitted guilt nor had he in fact been found guilty of by a jury beyond a reasonable doubt. The use of uncharged conduct increased Mr. KeMache-Webster's guideline sentencing -- range from 130 to 162 months at level 28 of Criminal History Category V -- to a range of 262 to 365 months at level 36 with the same Criminal History Cat:gory of V, when in fact the Petitioner was already incarcerated when he was indicted on this instant offense, with a Criminal History Category of II Criminal History Points, while servicing a six (6) months sentence for a D.C.-Code Bad Check charge, and sent to USP Marion to service the sentence.

The use of the uncharge conduct and the improper Criminal History Calculations to calculate Mr. KeMache-Webster's guideline range violated his Constitutional Rights as applied under the Sixth Amendment to a jury trial, and to have [a]ny fact[or]s which could increase his sentence proven beyond a reasonable doubt. To have his Criminal History Score Calculated by four

(4) times greater than the actual score, where he was already incarce-
rated on a six (6) months sentence where his score under the U.S.S.G.
had already been calculated and scored in the District of Columbia's
Superior Court -- for a one count charge of Bad Check over $ 200.00,
had shown that he had a criminal history score calcaulation of three
(3) points at Criminal History Cat. gory II of the 2009-2010 Historical
Federal Sentencing Guideline Manuel. When he was sentenced on August 05,
2011; Mr. KeMache-Webster was given a quadruple (4x) the amount of the
original standing criminal history score, where he had a three (3) point
scoring based on an ancient record that was mostly more than ten (10) to
twenty (20) years old. The Court moved Mr. KeMache-Webster from category
two (2) [II] with three (3) points over to Criminal History Category five
(5) [V] with twelve (12) points.

As noted, the essential Sixth Amendment inquiry is whether a fact is
an element of the crime. When a finding of fact alters the legally pres-
cribed punishment so as to aggravate it, the facts necessarily forms a con-
stiuent part of a new offense and must be submitted to the jury. It is ob-
vious, for exmaple; that a defendant could not be convicted and sentenced
for strong armed robbery; if the jury only finds the facts for shoplifting,
even if the punishment for each crime are identical. One reason is that each
crime has a different element and a defendant can only be convicted only if
the jury has found each element of the crime to which he is convicted of.

With regards to the substantive challenges, KeMache-Webster primarily
contends that the district court abused its discretion by imposing a sentence
for 'ENTICEMENT of INCEST' that was greater than Maryland's penalty for the
crime of actual incest. However, the district court noted numerous reasons
for imposing a LIFE SENTENCE -- including -- 'Obstruction of Justice',
'Attempt To Circumvent The Court's Orders', 'Criminal History', and 'Failure
To Accept The Seriousness of The Crime'. Similarly, because the fact of
attempt to circumvent court's orders, and failure to accept the seriousness
of the crime, and, obstruction of justice -- aggravates the legally pres-
cribed punishment and range of allowable sentences, it constitutes an element
of a separate, aggravate offense that must be found by the jury, regardless
of what the sentence the defendant might have received if a different range
had been applicable. Indeed, if a judge were to find a fact that would or
could increase the statutory maximum sentence, such a finding would and also

could violate the Sixth Amendment, even if the defendant ultimately did receive[d] a sentence falling within the original sentencing range (i.e., the range applicable without the aggravating fact[or]s) Cf. Hobbs v. State; 44 Tex. 353 (1875) (reversing conviction where the defendant was indicted for a crime punishable by 2 to 5 years and sentenced to 3 years because the trial court improperly instructed the jury to sentence the defendant between 2 to 10 years, if it found a particular aggravating fact); State v. Callahan; 109 La. 946, 33 So. 931 (1903) (finding Ex Post Facto violation where a new-[ly] enacted law increased the range of punishment, even though defendant was sentenced within the range established by the prior law). The essential point is that the aggravating fact[or]s produced a range, which, in turn; con-clusively indicates that the fact is an element of a distinct and aggravated crime. It must therefore, be submitted to the jury and found beyond a reason-[able] doubt. Because there is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the maximum, this Court has held in Alleyne; supra; 133 S.Ct. 2151 (2013); that"Harris; 536 U.S. 545 (2002), was inconsistent with Apprendi." Therefore the Court overruled its earlier decision accordingly.

b) Peugh v United States; 133 S.Ct. 2072 (2013); as applied to mavant.

2. The consideration of aggravated factors subsequent to indictment has violated Petitioner's Ex-Post Facto Clause of a constitutional right as applied to the Fifth, Sixth, Eighth, & Fourteenth Amendments of the United States Constitution.

Under Peugh, supra; the Supreme court stated:

The Coverage of Ex Post Facto laws is not limited to legislative Acts.

It is true that a defendant does not have an expectation subject to due process protection that he will be sentenced within the United States Senten-cing Guidelines Manual range. But, the Ex Post Facto Clause does not merely protect reliance interest, it so reflects principles of fundamental justice.

Of course, while the principle of unfairness helps explain and shape the Ex Post Facto's scope, it is not a doctrine unto itself, invalidating laws under Ex Post Facto Clause by its own force. [Per Sotomayor, Ginsburg, Breyer, Kennedy and Kagan, JJ.

Herein; KeMache-Webster; asserts; that his increase in sentence to LIFE and his miscalcualation of his Criminal History Catagory score violated his

Constitutional Rights under the Ex Post Facto Clause, the Fifth, Sixth, & Eighth, Nineth and Fourteenth Amendment of the United States Constitution

The ammended Guideline's enhancment of the measure of punishment by altering the substantive "formula" and to calculate petitioner's criminal history category score created a 'significant risk' of a higher sentence and afforded fundamental justice -- one of the principle intents of the Ex Post Facto Clauses was designed to serve.

In Ex Post Facto inquiry of the Federal Contitution's Art. I § 9, cls 3 and Art. I § 10, cls 1, its limitation upon powers of legislature and does not of its own force apply to judicial branch of government; see United States v. Marcus; (2010 U.S.); 176 L.Ed 2d 1012; 130 S.Ct. 2159; and Peugh v. United States; (2013 U.S.); 186 L.Ed 2d 84; 133 S.Ct. 2072.

The general principle that the ex post facto clauses in Art. I § 9, cls 3 and Art. I § 10, cls 1 of the federal constitution protects only laws that apply retrospectively, that is, to events 'occuring before the laws' enacted, was explicitly stated and communicated on in the following decisions of the United States Supreme Court.

See: Calder v. Bull; 3 U.S. 386, 3 Dall 386; 1 L Ed 648, supra § 3(a), where

> the opinion of Justice Chase stated that every ex post facto law within the prohibition of the Federal Constitution must necessarily be retrospective [looking back on] although not every retrospective law is ex post facto. also see

Satterlee v. Matthewson (1829 U.S.) 27 U.S. 380, 2 Pet. 380; 7 L Ed 458

> where the U.S. Supreme Court indicated that retrospective laws which, among other matters do not partake of the character of: ex post facto laws are not condemned or forbidden by the United States Constitution.

In order to be ex post facto for federal constitutional purposes, it has been held in Weaver v. Graham; (1981 U.S.); 450 U.S. 24, 67 L.Ed 2d 17; 101 S.Ct. 960 [criticized on other grounds by Cal. Dept. of Corr. v. Morales; 131 L.Ed 2d 588; 115 S.Ct. 1597], that a criminal or penal law must be retrospective [looked back on] that is, it must apply to events occurring before its enactment. The fact that a statute, on its face, applies only after its effective date does not establish that the law is nonretrospective, the U.S. Supreme Court added, because it is the effect of a law rather than its form that deliniates whether the law is ex post facto.

Supplemtal To 60 (b)

When there are changes and or challenges within the procedures as ex post facto laws. The Supreme Court has generally held and determined that retroactively applied stattues

(1)  are not insulated from challenge, under the ex post facto claims as applied in Art. I § 9, cls 3 and Art. I § 10, cls 1 of the Federal Constitution merely because such statutes are labeled as precedural laws; See: Johnson v. United States; (2000 U.S.); 146 L.Ed 2d 727;

120 S.Ct 1795, and

(2)  may be invalidated of such statutes for one of the categories of ex post facto laws identified in, supra, analyzing the Federal Constitution's two ex post facto provisions

a)   prohibit - Federal Government
            [under Art. I § 9, cls 3] and

      prohibit - State Government
            [under Art. I § 10, cls 1] from enacting laws with certain types of retroactive effects; and

b)   are aimed at preventing unfair retroactive laws.

See: Stogner v. California; (2003 U.S.); 156 L.Ed 2d 544; 123 S.Ct 2446

In what the Supreme Court has described as an attempt to make sense out of the confusion created by previous decisions in which it had stated that precedural changes might violate the Federal Contitution's ex post facto clause if they affected matters of substance:

See: Duncan v. Missouri; (1894 U.S.) 152 U.S. 377; 38 L.Ed 485; 14 S.Ct. 570; also see: Malloy v. South Carolina; (1915 U.S.); 237 U.S. 180; 59 L.Ed 905; 35 S.Ct. 507; also Beazell v. Ohio; (1925 U.S.); 269 U.S. 167; 170 L.Ed 216; 46 S.Ct. 68 -- the Court in Collins v. Youngblood; (1990 U.S.); 497 U.S. 37; 111 L. Ed 2d 30; 110 S.Ct. 2715 held that (1) a legislature, by simply label-[ing] a law precedural, did not thereby immunize it from scrutiny under the ex post facto clause; but (2) the prohibition which could not be evaded was that stated in Justice Chase's opinion in Calder v. Bull; (1998 U.S.); 3 U.S. 386; 3 Dall 386; 1 L.Ed 648, which defined an ex post facto law as [a]ny law which: (a)  made an action criminal that was innocent when done; and

            (b)  aggravated a crime or made it greater that it was when committed;

and,   (c)  inflicted a greater punishment than the law provided for a crime when it was committed, or

            (d)  altered the rules of evidence and allowed conviction or less or different testimony than the law required at the time of the criminal offense.

Supplemental To 60(b)

[T]hough while Collin v. Youngblood; supra did not specifically overrule, and is not necessarily inconsistent with a number of cases in which the Supreme Court stated that the ex post facto clause does not apply to laws bringing about changes in precedures which do not affect substantial rights.

See: Hopt v. Utah; (1884); 110 U.S. 574; 28 L.Ed 262; 4 S.Ct. 202;
    Duncan v. Missouri; (1894); 152 U.S. 377; 38 L.Ed 485; 14 S.Ct. 570;
    Malloy v. South Carolina; (1915); 237 U.S. 180; 59 L.Ed 905: 35 S.Ct.
507; Beazell v. Ohio; (1925); 269 U.S. 167; 70 L.Ed. 216; 46 S.Ct. 68;
    Weaver v. Graham; (1981); 450 U.S. 24; 67 L.Ed 2d 17; 101 S.Ct. 960:
        (Criticized by Cal. Dept. of Corr. v. Morales: 131 L.Ed 2d
        588; 115 S.Ct. 1597) the .........

Collins Court explainations of the applicability of the ex post facto clause to precedural laws appears to limit severely the precedural value of the statements, especially since as discussed in, supra the Collins Court also held that the [f]acts that a retrospective change in criminal law is detramental to an accused is not sufficient to render that change on ex post facto law a violation of the Federal Constitution. On the other hand, in light of the Collins decision some prior statements to the effect that precedural changes are not ex post facto laws. See: Dobbert v. Florida; (1977 U.S.); 432 U.S. 282; 53 L.Ed 2d 344; 97 S.Ct. 2297; (reh den. 434 U.S. 882; 54 L.Ed 166; 98 S.Ct. 246, infra, Portley v. Grossman; (1980 U.S.); 444 U.S. 1311; 62 L.Ed 2d 723; 100 S.Ct. 714 (per Rehnquist J. as Circuit Justice), infra where as such statements were made in Calder v. Bull; (1998 U.S.); 3 U.S. 386; 3 Dall 386; 1 L.Ed 648; Cf. Peugh v. United States; (2013 U.S.) 133 S.Ct. 2072

         Supplemental To 60(b)

## CONCLUSION

WHEREFORE:

The Petitioner [KEMACHE-WEBSTER], prays;

That this Honorable Said Court allow the petitioner to amend this given petition at any time throughout the process of these procedures Pursuant To: Federal Rule of Civil Procedure - Rule 15.

That this Honorable Said Court; GRANT the petitioner FAVOR towards the attached filings of: Judicial Notice and the above entered filings and that this Court GRANT --- FAVOR to any and all other reliefs that this Court may deem needed, required and necessary.

Respectfully presented;

_12 May 2016_
12 May 2016

FRANCSIOUR B. KEMACHE-WEBSTER
REGISTRATION NO.: 42459-007
FCC-CMU TERRE HAUTE
POST OFFICE BOX - 0033
TERRE HAUTE, INDIANA 47808-0033

## CERTIFICATE OF SERVICE

HEREIN: THE PETITIONER [KEMACHE-WEBSTER] enters on this 12th day of May in the year 2016, that all of the information is true, and correct, under the penalties of perjury; Pursuant To 28 USC § 1746.

HEREIN: THE PETITIONER [KEMACHE-WEBSTER] also states and certifies that this was mailed; U.S. Postage Pre-paid mail to the Clerk of the Court for the Southern District of Maryland, Greenbelt. And in its attachment was a 'COVER MISSIVE' requesting by direction to in itslef to forward to all parties involved in the above styled case.

Respectfully submitted;

_____/s/_____

FRANCSIOUR B. KEMACHE-WEBSTER